

Pro'Se
2417 Palmetto St.
Oakland Ca. 94602
(510) 239-6113

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*JSC*

PLAINTIFFS,

Plaintiff, Ali Saleem Bey; John
Muhammad Bey

vs.

DEFENDANTS,

Defendants. City of Oakland, City of
Oakland Police Department; Wayne
Tucker, Howard Jordan; Jeffery
Loman; Jeffery Israel; David
Kosicki; Sean Whent; David
Downing; Ersie Joyner; Derwin
Longmire; Oliver Cunningham;
Andre Rachal; Bruce Brock; Todd
Crutchfield; Jean Quan; Deanna
Santana; Does 1 - 101

**Case No. CV 14 1626**

**CIVIL SUIT FOR A PATTERN AND
PRACTICE OF 42 U.S.C §1983, §1985
VIOLATIONS AGAINST PLAINTIFFS'
CIVIL RIGHTS**

DATE: March 30th 2014

Pro Se Plaintiffs

1

**A. JURISDICTION**
1. Jurisdiction is proper in this court according to:
a. 42 U.S.C. §1983
b. 42 U.S.C. §1985

2. PLAINTIFF Ali Saleem Bey
IS A CITIZEN OF THE STATE OF California
PRESENT MAILING ADDRESS: 2417 Palmetto St. Oakland Ca. 94602

3. PLAINTIFF John Muhammad Bey
IS A CITIZEN OF THE STATE OF California
PRESENT MAILING ADDRESS: 2417 Palmetto St. Oakland Ca. 94602

4. NAME OF FIRST DEFENDANT
City of Oakland California

5. NAME OF SECOND DEFENDANT
City of Oakland Police Department

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
The City of Oakland Police Department acted under color of law to deprive Plaintiffs of their
civil rights using federal funds and resources.

6. NAME OF THIRD DEFENDANT
Wayne Tucker
IS A CITIZEN OF State of California
Employment: Retired Chief of Police Oakland
Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
Defendant was acting under color of law as Chief of Police of Oakland California authorizing
and participating in conduct that violated Plaintiffs' civil rights.

7. NAME OF FOURTH DEFENDANT
Howard Jordan
IS A CITIZEN OF State of California
Employment: Retired Chief of Police Oakland
Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
Defendant was acting under color of law as Assistant Chief of Police and as Chief of Police of
Oakland California authorizing and participating in conduct that violated Plaintiffs' civil rights.

8. NAME OF FIFTH DEFENDANT
Jeffery Loman
IS A CITIZEN OF State of California
Employment: Unknown

Was the defendant acting under the authority or color of state law at the time these claims occurred?
YES
Defendant was acting under color of law as Deputy Chief of Police in the Oakland Police Department authorizing and participating in conduct that violated Plaintiffs' civil rights.

9. NAME OF SIXTH DEFENDANT
Sean Whent
IS A CITIZEN OF State of California
Employment: Interim Chief of Police City of Oakland

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights.

10. NAME OF SEVENTH DEFENDANT
David Downing
IS A CITIZEN OF State of California
Employment: Deputy Chief of Police City of Oakland

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights.

11. NAME OF EIGHTH DEFENDANT
Ersie Joyner
IS A CITIZEN OF State of California
Employment: Police Department City of Oakland

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights

12. NAME OF NINETH DEFENDANT
Derwin Longmire
IS A CITIZEN OF State of California
Employment: Police Department City of Oakland

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights

13. NAME OF TENTH DEFENDANT
Oliver Cunningham
IS A CITIZEN OF State of California
Employment: Police Department City of Oakland

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights


14. NAME OF ELEVENTH DEFENDANT
Andre Rachal
IS A CITIZEN OF State of California
Employment: Alameda County

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights


15. NAME OF TWELVETH DEFENDANT
Bruce Brock
IS A CITIZEN OF State of California
Employment: Retired

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights


16. NAME OF THIRTEENTH DEFENDANT
Todd Crutchfield
IS A CITIZEN OF State of California
Employment: Retired

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights

17. NAME OF FOURTEENTH DEFENDANT
David Kosicki
IS A CITIZEN OF State of California
Employment: Retired

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights

18. NAME OF FIFTEENTH DEFENDANT
Jeffery Israel
IS A CITIZEN OF State of California
Employment: Unknown

Was the defendant acting under the authority or color of state law at the time these
claims occurred? YES
As a member of the City of Oakland Police Department Defendant acted under color of law to
deprive Plaintiffs of their civil rights participating in conduct that violated Plaintiffs' civil rights

19. NAME OF SIXTEENTH DEFENDANT
Jean Quan
IS A CITIZEN OF State of California
Employment: Mayor City of Oakland

Was the defendant acting under the authority or color of office at the time these
claims occurred? Yes As Mayor of Oakland Defendant is responsible for Co-Defendant Oakland
Police Department, Defendant hired and supported Co-Defendant Howard Jordan as Chief of
Police and supported the promotion of Co-defendants Sean Whent and David Downing to the
detriment of the Plaintiffs and discriminated by failing to give equal treatment to Plaintiffs.

20. NAME OF SEVENTEENTH DEFENDANT
Deanna Santana
IS A CITIZEN OF State of California
Employment: Former City Administrator City of Oakland

Was the defendant acting under the authority or color of office at the time these
claims occurred? Yes As City Administrator of Oakland Defendant is responsible for Co-
Defendant Oakland Police Department, Defendant hired and supported Co-Defendant Howard
Jordan as Chief of Police and supported the promotion of Co-defendants Sean Whent and David
Downing to the detriment of the Plaintiffs and discriminated by failing to give equal treatment to
Plaintiffs.

DEFENDANT DOES 1 - 101

### · B. NATURE OF CASE

Plaintiffs John Muhammad Bey and Ali Saleem Bey are businessmen, family men and community leaders in the Oakland Black and Muslim community. Plaintiffs prayed and fellowshipped every Sunday with other Muslims and persons from all walks of life at 5832 San Pablo Ave. in the Golden Gate District of Oakland Ca. Neither of the Plaintiffs has a criminal record nor have they ever engaged in "subversive" nor "terrorist" activities. Both Plaintiffs volunteered "giving back" in the community school and mentoring young black men most at risk. Politically Plaintiffs were known and respected throughout Alameda County and the Bay Area by representative Democratic politicians at all levels including local, county, state, and federal as positive Black and Muslim community leaders. Plaintiffs' specific reputations in City Hall in the City of Oakland were known and respected across multiple administrations and councils. Plaintiffs were members of a community of law abiding persons that numbered in the hundreds that included individuals, families with children, and entrepreneurs that built and established the Golden Gate District into the Black Muslim equivalency of Oakland's Chinatown or Fruitvale districts as they relate to Asian and Latino citizens of Oakland. On or about January 2002 mere months after September 11th 2001 the Criminal Intelligence Division (CID) Chain of Command (CoC) of the Oakland Police Department (OPD) capitalized on historic OPD CoC culturally taught and ingrained prejudices and POST 9/11 anti Muslim sentiment to designate Plaintiffs and their community as "subversive" for the express purpose of providing cover to attack and permanently destroy the, political capital, economic power, pubic reputation, freedom of speech, and religious freedoms of Plaintiffs as members of the Black and Muslim community located in the Golden Gate district of Oakland Ca. These attacks represent a historic destructive goal and a clear pattern and practice of discrimination that continues to this day by the Defendants against the Plaintiffs. Historical facts of the existence of this pattern and practice of discrimination by Defendants against Plaintiffs can be traced directly and clearly back to 50's, 60's, and 70's COINTELPRO Covert Action (CA) "dirty tricks" operations by the Oakland Police Department Chain of Command in conspiracy with outside law enforcement agencies (particularly the FBI and DOJ) against the same Oakland community of Black and Muslim citizens of which the Plaintiffs are associated with.

City of Oakland and the City of Oakland Police Department CID Chain of command (henceforth collectively and individually identified as defendants and in the details of this document OPD CID Chain of Command as OPDCIDCoC) including but not exclusively Ex Chief Tucker, Ex Chief Jordan, Ex Deputy Chief Loman, Ex Deputy Chief Israel, ex CID officer Andre Rachal, ex CID Supervisor Ersie Joyner, ex CID officer Derwin Longmire, ex CID officer Bruce Brock, ex CID officer Todd Crutchfield, current interim Chief Whent, current interim DC Downing plus other past and present OPD employees to be identified and included later, acted in systemic conspiracy to discriminate and violate the civil rights of the plaintiffs using federal aid and resources. These violations were brought to, acknowledged, and ignored by current and past administrations of the City of Oakland to the detriment of the Plaintiffs.

A historic systemic cultural bias against Black and Muslim citizens of Oakland has been incorporated into the Oakland Police Department rank and file by leadership and continues to exist to this day. This approved prejudice and bias status has its provenance in the federal led attack against Black Nationalist organizations led by FBI director J. Edgar Hoover that included and specifically targeted law abiding Black Muslims. OPD Chain of command has incorporated and continues to support and promote this

· historically biased indoctrination training and Pavlovian reward system of discrimination against Plaintiffs' racial and religious status to this day constituting a pattern and practice of discrimination.

The credibility and truthfulness of these members of OPDCIDCoC in assessing subversive groups has been completely debunked and discredited by historical fact. Named Defendant Oakland Police Department CID Chain of command is the same disgraced leadership and proven corrupt officers that falsely designated Judi Bari and Darryl Cherney of "Earth First" as subversive and were found discredited and liable in a court of law. Factually this is the same group of OPDCIDCoC individuals that were found guilty of terrorizing the POST 9/11 2003 Port of Oakland anti-war peace and labor union protestors under the same excuse of labeling them subversive for exercising their civil rights. Factually In 2003 a year after designating the Plaintiffs as subversive these same OPD persons including but not exclusively Jordan and Longmire ran an (admitted in court) "off the books" "Dirty Tricks" "Covert Action" operation in conspiracy with other Local, State, and Federal agencies to steal and monitor Labor Union electronic communications, infiltrate the Anti Iraq war Peace group with OPD provocateurs, and to purposefully and maliciously steer this peaceful political protest march into a violent clash with OPD weapons while falsely labeling them violent and subversive to the public. History factually states that when the light of justice was shone on them, the same members of OPDCIDCoC were found liable for their incompetent leadership and atrocious actions proving they are completely bereft of credibility in designating any group subversive as they did the Plaintiffs. Factually the "Riders" operated under the same members of OPD chain of command that resulted in the Negotiated Settlement Agreement (NSA) reforms of which OPD blatantly ignored and disrespected Court ordered reforms by purposely violating Plaintiffs' civil rights. Black Journalist Chauncey Bailey last story connecting Defendants to crimes was given to him by Plaintiffs. Bailey was murdered to suppress his story revealing Defendants continued violations.

## C. CAUSE OF ACTION

1. We allege that our constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:

The defendants continue to discriminate against plaintiffs in regards to equal treatment and protection. Factually violating Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 1983 ; 42 U.S.C. § 1985 ; 18 U.S.C. § 249 Title 18, U.S.C., Section 245; Title 18, U.S.C., Section 241; Title 42, U.S.C., Section 14141; Title 18, U.S.C., Section 242; and the Religious Land Use and Institutionalized Persons Act (RLUIPA) inclusive by Defendants of Plaintiffs' civil rights constituting a systemic practice and pattern of discrimination against Plaintiffs and their racial and religious identified community dating back decades. The defendants continue to fail to investigate and suppress evidence of crimes committed against Plaintiffs. On 3/18/14 Defendants concluded an Internal Affairs Division (IAD) investigation 13-1062 with finding proving systemic actions clearly showing a pattern and practice of discrimination based upon religious and racial status, failure to investigate, suppression of evidence, compromising criminal cases, aiding and abetting murder, attempted murder, fraud, slander, negligence, willful reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs. Defendants factually lied in the report to Plaintiffs that no current employees of the Defendant OPD were connected to the MOR violations committed against Plaintiffs found sustained. Defendants suppressed and ignored evidence in the investigation of IAD 13-1062 directly connecting Plaintiff 7/13/07 filed IAD complaint 07-0538 to current members of Chain of

· command current interim chief Sean Whent, current interim Deputy Chief David Downing, current employee Ersie Joyner, and current employee Derwin Longmire. Defendants are using the cover of conflict of interest investigations controlled by Defendants to shield exposure of repeated crimes by defendants against Plaintiffs. This pattern and practice of discrimination also includes but is not exclusive to; failure to investigate crimes against Plaintiffs, tampering with and suppression of evidence connecting OPDCIDCoC to crimes against Plaintiffs, actively aiding and abetting criminals committing crimes against plaintiffs, failure to report known OPD MOR violations against plaintiffs by officers, obstruction of justice, and compromising criminal cases.

Factually the Defendant has a clear, egregious and obvious in nature conflict of interest related to current Plaintiff filed OPD Internal Affairs Division (IAD) complaint 13-1062 which is an investigation of IAD 07-0538 involving current Chain of command and current and past employees of Defendnat OPD filed by Plaintiffs. The IAD investigation of IAD's investigation of 07-0538 is factually a conflict of interest that includes complaints against current and past OPDCIDCoC. The Defendant City of Oakland et al has publicly approved and established a comparable standard for independent investigations involving OPD Internal Affairs investigations as regards to Occupy related IAD conflicts of interest. The Defendant City of Oakland's continued refusal to treat Plaintiffs' OPD IAD investigation in an equal manner is clearly discriminatory when using comparable standards set by the Defendants themselves. Failure to relinquish Plaintiffs' OPD IAD investigation to a non bias investigative party is part of a historically factual pattern and practice of discrimination involving suppression of evidence related to Defendant's crimes against plaintiff's civil rights.

### Defendant's historic Pattern and Practice of discrimination against Plaintiffs

In 2002 the Oakland Police Department CIDCoC using for their bias based benefit; POST 9/11 anti Muslim discrimination, federal aid and resources did falsely label a 40 year indigenous Oakland racial and religious group using a distinct pattern and practice of Departmental historical based racial and religious prejudiced discriminatory reasoning to declare Oakland Black Muslims living, educating, worshipping, economically thriving, and peacefully assembling in the Golden Gate District of Oakland as a subversive group. Factually OPD CIDCoC used historically discredited illegal COINTELPRO tactics to subvert and violate the basic constitutionally guaranteed civil rights of the Plaintiffs who are Black and Muslim and identified as leaders in said community. Factually OPD CIDCoC used "POST 9/11 anti Muslim discrimination backlash sentiment" as defined by the Department of Justice and federal aid to initiate and manage a Covert Action (CA) "dirty tricks" COINTELPRO tactic operation against Plaintiffs to intentionally inflict emotional distress and cause economic harm. Factually OPD CIDCoC used federal POST 9/11 anti-Muslim sentiment timing and cover as an opportunity to capitalize on a historic Oakland Police Department bias and prejudice against the Plaintiff's racial status, religious choice, freedom of assembly, freedom of speech, and political affiliation. Factually OPD CIDCoC has taught and ingrained a cultural animosity, bias, and discrimination against and toward Black and Muslim citizens of Oakland among rank and file OPD officers from rookie training through promotional reward into chain of command. OPDCIDCoC has historically targeted for destruction members of the Plaintiffs' specific racial and religious group especially vocal persons in community leadership positions labeled by Defendants as "Rabble Rousers", as are the plaintiffs who dare to speak truth to power in Oakland Ca. This historic

· pattern and practiced culture of discrimination against Black and Muslim citizens has factually exisits and been ingrained in the mentality of current and past Chain of command dating within OPD from the 1950's and practiced to present day against Plaintiffs and members of their identified racial and religious group in the City of Oakland.

Multiple City of Oakland Administrations and employees in direct violation of their fiduciary responsibility have known of, and failed to report or act upon known OPD violations of Negotiated Settlement Agreement (NSA) against Plaintiffs. Plaintiffs have suffered a pattern and practice of flagrant Manual of Rules (MOR) violations by OPD rank and file as authorized, ordered, managed, and suppressed by OPDCIDCoC. Plaintiffs can produce copious amounts of independently corroborated evidence that includes depositions, media statements, and official investigation interview transcripts by the defendants themselves to support all complaints made by the Plaintiffs against current defendants and future Does. Plaintiffs have the ability to produce the evidence to prove there is an explicitly taught indoctrination of discrimination based upon racial and religious prejudice in the City of Oakland Police Department Leadership. Plaintiffs will show an openly promoted, repeatedly taught, and encouraged by reward, practice of discrimination against Plaintiffs. This taught and Pavlovian rewarded "condition response" (CR) behavior by OPDCIDCoC has resulted in an ingrained culture of discrimination in the OPD rank and file thus creating a repeating pattern of discrimination and rewarding the continued practice of discrimination against Plaintiffs.

An openly known by Defendants undeniable trail of U.S. constitutional civil rights violations committed by Defendants against Plaintiffs clearly shows the court the pattern and practice of racial and religious discrimination violations of Plaintiffs civil rights. **The facts outlined in this cause of action meets multiple, repeating and overlapping requirements to be egregious violations of** 42 U.S.C. § 1983 and 42 U.S.C. § 1985 **committed by Defendants against Plaintiffs' civil rights thus exceeding the threshold of the constitutionally guaranteed right of the Plaintiffs to seek redress through civil complaint against Defendants.**

**Count 1 –** 42 U.S.C. § 1983 and 42 U.S.C. § 1985 City of Oakland and Oakland Police Department Pattern and Practice of Racial and Religious Discrimination against plaintiffs, obstruction of justice, suppression of evidence, failure to investigate.

### 13-1062 IAD conflicts of interest facts related to IAD complaint 07-0538

The former court appointed Compliance director Thomas Frazier cites OPD Internal Affairs conflict of interest in his defendant commissioned investigative report as the reason for his being hired by the defendant City of Oakland to provide independent investigation of OPD in relation to OPD MOR violations connected to Occupy. A much more egregious conflict exists in the current IAD investigation conducted by IAD of IAD and current and past OPD chain of command related to Plaintiff IAD complaints 13-1062 and 07-0538. The Defendants have been notified repeatedly in writing and open public meeting forum personally by Plaintiffs of this obvious discrimination in treatment. Defendants continue to ignore Plaintiffs by steadfastly refusing to give equal treatment to plaintiffs when compared to defendant's action on behalf of non Black and Muslim citizens in calling for independent Investigations related to conflict of interest and failure to investigate by Defendant OPD.

A. Factually IAD complaint 13-1062 names current Chain of Command (including current interim OPD chief Sean Whent). No attempt by current interim chief Sean Whent to recues himself from the investigation of IAD complaint 13-1062 is proof by the defendant that no "air of credibility" is in an investigation headed and directed by an appointed and managed subordinate that currently and directly benefits from his association with current interim chief Sean Whent. Captain Oliver Cunningham was promoted to Captain of Internal affairs by current interim chief Sean Whent thus making him an appointee of his. This appointee, one Captain Oliver Cunningham has and continues to benefit financially (salary increase and increased retirement benefits) and professionally (promotional rank) based upon his appointment by current interim chief Sean Whent. Thus conflicting him out of conducting a fair and impartial investigation.

B. Factually IAD complaint 13-1062 was initiated by former Compliance Director Frazier and is an Internal Affairs investigation of Internal Affair's investigation of IAD complaint 07-0538 which requested an independent investigation of OPD CID Chain of command. Factually, IAD 07-0538 which was purposely removed by IAD from the sustained findings was closed by OPD interim Chief Whent promoted, current command staff D.C. David Downing (9/1/07 – 07-0538 was closed during the OPD MOR violation tainted Bailey murder investigation) by definition is suppression and compromising criminal cases. 07-0538 was filed July 13th 2007 and served as the basis of Black journalist Chauncey Bailey's last story. Bailey's last story has been universally agreed upon by Alameda County D.A., law enforcement, and the media as the motive and direct causation of Bailey's murder by young black men armed with "gun walked" weapons connected to the Oakland police department with aid from multiple government agencies. This obvious direct connection to 07-0538 dictates including reopening the Bailey murder investigation and its causal complaint IAD 07-0553 reported on by current interim chief Whent to co-defendant Jordan in any subsequent reinvestigation of 07-0538 because of their indisputable cause and effect relation. Absence of 07-0538 in the 13-1062 report demand independent investigation.

C. There exists a NSA violating disturbing pattern and practice of discrimination against Plaintiffs in Oakland police department IAD. Factually Plaintiffs have directly experienced rejection of evidence being submitted to the Oakland police department internal affairs investigation of 13-1062 constituting suppression of evidence, compromising criminal cases, and obstruction of justice. In addition IAD has refused to catalog and acknowledge digital evidence it has been given in person by plaintiffs resulting in potential evidence suppression.

D. Current assigned IAD investigator officer William Griffith has clearly stated he has no authority to question a large number of material witnesses and possible accomplices outside of OPD currently employed personnel. This is the clearest indication that IAD cannot sufficiently investigate 13-1062 which is in OPDCIDCoC best interest since they are named in the complaint.

It is not logical for the Plaintiffs, the Oakland community or the court to have a reasonable expectation of justice derived from a fair and transparent investigation of IAD 13-1062 given the magnitude of the conflict of interest posed by defendant investigating itself of crimes against Plaintiffs connected to OPD CID conspired and initiated black on black murder in Oakland. No reasonable person can successfully argue that it is in current OPD chain of command's own self interest to adequately solve to the public's

· satisfaction the crimes directly connected to and implicating current and past Defendants OPD chain of command in a pattern and practice of civil rights violations against Plaintiffs.

The facts presented outlining this conflict of interest clearly surpasses the standard that Defendants have publically defined and have used to initiated prior independent investigations for predominantly non Black and Muslim conflict of interest investigations indicating discrimination in practice.

**Count 2** – 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a pattern and practice of Racial and Religious discrimination and other actions to violate plaintiffs' civil rights resulting in reckless endangerment, intentionally inflicting emotional distress, slander, failure to investigate, suppression of evidence, compromising criminal cases, racial and religious oppression of freedom of speech, assembly, political affiliation

OPD CID CoC secretly, maliciously, and arbitrarily based upon a clear pattern and practice of discrimination designated plaintiffs, their family, and the Black and Muslim community who chose to assemble for freedom of religious, educational, political and economic reasons in the City of Oakland Golden Gate district as members in a subversive Muslim group targeted for destruction using federal aid unbeknownst to plaintiffs on or about January 2002 mere months after 9/11. OPD CIDCoC accomplished this objective using classic historically discredited racist and religiously discriminatory COINTELPRO tactics and partnerships. OPDCIDCoC encouraged and inflamed internal Oakland Police Departmental POST and Pre 9/11 anti-Muslim discrimination and hatred as an excuse to justify attacking the Plaintiff's freedom of speech being exercised against Oakland Police Department's historic culture of corruption, violence, discrimination, and willful neglect of OPD caused collateral damage to human life and safety simply because the victims are citizens in the Oakland Black and Muslim community. Capitalizing for their bias benefit using POST 9/11 politically passed Patriot Act powers, Home Land Security resources and NSA style and level electronic access, OPD CID CoC purposely targeted, attacked, and subverted the physical, economic and political freedoms of the plaintiffs in direct conspiracy with multiple local and federal agencies including but not limited to the U.S. DOJ U.S. Attorney (SF), FBI, ATF, Alameda County (AC) District Attorney and AC Sheriff's Dept., IRS, US Bankruptcy and Criminal courts and officers ( all verifiable classic historical COINTELPRO conspirators against national and Oakland Black and Muslim citizens). To accomplish this OPDCIDCoC initiated in conspiracy with federal aid and resources a POST 9/11 classic COINTELPRO style operation that "gun walked" weapons into the Oakland Black and Muslim community. This operation's objective was to among many other things target plaintiffs for destruction because of their known leadership status in an OPD CIDCoC falsely labeled subversive Muslim group. The OPD officers making this command decision to authorize this type of operation and tactics are soundly discredited as bias, discriminatory, and historically prejudiced. Factually OPD CIDCoC knew the decision to authorize and execute a subversive illegal COINTELPRO tactic operation against plaintiffs and a whole community was based upon historical department discrimination against racial and religious affiliation and was devoid of any solid evidence before supporting a subversive designation of plaintiffs. OPDCIDCoC knew the subversive designation was not sustainable against Plaintiffs based upon CID Andre Rachal's nine (9) year OPD CIDCoC investigation conducted against plaintiffs 1993- 2002 that didn't induce OPD Chain of Command to act in designating Black Muslims as subversive prior to September 11th 2001. Evidence shows that OPDCIDCoC and CID Longmire sought and initiated federal

aid in attacking plaintiffs and the Black and Muslim community in the Golden Gate district of the City of Oakland only months after September 11th 2001. This was done despite the fact that CID Longmire has stated that his previous relationship with the Black and Muslim community in the Golden Gate District was multi-year, amiable, respectful, and the leadership he and his direct supervisor Joyner related to personally was not subversive. During this time period even though multiple OPD officers regularly patronized Golden Gate district Muslim businesses and had personal and business relationships with Muslim persons later labeled subversive. Factually CID Longmire stated he was never advised by OPD Chain of Command to avoid or investigate Black and Muslims in the Golden gate district of Oakland by OPDCIDCoC superiors prior to being promoted into CID. Longmire's mind was only "changed" once he was promoted to CID proving that a promotional reward system exists associated with attacking designated enemies of CID which the Plaintiffs have been identified as. This is further proof that OPD CID harbors a historic bias against plaintiffs' racial and religious status and that culturally promotion in the Oakland Police Department is tied to bending the promoted officer to Chain of command culturally biased and religiously prejudiced views. Longmire experienced a 180 degree feeling change bout Black Muslims once promoted even though facts still supported his previous to promotion view of Plaintiffs. In early 2002 a basic rudimentary investigation by OPD CIDCoC quickly established that the CID nine year investigation by CID Andre Rachal had not established a conspiratorial subversive group/community label and in fact maliciously and prejudicially ignored and suppressed evidence that the almost exact opposite was actually true when applied to Plaintiffs being universally accepted inside and outside of their community as positive role models, as black job creating businessmen, education improvement activists, Police accountability activists, community political and social organizers, anti prison industrial complex, and self improvement teachers, mentors, and advocates to post and pre incarceration members of plaintiff's community. OPDCIDCoC plotted and planned a COINTELPRO operation against Plaintiffs with complete knowledge that attacking and destabilizing Plaintiffs' community leadership could only lead to intentionally inflicting emotional distress, reckless endangerment, violence, economic damage upon Plaintiffs. The causal growth in murder and crime in Plaintiffs' community perversely led to increased OPDCIDCoC cries for justification of greater crack downs, larger police budgets, higher militarization of officers, and more officers in the Oakland Black and Muslim communities.

This historical rooted and currently existing culture of blanket racial and religious bias and hatred of Black and Muslim citizens on the part of defendants in conspiracy with outside law enforcement agencies, has resulted in a pattern and practice by the defendants of discrimination and civil rights abuses inflicted directly on the Plaintiffs by defendants and conspirators that continues unabated to this present day. This illegal POST 9/11 operation used classic discredited COINTELPRO tactics to target for violence the freedom of assembly and speech of Plaintiffs representing Black and Muslim community leadership historically labeled by law enforcement as "rabble rousers" or more factually accurate as "anyone that is willing to speak publically of police accountability". Using discredited COINTELPRO tactics OPD CIDCoC purposely fomented violent factionalism between racially predominantly black and religiously predominantly Muslim religious groups to destabilize the Oakland Black and Muslim community directly resulting in increased black on black murder, violence, physical harm, economic destruction, and terrorism. OPDCIDCoC committed the most egregious terrorism and murder in the form of multiple Black community shootings by de facto arming criminals using weapons directly

· connected to OPDCIDCoC "gun walking" tactics. Factually OPD CIDCoC engaged in Church Committee discredited COINTELPRO tactics which callously recklessly endangered and terrorized Plaintiffs and whole neighborhoods of innocent Oakland citizens. The citizens affected represent OPD CIDCoC acceptable collateral damage to achieve agreed upon and executed objectives and goals. OPD CID Chain of Command decisions approved "gun walking" tactics by the OPD CID CoC POST 9/11 COINTELPRO operation which directly resulted in the collateral damage murders of a minimum of five citizens of Oakland. Persons murdered connected by these OPD operation weapons are Waajid Bey, Odell Robeson, Michael Wills, and most auspiciously black journalist Chauncey Bailey. Factually Bailey was murdered by a OPDCIDCoC POST 9/11 operation connected teenage Black male using a "gun walking" tactic connected shotgun as the murder weapon. The confession and deal received by the purported killer of Chauncey Bailey was secured by OPD CIDCoC and ADA Christopher Lamiero of the Alameda County District Attorney's office, both of whom suppressed evidence of a "focus group" that conspired to entrap persons by watching the "walked" murder weapon for over a year and eight months before the black teenager was given the order to use it to murder Bailey by convicted OPDCIDCoC asset Yusuf Bey 4th. These murders occurred as a direct result of unreported MOR violations, malicious covert action "dirty tricks" and direct orders by senior members of OPDCIDCoC all occurring during and in direct defiance to 2003 federal court ordered "RIDERS" police reforms agreed to by defendants as part of the Negotiated Settlement Agreement (NSA). OPD has consistently and is currently failing to meet NSA reforms since missing the 2007 original federal court ordered and agreed upon deadline. Factually OPDCIDCoC is directly connected to Chauncey Bailey's never published last story. Bailey's story would have exposed the OPDCIDCoC POST 9/11 COINTELPRO gun walking operation against Plaintiffs and revealed egregious flaunting of the court mandated reforms by OPD chain of command thereby exponentially increasing the possibility OPD would have been ordered directly into federal receivership by federal Judge Thelton Henderson. This connection establishes motive in relation to actions by OPDCIDCoC in removing officer surveillance that led directly to the murder of Bailey. This is OPDCIDCoC suppressed evidence in the purposely compromised Bailey murder investigation case has never been investigated to this day.

**Count 3** 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a pattern and practice of Racial and Religious discrimination and other actions to violate plaintiffs' civil rights resulting in reckless endangerment, intentionally inflicting emotional distress, slander, failure to investigate, suppression of evidence, compromising criminal cases, racial and religious oppression of freedom of speech, assembly, and political affiliation

The OPDCIDCoC POST 9/11 COINTELPRO gun walking operation resulted in the active targeting for murder of the Plaintiffs who OPDCIDCoC knew represented Oakland Black Muslim and Black community leadership in public opposition to historic OPD abuses. OPD's chain of command's ultimate and achieved goal was the permanent destruction of the educational, economic, and political power base of the forty plus year established Black Muslim community in the Golden Gate District of Oakland of which Plaintiffs were publically known to be in leadership positions. This indiscriminate mass collateral damage carnage inflicted by OPDCIDCoC on the Plaintiffs and their community was based solely on its religious and ethnic makeup resulting in reckless endangerment and intentionally inflicting emotional distress on

Plaintiffs. These actions by OPDCIDCoC directly resulted in the ethnic cleansing level dispersal of the 40 year old homogenous Black and Muslim population out of the Oakland Golden Gate District. The resultant and purposely malicious black economic destruction occurred on a monetary scale that can be accurately compared in U.S. black history to Tulsa and Wilmington in the size and lasting economic damage done by authorities under color of law against an economically and politically prosperous independent self determinate black community.

Plaintiffs can present clear evidence for the court that OPD used classic discredited COINTELPRO tactics to slanderously attack the public reputation of plaintiffs causing massive mental, physical, and economic harm. Factually evidence of OPDCIDCoC fomenting division and violence between groups in the Black and Muslim community constitutes law enforcement creating and augmenting black on black violence and crime by OPDCIDCoC by and in conspiracy with other law enforcement agencies causing reckless endangerment and intentionally inflicting emotional distress on Plaintiffs. This fomenting of violence between distinct groups was accomplished by OPDCIDCoC making the command decision to choose to aid one side in a known dispute directly in line with classic discredited COINTELPRO tactics in the Black and Muslim community. Factually OPD CIDCoC was giving "special treatment" and aid to the known most violent and youngest/immature group in the community that opposed established community leadership in the form of Plaintiff's actions to restore stability in their community. This group was known by OPDCIDCoC since 2004 to be connected to crimes of fraud, murder of family members, and violence against plaintiffs and their community. By definition because of their value to achieving OPDCIDCoC's destructive objectives against Plaintiffs can accurately be considered as "assets" of OPDCIDCoC in their racial and religious biased based mission to permanently destroy and slander the reputation of plaintiffs as Black and Muslim as well as completely destroy Plaintiff's political and economic power in Oakland.

**Count 4** – 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a Pattern and Practice of Discrimination suppressing evidence, aiding & abetting, arming criminals, obstruction of justice, suppression of evidence, failure to investigate, slander, reckless endangerment, and intentionally inflicting emotional distress

OPDCIDCoC chose to aid and abet this group of known violent criminals with complete knowledge and suppressed evidence by OPDCIDCoC that their CID assets were actively seeking to murder Plaintiffs who were in public opposition to the assets occupation of religious place of worship 5832 San Pablo Ave. and OPDCIDCoC. The Plaintiff's concern for initially missing family member and last legal CEO of Your Black Muslim Bakery, Waajid Bey led to the creation of a family investigation on or about 2/27/04 whose acquired evidence was the basis of murdered black journalist Chauncey Bailey's last story. OPDCIDCoC has known that Plaintiffs have publically and repeatedly stated a clear difference and separation of groups that OPDCIDCoC can factually verify in their records dating back to 2004 and admitted by OPDCIDCoC in national public media interviews. Factually OPD CIDCoC can verify Plaintiffs have been in direct public opposition since finding a direct connection between this group and the murder of last legal YBMB CEO Waajid Bey. The use Classic discredited COINTELPRO tactics was purposely designed by OPDCIDCoC to destabilize, discredit, and destroy the Plaintiffs and the Oakland Black and Muslim community located in the Golden Gate district of Oakland. OPD Chain of command repeatedly made misleading statements and lies in the media and used failure to investigate crimes committed against

`plaintiffs as a tactic to suppress evidence of the existence of this POST 9/11 COINTELPRO operation against plaintiffs.

This suppression of evidence and covert aid resulted in slander of Plaintiffs by the public mistakenly attributing the negative actions of the small group of CID aided assets purporting to be Black Muslim (that OPD was giving special treatment) to the Plaintiffs and the rest of the community of law abiding Oakland Black and Muslim citizens that numbered in the hundreds. This slander has had direct negative effects on Plaintiffs' businesses and ability to pursue and secure financial means of support fr Plaintiffs and their dependants. Factually OPD CIDCoC aided and enabled this negative press to propagate unabated and achieve discredit of the plaintiffs, their businesses, and the entire group of Black Muslims to the public through the media. This misleading use of the media is evidence of OPDCIDCoC use of another classic COINTELPRO tactic of "public discrediting" against plaintiffs. OPDCIDCoC and IAD suppressed evidence that OPD was aiding CID asset Yusuf Bey 4th because he was in direct and violent opposition to the plaintiffs thus misleading the public and the media. All subsequent OPDCIDCoC investigations covered up that OPDCIDCoC was behind fomenting the violent factionalism being reported in the media to the detriment of plaintiffs and community members. All negative media reporting that is associated with Yusuf Bey 4th being referred to as CEO of YBMB can be clearly tied to the POST 9/11 COINTELPRO operation run by OPDCIDCoC thereby causing damage to plaintiff's reputation, inflicting mental harm, and damaging their business and social relations.

**Count 5** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a Pattern and Practice of Discrimination Suppressing evidence, aiding and abetting criminals, obstruction of justice, compromising criminal cases, reckless endangerment, and failure to investigate

OPDCIDCoC repeatedly has refused to acknowledge evidence given to them by plaintiffs that the group they were aiding were directly connected to the 2/04 murder of Plaintiffs' close business associate, family member, community leader and last legal CEO of Your Black Muslim Bakery (YBMB) Waajid Bey. Plaintiffs filed a missing persons report by calling OPD missing persons on 3/1/2004. This call was intercepted by OPDCIDCoC and assigned to CID homicide officers who included FBI agents without the knowledge of plaintiffs. Plaintiffs continued to press OPDCIDCoC and hold them accountable for progress in the Waajid Bey case and OPDCIDCoC willfully ignored Plaintiffs. Plaintiffs complained to OPDCIDCoC that still nothing was being done even after the 8/04 discovery of Waajid Bey's body wrapped in plastic and tape in a shallow grave in the Oakland Hills conclusively proving murder. This discovery was ignored and suppressed hard evidential proof of foul play connecting murder to fraud and the violent hostile takeover of community institution, Oakland black economic engine, and Black Muslim religious temple located at 5832 San Pablo Ave in the Golden Gate district of Oakland. Instead of following leads and evidence connecting persons with clear motive who usurped control of YBMB through murder, OPDCIDCoC rewarded the obvious suspects by refusing to investigate and suppressing evidence thus committing reckless endangerment of Plaintiffs lives and physical well being by emboldening persons known to be a direct and imminent life and physical danger to Plaintiffs simply because Plaintiffs were vigorously pursuing justice for murdered family member and last legal CEO of YBMB Waajid Bey. CID Officer Todd Crutchfield was assigned the Waajid Bey murder investigation by OPD CIDCoC, it was later revealed that CID Todd Crutchfield was CID partners with CID Derwin Longmire

' who were both supervised in common by CID Ersie Joyner. CID Longmire was revealed as "friend, mentor, and big brother" to chief asset of OPDCIDCoC Yusuf Bey 4ᵗʰ. ODCIDCoC continually directed aid and special treatment beginning in 2005 to opposition asset leader Yusuf Bey 4ᵗʰ and was found to be directly aiding multiple persons connected to the murder of Waajid Bey, the attempted murder of Plaintiff John Muhammad Bey, the targeting for murder of Plaintiff Ali Saleem Bey, and the murders of Robeson, Wills, and Bailey. The Waajid Bey murder case that Crutchfield was supposed to be investigating was tied to COINTELPRO operation tactics and actions against Plaintiffs by fellow CID officers and Chain of Command, constituting, MOR violations of compromising criminal cases, suppression of evidence, failure to investigate, failure to report known MOR violations, and conflict of interest to effect a cover up of OPDCIDCoC Covert Action (CA) "dirty trick" involvement. These OPD CID CoC aided persons, would categorically not have been able to maintain a position of power to attack plaintiffs' economic and political power without OPDCIDCoC compromising criminal cases, failure to investigate, suppression of evidence, conflict of interest, and direct OPD CID CoC "special treatment" in the form of a conspiracy with Alameda County District Attorney's office to suppress evidence, allow multiple concurrent bails, failure to enforce warrants (while vigorously enforcing warrants against plaintiffs), and active intervention on behalf of assets to compromise felony cases that directly affected the health and welfare of Plaintiffs constituting reckless endangerment and intentionally inflicting emotional distress on Plaintiffs individually and the whole Oakland Black and Muslim community located in and around the Golden Gate district of Oakland collectively.

**Count 6** – 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, failure to investigate, aiding and abetting criminals, reckless endangerment, intentionally inflicting emotional distress on Plaintiffs, accessory to attempted murder.

6/05 - OPD CID CoC failed to investigate and suppressed evidence of the connection of the group they were aiding to the 6/17/05 attempted murder of Plaintiff John Muhammad Bey by closing his case in less than 60 days without any basic investigative due diligence. The Plaintiff's case was closed by OPDCIDCoC, all the while knowing that the prime suspects in the attempted murder of the Plaintiff were assets of OPD CIDCoC. This act of OPDCIDCoC in closing the Plaintiff's case served to further embolden the criminals, cause reckless endangerment, and inflict emotional distress on Plaintiff and heinously acted as a de facto reward for the OPDCIDCoC known assets for attacking the plaintiffs, their businesses, and their family. OPDCIDCoC knew that John Muhammad Bey was not subversive, had no criminal record, and was a legitimate CEO of an Oakland business, and an employer of a traditionally unemployable segment of the Black Oakland population thus providing a positive societal service to Oakland. Plaintiff through his 10 plus year old business regularly worked in conjunction with OPD personnel involving security at the City of Oakland owned Convention Center. Plaintiff's business track record representing the "face" of Oakland to Oakland tourism can easily be independently verified as stellar, consistent, and legal.

**Count 7** – 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a Pattern and Practice of Discrimination, Suppression of evidence, compromising criminal cases, aiding and abetting criminals,

`accessory to fraud and murder, reckless endangerment and intentionally inflicting emotional distress on Plaintiffs

8/05 - Plaintiff Ali Saleem Bey then provided OPDCIDCoC evidence related to a Bey family civil suit that proved beyond a shadow of a doubt that persons being aided and abetted by OPD CID CoC were absolutely not the legal CEO or owners of Your Black Muslim Bakery. This public record civil suit's evidence produced in discovery proved OPDCIDCoC assets were guilty of fraud tied to the murder of legal CEO Waajid Bey, the takeover of corporate entity YBMB, the Attempted Murder of Plaintiff John Muhammad Bey and the targeting for murder of Plaintiff Ali Saleem Bey.

8/05 - Yusuf Bey 4th was charged by OPD with making "terrorist threats" using a shotgun in the Black and Muslim community. This OPD "terrorist" designation of Yusuf Bey 4th preceded his "friendship" with CID officer Derwin Longmire and his known by OPDCIDCoC false claim of being CEO of YBMB. This "terrorist" designation was known and preceded OPDCIDCoC approval of Yusuf Bey 4th receiving "special treatment" by OPDCIDCoC Howard Jordan, Jeffrey Loman, and Andre Rachal 11/05. At this time OPDCIDCoC knew Yusuf Bey 4th was directly connected to and benefitted from the murder of legal YBMB CEO Waajid Bey and the Attempted murder of CEO John Muhammad Bey (also using a shotgun). Any and all OPDCIDCoC aid to Yusuf Bey 4th that occurred after this designation was purposely detrimental to Plaintiffs constituting proof of reckless endangerment and intentionally inflicting emotional distress on Plaintiffs and the entire Oakland Black and Muslim community. Any and all direct aid and support to a person OPDCIDCoC identified as a "terrorist" after this point in time constitutes proof of maliciously purposely increasing "terrorism" in the Black and Muslim community. This specifically includes but is not limited to most egregiously allowing Yusuf Bey 4th to keep a "gun walked" stolen shotgun known to be personally a weapon of his choice by OPDCIDCoC Jordan, Loman, and Rachal in conspiracy with unidentified FBI agents 11/05 that resulted in the murder of Chauncey Bailey.

**Count 8** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Conspiracy of action by defendants in a Pattern and Practice of Discrimination, suppression of evidence, failure to investigate, obstruction of justice, aiding and abetting criminals, compromising criminal cases, accessory to fraud and murder, slander, reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs.

9/05 - Plaintiff Ali Saleem Bey officially in writing notified Alameda County Sheriff's Department (ACSD) and OPDCIDCoC that persons being aided by OPDCIDCoC posed a direct danger to Plaintiff's life, livelihood, and family in the form of an 9/1/05 Concealed Carry Weapon (CCW) application detailing recording evidence already known by OPDCIDCoC. This evidence was given to OPDCIDCoC by ACSD then suppressed by OPDCIDCoC and instead persons known to be targeting Plaintiffs were rewarded with OPDCIDCoC aid in the form of continued "special treatment" including increased access to fire arms.

10/05 – Access to the Plaintiffs' civil suit means OPDCIDCoC knew at the time of his death that Antar Bey was not the legal CEO of YBMB, was connected to the murder of Waajid Bey, the attempted murder of John Muhammad Bey and the targeting for murder of Ali Saleem Bey. OPDCIDCoC conflict of interest assignment of CID Longmire to be lead investigator suppressed evidence of the POST 9/11 COINTELPRO operation and actively subverted the civil suit filed by the plaintiff's family just months after the murder

of CEO Waajid Bey by choosing to publically acknowledge Yusuf Bey 4th as the new legal CEO of YBMB. This "crowning" was done by OPDCIDCoC with complete knowledge he is connected to fraud, murder, violence, and intimidation of witnesses in the civil case led by both Plaintiffs thus aiding and abetting known violent criminals thus recklessly endangering, intentionally inflicting emotional distress on Plaintiffs while purposely sabotaging Plaintiffs leadership efforts to regain and restore stability and safety in their community. OPDCIDCoC public designation of Yusuf Bey 4th as legal CEO of YBMB and subsequent "special treatment" served to add false leadership legitimacy to a person known by OPDCIDCoC to be a complete fraud and tied to murder and violent crimes against Plaintiffs and their family. OPDCIDCoC also purposely and with malicious intent falsely legitimized Yusuf Bey 4th leadership with the public through the media, this directly resulted in slander of Plaintiffs and entrapment of numerous young black males (mostly teenagers) continuing to come to Your Black Muslim Bakery thinking it still served as a black self improvement business where they could turn their lives around to the positive. Instead young black people that came to YBMB 2004 -2007 were subjected to orders to commit crimes by a person placed in power by OPDCIDCoC and controlled to the degree that he listened to "mentor" CID officer Longmire who reported to and received orders directly from OPDCIDCoC. Oakland law enforcement watched weapons they allowed this group headed by fraudulent CEO Yusuf Bey 4th to have, then be ordered to use them by a person they knew was a fraudulent leader. CEO Yusuf Bey 4th was created in part and supported in part directly by ODCIDCoC for the express purpose of destabilizing the Oakland Black and Muslim community and specifically targeting opposition leadership represented by Plaintiffs. This constitutes willful entrapment of young black mostly teenagers by OPDCIDCoC while simultaneously purposely swelling the ranks of persons known to be directly dangerous to the safety and well being of plaintiffs. Therefore OPDCIDCoC with known consequences and planned malice did purposely exponentially increase the danger to plaintiffs' lives and livelihoods by aiding and arming person known to be targeting plaintiffs for murder proving malicious reckless endangerment and intentionally inflicting emotional distress on Plaintiffs.

**Count 9** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, "gun walking" arming criminals, aiding and abetting criminals , obstruction of justice, targeting for murder of plaintiffs using proxies, willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs.

11/05 - OPDCIDCoC in the persons of Assistant Chief Howard Jordan, Deputy Chief Jeffrey Loman, and CID officer Andre Rachal in a meeting with as yet unnamed FBI agents agreed to allow Yusuf Bey 4th to keep a stolen shotgun and reduce charge him with Vandalism, down from Robbery/Theft that resulted in "officially" hiding the fact CID asset Yusuf Bey 4th retained a stolen weapon. This meets the classic definition of and is undeniable evidence of OPDCIDCoC using "gun walking" in the black and Muslim community to the detriment of Plaintiffs constituting reckless endangerment and intentionally inflicting emotional distress on Plaintiffs. More importantly, this decision by Defendants is direct evidence of purposeful de facto arming of persons known to be an active and direct mortal threat to the lives and liberty of plaintiffs by OPDCIDCoC. This action by the Defendants also directly resulted in increasing the Black and Muslim community murder and violence rates in subsequent years falsely justifying, actions against designated groups and individuals (including plaintiffs), increases in OPD operational budgets

·and federal resources, and increases in budgeted time and officer overtime all benefitting OPD to the detriment of and "on the backs" of plaintiffs and the Black and Muslim community.

**Count 10** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, aiding and abetting criminals committing fraud, attempted murder and murder, obstruction of justice, reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs.

2/06 - OPD CID officer Andre Rachal and a self identified federal ATF agent who identified himself as Ray Roundtree came to and questioned Plaintiff CEO Ali Saleem Bey at his place of business in a technology manufacturing plant in West Oakland. OPD CID and the ATF saw firsthand evidence of the non violent legitimate educational based business of Plaintiff Ali Saleem Bey which served to completely discredit the subversive label applied by CID Rachal in 2002 and the use of violent factionalism tactics authorized by OPDCIDCoC and being employed by OPDCIDCoC against the Plaintiffs constituting willful reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs. CID and ATF told plaintiff Ali Saleem Bey the reason for questioning him was that they were purportedly focusing their investigation on the Victor Foster AKA Nedir Bey connection to and who by motive benefited from the murder of legal CEO Waajid Bey by receiving funds from the fraudulent refinance of 5832 San Pablo Ave and publically stating he was Antar Bey's "spiritual advisor". Antar Bey was OPD chief suspect in the murder of legal CEO Waajid Bey and as stated leader, the person who had to authorize the attempted murder of Plaintiff John Bey by persons connected to the takeover of YBMB. This OPDCIDCoC known fraudulent real estate refinance of 5832 San Pablo Ave. by persons who benefitted directly from the murder of Waajid Bey was the direct causation of the 2006 fraudulent federal Bankruptcy filing by CID Asset and known fraudulent CEO Yusuf Bey 4th. ATF agent Roundtree and OPD CID officer Rachal admit to Plaintiff that OPDCIDCoC knew Your Black Muslim Bakery corporation was taken over by fraud and murder connected to Antar Bey and Victor Foster. CID Rachal also admits OPDCIDCoC's main and historic goal was the destruction of the Your Black Muslim Bakery (the OPD known economic and religious institution of the Black and Muslim community) based upon historic bias religious misconceptions of everyone in the Muslim community being the "same" in OPDCIDCoC's eyes . CID and ATF admit to Plaintiff of knowing of specific persons continuing to receive OPDCIDCoC special treatment even with direct knowledge of these same persons being directly connected to multi-million dollar fraud related to the murder of Waajid Bey and the illegal occupation of 5832 San Pablo Ave and their direct connection to the attempted murder of Plaintiff John Muhammad Bey. CID and ATF admit knowing the existence of a plaintiff led public civil suit proving fraud tied to murder, witness intimidation, and the imminent present danger to the life of plaintiff Ali Saleem Bey posed by the same persons OPD CID Rachal and CIDCoC with FBI assistance secretly armed with a shotgun "gun walked" weapon just over 2 months prior. Factually OPDCIDCoC "gun walking" tactics were arming and giving special treatment to persons committing crimes against Plaintiffs while simultaneously professing to be investigating crimes committed against plaintiffs. This is a direct conflict of interest, compromising of criminal cases, suppression of evidence constituting willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs lives and freedom and makes OPDCIDCoC directly responsible for the harms and damages incurred by Plaintiffs and family members as a direct result of OPDCIDCoC actions. CID officer

Rachal has stated that he reported directly to Chief of Police Wayne Tucker therefore OPDCIDCoC knew unequivocally the persons they were providing "special treatment" by aiding, abetting and arming were not legal owners of 5832 San Pablo Ave. nor were they legal owners of the corporation Your Black Muslim Bakery and posed a direct danger to the lives and livelihoods of the Plaintiffs constituting willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs and those of the community members that opposed them with plaintiffs.

**Count 11** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, failure to investigate, aiding and abetting criminals, fraud, murder and theft of religious land, suppression of religious freedom, compromising criminal cases. willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs

10/06 - OPDCIDCoC had complete knowledge that a fraudulent federal bankruptcy was filed on Black Muslim religious land by the same CID asset (Yusuf Bey 4th) they armed using "gun walking" and being aided by "mentor" CID officer Derwin Longmire who reported directly to OPD CID CoC. OPD assistant chief Howard Jordan worked directly with DOJ Assistant U.S. Attorney Douglas Sprague, a Federal Bankruptcy Fraud expert (according to his online DOJ profile) during this fraudulent bankruptcy by OPD CID CoC asset Yusuf Bey 4th .This fraudulent bankruptcy was successfully completed by the federal judge Jellen when he ignored ample evidence of fraud and conspiracy by ordering the Chapter 7 liquidation of Black Muslim religious land located in the golden Gate district of Oakland. OPD CID CoC did not "just" sit passively and allow crimes to be committed against the plaintiffs and the Oakland Black and Muslim community, this liquidation of assets was accomplished with stated purpose, maliciously fomenting violence to suppress dissent opposition and direct special treatment to known criminals committing known crimes against Plaintiffs and Black and Muslim citizens of Oakland. Historical racial and religious prejudices by OPDCIDCoC and other law enforcement agencies drove them to directly intervene on behalf of their asset making them guilty of aiding and abetting in the POST 9/11 federal crime of Muslim religious land theft committed to the detriment of the Plaintiffs and the entire Black and Muslim population of the Golden Gate district. 5832 San Pablo Ave. in addition to a business was known through surveillance and infiltration by OPDCIDCoC as place of religious worship by Black Muslim citizens for decades.

5/07 – OPDCIDCoC assets led by Yusuf Bey 4th kidnapped and tortured two civilian women in an attempt to forestall bankruptcy creditors from taking 5832 San Pablo Ave. This Bankruptcy was a result of the OPDCIDCoC known post murder of legal YBMB CEO Waajid Bey, fraudulent religious land real estate transaction between Davis Mortgage and OPDCIDCoC assets. OPDCIDCoC knew immediately that OPDCIDCoC assets committed this crime terrorizing the community, yet failed to begin an investigation of the crime scene for over a week. Then in the course of the kidnapping and torture investigation OPD OPOAA personnel identified OPDCID Longmire as intervening on behalf of said assets, thus purposely compromising a felony criminal case of OPDCIDCoC assets connected to this crime. As further evidence of complicity by OPDCIDCoC even after knowing of this crime and the 3 murders directly connected to OPDCIDCoC asset Yusuf Bey 4th CID Longmire continued to publically profess friendship with Yusuf Bey 4th well after the world knew of Yusuf By 4th's connection to these heinous crimes.

·On July 8th 2007 Odell Robeson was murdered and on July 12th Michael Wills was murdered. OPDCIDCoC knew of the immediate connection to persons in their POST 9/11 operation based upon the weapons used being attached and tracked by the multi-year OPDCIDCoC gun walking operation tying these latest murders directly to the murder of Waajid Bey in 2004.

**Count 12** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations, defamation, aiding and abetting fraud and murder, reckless endangerment, constituting willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs

7/9/2007 Vashonne Huff representing the City of Oakland administration was given direct hard evidence by plaintiffs of an "off the books" OPDCIDCoC "dirty tricks" Covert Action (CA) COINTELPRO operation that revealed a pattern and practice of OPDCIDCoC misconduct, suppression of evidence, failure to report known Misconduct, and failure to investigate crimes against the plaintiffs and against the Oakland Black and Muslim community causing willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs. This CA COINTELPRO operation directly resulted in the murder of innocent Oakland civilians. This hard evidence was returned to Plaintiff Ali Saleem Bey and Plaintiff was instead instructed by the Mayor's staff Vashonne Huff (according to her at the direction of the Mayor's legal counsel) to notify the Alameda County D.A. and to file a complaint with the Oakland Citizen's Police Review Board (CPRB). As proof of the overwhelming validity of the evidence brought to the City of Oakland by Plaintiff Ali Saleem Bey and his credibility as a City Hall known and respected Black and Muslim community leader, the City of Oakland's Mayor's office wrote and gave a letter of support directly to Plaintiff specifically to stop the fraudulent federal bankruptcy of community institution and Black Muslim religious place of worship 5832 San Pablo Ave. Plaintiff Ali Saleem Bey also received multiple Oakland Democratic political representative letters of support for 5832 San Pablo Ave stating it was an institution that served Oakland. This independently validates and verifies YBMB as a universally known institution that served the City of Oakland. The letters of support given to Plaintiff Ali Saleem Bey also proves the Plaintiff's political graces and power OPDCIDCoC sought to sabotage and subvert. Factually Plaintiff Ali Saleem Bey received letters of support from an Alameda county Board of Supervisors member, a State of California legislator, and a Congressperson all verifiably known before the chapter 7 liquidation of Muslim religious land through independent media reporting. OPDCIDCoC in conjunction with POST 9/11 Republican Bush Administration appointed and led S.F. U.S. Attorney office and Alameda County D.A. office used this political support of the Plaintiffs in an attempt to slander and smear the above Democratic politicians by suppressing evidence of covert aid to assets in opposition to Plaintiffs.

**Count 13** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations, aiding and abetting criminals in fraud and murder, willful reckless endangerment constituting willful reckless endangerment and intentionally inflicting emotional distress on Plaintiffs

7/13/07 Plaintiff Ali Saleem Bey contacted the D.A. office notifying them by letter of the crimes committed by OPDCIDCoC and assets against Plaintiffs, this contact was never responded to by Alameda County District Attorney's office. Plaintiff Ali Saleem Bey then filed the CPRB intake complaint and gave 2 hours of taped interview to CPRB investigator and City of Oakland employee under the City Administrator's office Karen Tom. Plaintiff clearly stated OPDCIDCoC connection to crimes against Plaintiffs and family and a demand for an independent investigation of OPDCIDCoC based upon conflicts of interest, failure to supervise, failure to investigate and suppression of evidence. Then CPRB Executive Director Joyce Hicks closed the case the same day it was filed, stating it was a complaint against OPDCIDCoC and not an individual officer. The CPRB then opened IAD complaint 07-0538 by notifying OPD Internal Affairs Division (headed by disgraced Tucker appointed Captain Edward Poulson) and Chief of police Wayne Tucker of Plaintiff Ali Saleem Bey's complaint. Pouslson was an appointee of Tucker and therefore a conflict of interest existed because Tucker was directly connected to and implicated in IAD complaint 07-0538 as Chain of Command. Plaintiff's IAD 07-0538 was never investigated by IAD to suppress evidence of the POST 9/11 COINTELPRO gun walking operation's connection to OPD Chain of Command. IAD 07-0538 was closed by current Chain of Command promoted DC David Downing without purposely connecting it to the murder of Chauncey Bailey that occurred while 07-0538 was open and purportedly being investigated even though complainant and Plaintiff Ali Saleem Bey was universally known to be the source of Bailey's last story. Factually, Chauncey Bailey was known by OPDCIDCoC to be writing a story given to him by Plaintiff about IAD complaint 07-0538 therefore not connecting the two investigations was willful suppression of evidence on the part of IAD Chain of Command.

**Count 14** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations.

7/16/07 Plaintiff Ali Saleem Bey also filed a criminal complaint against CIDOPDCoC assets with OPD specifically for the purpose of establishing a paper trail demonstrating that OPDCIDCoC knew before the completion of the fraudulent federal bankruptcy against Oakland Black Muslim religious land that it was persons being aided and abetted by OPDCIDCoC committing crimes against Plaintiffs and the entire Black and Muslim Oakland community. Ex assistant chief Jordan can be independently verified as lying to the public that OPD investigated this claim by Plaintiff (proving OPDCIDCoC suppression of evidence) and dismissed the claim by Plaintiff as easily disproved because "we (OPD) looked at what he (Plaintiff) filed and it really wasn't much" When in reality Jordan knew it as valid constituting failure to investigate, suppression of evidence, and a conflict of interest because Jordan was directly implicated in the allegations being made against OPDCIDCoC assets.

7/17/07 OPDCIDCoC knew that only Four (4) days after filing IAD complaint 07-0538 Black Journalist Chauncey Bailey was given the story of OPD CID CoC involvement in the crimes being committed against Plaintiffs and Black Muslims in Oakland by Plaintiff Ali Saleem Bey. Factually Mr. Bailey was not and never did conduct an investigation of YBMB. Mr. Bailey simply wrote the story based upon the evidence accrued in the Plaintiff's family investigation which was started immediately after the disappearance/murder of Waajid Bey. This information was given to Black Journalist Chauncey Bailey by Plaintiff Ali Saleem Bey in a two plus hours meeting in the POST newspaper office. Mr. Bailey said he

˙didn't need to corroborate plaintiff Ali Saleem Bey's story based upon hard evidence presented by Plaintiff, Plaintiff's known leadership position in the Black Muslim community, and Plaintiff's credibility based upon a 10 plus year trustworthy relationship with Plaintiff. Bailey's last story was the first segment of an intended multi segmented story beginning with alerting the Black community of the impending demise of community institution Your Black Muslim Bakery in a fraudulent OPD enabled federal Bankruptcy. Bailey's never published last story covered how, when, and by whom the takeover of the Bakery was accomplished and how law enforcement had infiltrated and began directing the institution. Before writing the last story Bailey clearly stated to Plaintiff Ali Saleem Bey that he (Bailey) was currently investigating a pattern and practice of OPDCoC crimes and misconduct against the greater Oakland Black community and that the public deserved to know. A complete failure to investigate led to suppression of evidence, and compromising the Bailey murder investigation. Proof of suppressed evidence is readily available that before his murder by a Covert Action OPD operation connected person, (a never questioned by OPD or any other involved law enforcement agency to date) employee of the City of Oakland CPRB stated that Mr. Bailey personally visited the CPRB office investigating the Oakland police just days prior to his murder by OPDCIDCoC operation connected persons.

**Count 15** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, aiding and abetting criminals known to pose a direct life and death threat to plaintiffs, suppression of evidence, compromising criminal cases, obstruction of justice, failure to supervise, failure to investigate, failure to report known MOR violations, willful reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs.

7/16/2007 Solano County sentencing deferment - Knowing the direct connection to kidnapping and torture and July 2007 back to back murders of Robeson 7/8/07 and Wills 7/12/07 on Oakland streets, then for an as yet undisclosed and never investigated reason, OPDCIDCoC and outside cross jurisdictional agencies meeting on a regular weekly basis before and after the murder of Chauncey Bailey concerning Yusuf Bey 4th and crimes being committed, either sat and watched or actively intervened with the Solano County D.A. office and Judge allowing Yusuf Bey 4th to have his 8 month sentence deferred thus putting OPDCIDCoC asset Yusuf Bey 4th back on the street and exponentially increasing the opportunity to do harm to Plaintiffs who were known by OPDCIDCoC to be active targets for murder, constituting willful reckless endangerment and inflicting emotional distress on Plaintiffs. OPDCIDCoC knew of their asset's court date and knew Yusuf Bey 4th was chief suspect in multiple murders committed mere days before that court date posed an imminent danger to not only Plaintiffs but also to the entire Oakland Black and Muslim community. OPDCIDCoC risked not only Plaintiffs and civilian citizens lives but also exponentially increased life threatening danger to officers by increasing the chance and opportunity of organized resistance to the planned 200 plus officer "false flag" raid by leaving the known absolute leader and person that gave the orders, and main target of the raid in place after having the opportunity to peacefully take him and any others into custody after passing through security metal detectors in the Solano County court house. This action or inaction made it possible for OPDCIDCoC asset Yusuf Bey 4th to have additional time to contemplate how to get away with murdering Plaintiff Ali Saleem Bey and ultimately the freedom to decide to order the murder of Black Journalist and police "gad fly" Chauncey Bailey. Bailey's last story would have revealed OPDCIDCoC in criminal activities

.   .

connected to fraudulent CEO Yusuf Bey 4th's fraudulent federal Bankruptcy liquidation of Oakland Black Muslim religious land and factually fomenting and creating black on black murder and violence in Oakland. OPDCIDCoC knew that the Bailey story would have expose that 99% of the Bey family was no longer in or associated with YBMB since three months after the coup de tat, that law enforcement created community terrorist Yusuf Bey 4th, and that law enforcement was arming, aiding, and abetting Yusuf Bey 4th against Bey family members represented by Plaintiffs thereby exposing the impending raid of Your Black Muslim Bakery as a COINTELPRO false flag operation. This "false flag" raid was against a person and fictitious "Muslim" terrorist persona OPDCIDCoC is guilty of creating to justify POST 9/11 federal aid in the form of money and resources. This false flag operation was enabled by the 2002 defendants Longmire and Rachal's fraudulent designation as subversive and terrorist of all Black and Muslim persons associated with, living, working, educating, and worshiping in the Golden Gate district of Oakland. OPDCIDCoC knew Yusuf Bey 4th violently opposed Plaintiffs through informants. OPDCIDCoC factually knew Yusuf Bey 4th had populated the 40 year old Black Muslim Oakland institution with more "nonMuslim" teenage persons in leadership positions from San Francisco than from Oakland. Factually OPDCIDCoC knew that these young men were recruited by Yusuf Bey 4th from the San Francisco jail and were in Oakland less than half a year. Using CID Longmire's relationship with Yusuf Bey 4th OPDCIDCoC purposely aided this violent group occupying 5832 San Pablo Ave. against known, stable, non violent, community and politically accepted known Black Muslim leadership from Oakland as represented by Plaintiffs constituting willful reckless endangerment and inflicting emotional distress on Plaintiffs.

**Count 16** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations, making false statements

8/1/2007 was the original date set for the OPDCIDCoC false flag raid of 5832 San Pablo Ave. This date was revealed by Co-Defendant Joyner to be changed by OPDCIDCoC Wayne Tucker and Howard Jordan in legal documents related to a lawsuit filed by Co-Defendant Longmire to the day after the assassination of Chauncey Bailey. Tucker and Jordan latter lied to the public about the reason for delaying the raid thereby calling into question their motives connected to Bailey's murder by a weapon they "gun walked" into the hands of his confessed murdered that has never been investigated to this day. In addition, uninvestigated questions remain about the final excuse given that the raid was delayed to allow time for command personnel to return from vacation. One of the biggest questions being "if the 200 officer multi-agency Raid was planned 2 weeks in advance as stated and there was a known community safety threat based upon multiple murders occurring back to back with a great possibility of more happening (ultimately Bailey) why wasn't officer Kozicki and officer Tracey ordered back by chain of command sometime in the two week period?" they were only a few hours drive away. Coincidently or not, officer Koziki was connected to an OPD investigation Bailey was writing about concerning OPD extortion of Black club owners downtown before writing his last story about 07-0538.

8/2/2007 After, failing to take Yusuf Bey 4th into custody in Solano County and after multiple incidents of failure to enforce outstanding warrants, resulting in knowingly and purposely allowing a known community threat (created by OPDCIDCoC) to remain free of custody to plot and execute more violence against Plaintiffs. OPDCIDCoC aided asset Yusuf Bey 4th contemplated murdering Plaintiff Ali Saleem Bey

·during this time afforded by OPDCIDCoC according to Grand Jury testimony. The ultimate direct end result of actions and inactions of OPDCIDCoC was Mr. Bailey's brazen daylight murder in downtown Oakland (mere blocks from the police station). Factually, Mr. Bailey was shot to death using the shotgun weapon that was "gun walked" into the hands of the convicted murderer of Bailey through OPDCIDCoC Jordan, Loman, Rachal, and unidentified FBI agents providing "special treatment" and "under charging" in a meeting at FBI headquarters 11/05. The assassination of Bailey is directly connected to the OPDCIDCoC POST 9/11 COINTEPLRO "gun walking" operation by a black teenager who was given Bailey's murder weapon and ordered to use it by OPDCIDCoC asset Yusuf Bey 4th. This constitutes entrapment based upon the facts that the murder weapon was supplied by OPDCIDCoC, that the order to murder Bailey could not have been given without direct aid by OPDCIDCoC in keeping asset both on the street and in a position of power to give the order to shot Bailey and the fact that YBMB was being steered by OPDCIDCoC through officer Longmire directly to the absolute final authority leader of Devandre Broussard who testified he originally came to YBMB to improve himself based upon the reputation of YBMB before being infiltrated by OPDCIDCoC. This black teenager Devandre Broussard confessed and testified in court to have been ordered to murder Black journalist and police "gad fly" Chauncey Bailey by OPDCIDCoC asset Yusuf Bey 4th (who was free to do so based upon special treatment from OPDCIDCoC) for the express purpose and motive of suppressing Bailey's last story that implicated both Yusuf Bey 4th and OPDCIDCoC in the assassination of Waajid Bey, the attempted assassination of Plaintiff John Muhammad Bey and the targeting for assassination of Plaintiff Ali Saleem Bey, the fraudulent federal bankruptcy theft of Plaintiffs' religious place of worship 5832 San Pablo Ave. and associated properties, and a host of criminal and terrorist acts inside of and negatively affecting the Plaintiffs' community.

8/3/2007 OPDCIDCoC using Longmire's inside knowledge garnered as "mentor" to lead asset Yusuf Bey 4th OPDCIDCoC finally gave orders to raid their own assets illegally occupying 5832 San Pablo Ave. and end the COINTELPRO tactic operation causing Black and Muslim community violence and targeting of Plaintiffs for murder. Through court depositions it was revealed that this decision to raid their assets in a false flag raid by OPDCIDCoC was only initiated after the Murder of Michael Wills, the only Caucasian murder victim of the POST 9/11 COINTELPRO operation. Factually, up until the murder of Mr. Wills all victims of this OPDCIDCoC operation were Black or Black and Muslim.

**Count 17** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, aiding and abetting criminals known to pose a direct life and death threat to plaintiffs, suppression of evidence, compromising criminal cases, obstruction of justice, failure to supervise, failure to investigate, failure to report known MOR violations, willful reckless endangerment, and intentionally inflicting emotional distress on Plaintiffs.

OPDCIDCoC has never been investigated for the OPDCoC "order" removing officer surveillance on OPDCIDCoC gun walking assets occupying 5832 San Pablo Ave. on 8/2/07 less than 24 hours before the planned 200 plus officer Raid on 8/3/07, thereby giving the persons (ultimately convicted) the convenient unimpeded opportunity to murder Bailey and suppress his last story linking OPDCIDCoC to crime against the Plaintiffs. The murder of Bailey was proved in court to have been committed by OPDCIDCoC gun walking assets using the 11/05 Defendant "gun walked" shotgun as the Bailey murder

`weapon. The 7/07 murders of Robeson, Wills, and the 8/2/07 murder of Bailey are directly tied to the POST 9/11 COINTELPRO "gun walking" operation initiated by CID Longmire at the behest of CID Andre Rachal, authorized by Tucker and managed by Jordan and Loman constituting members of OPDCIDCoC.

OPDCoC Tucker and Jordan then lied to the public about the facts related to delaying the raid of 5832 San Pablo Ave. until 22 hours after the murder of Bailey. This has never been investigated and constitutes a conflict of interest in allowing OPDCIDCoC to assign CID Longmire (publically admitted by Longmire to be a "CID chain of command directed" continuing friend and benefactor to Yusuf Bey 4th" and corroborated by Yusuf Bey 4th's attorney Lorna Brown who identified CID Longmire as Yusuf Bey 4th's "mentor") to be lead of the Bailey murder investigation. This assignment is a conflict of interest because Bailey's last story included details related to IAD complaint 07-0538 exposing OPDCIDCoC crimes against the Plaintiffs. OPDCIDCoC Howard Jordan is on public record admitting OPD never read Bailey's last story and did not make any substantive attempt to obtain Bailey's last story because as stated by Jordan OPD did not need to read the story, even though it was acknowledged that Bailey's last story was the motive for his murder making it critical and germane evidence to any investigation of Bailey's murder. OPD CIDCoC supervisor to Longmire (mentor of asset Yusuf Bey 4th) is quoted in the media as stating "In my opinion several members of the Bakery have been involved in a very violent enterprise and carried themselves in a manner that was disrespectful to the community and law enforcement, Joyner said, They are very callous and appear to have believed that they were untouchable". This quote is an admission and a confession that OPDCIDCoC aid to Yusuf Bey 4th through Joyner supervised Longmire was designed to create the mentality in "their" assets that they were "above the law" and could commit crimes and violence in the community believing they above the law. This OPDCIDCoC asset nurtured mentality directly resulted in willful reckless endangerment, intentionally inflicting emotional distress on Plaintiffs and most heinously OPDCIDCoC operation actions directly causing murder, terrorism, and destruction in the Oakland Black and Muslim community.

OPDCIDCoC has a clear motive connected to Bailey murder by OPDCIDCoC assets based upon the fact that, Bailey's last story and investigation of OPD would have revealed an OPD chain of command culturally taught pattern and practice of discrimination in the Black community, the OPDCIDCoC connection to the takeover of YBMB inc. and subsequent increase in violence, crime and murder that resulted, the murder of last legal YBMB CEO Waajid Bey, the Attempted murder of plaintiff CEO John Muhammad Bey, the targeting for murder of Plaintiff CEO Ali Saleem Bey, and the fraudulent federal Bankruptcy theft of Muslim religious land. Failing to investigate the causal connection of Bailey's last story to Plaintiff filed IAD complaint 07-0538 is suppression of evidence and makes OPDCIDCoC handling of the Bailey murder investigation a clear conflict of interest involving suppression of evidence and compromising criminal cases which has been factually already proven by CIDCoC MOR violations found connected to the OPDCIDCoC mishandling of the Bailey murder investigation.

This OPDCIDCoC attempted cover up of their connection to asset Yusuf Bey 4th, gun walking, Black on Black murder, and the murder of Bailey triggered a request by the Defendant City of Oakland resulting in a conflict of Interest tainted, subpar, incomplete, and publically recognized as defective investigation of IAD 07-0553 by the State of California Attorney General's office that was completely devoid of any reference to IAD complaint 07-0538 and Plaintiffs direct connection based upon the fact that OPD IAD

'officer Chan failed to turn over evidence to State investigators constituting suppression of evidence and compromising criminal cases.

OPDCIDCoC conspired to suppress evidence and the existence of co-conspiracy related to actions taken in conjunction with Alameda County District Attorney's (ACDA) office. The ACDA conducted a conflict of interest tainted investigation by assigning and using exOPDCID (retired) officer Robert Chenault to investigate his former colleagues in OPDCIDCoC's connection to and actions in investigating the murder of Chauncey Bailey. ACDA was actively "involved" in OPDCIDCoC led POST 9/11 anti-Muslim COINTELPRO "gun walking" in the Black and Muslim community as a member of the COINTELPRO "focus group" (as revealed by OPDCIDCoC officer Joyner). This investigation of a former OPDCIDCoC member of OPDCIDCoC was also devoid of any reference to IAD 07-0538 and its connection to IAD 07-0553 or the murder of Bailey. The State DOJ investigation of IAD 07-0553 resulted in findings of mass OPDCIDCoC MOR violations directly connected to OPDCIDCoC (Loman, Joyner) assignment and managment of conflict of interest lead investigator Derwin Longmire who was accused of failure to investigate his self acknowledged friend and OPDCIDCoC asset Yusuf Bey 4th. IAD 07-0553 and subsequent State and D.A. investigations of CID personnel was reported on by current interim Chief of Police Sean Whent to former assistant chief of police Howard Jordan who ran the POST 9/11 COINTELPRO operation against Plaintiffs. Plaintiffs gave Bailey his last story about OPD criminal activity in the Balck and Muslim community making this report by Whent also a suppression of evidence, a compromise of criminal cases and conflict of interest tainted report if it is devoid of any facts related to 07-0538, Tucker, Jordan and OPDCIDCoC participation in POST 9/11 COINTELPRO gun walking operation against Plaintiffs.

**Count 18-** 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations

Plaintiff Ali Saleem Bey filed IAD complaint 07-0538 is directly connected to and evidentially material to the murder investigation of Chauncey Bailey that resulted in IAD complaint 07-0553 but was suppressed and compromised by IAD headed by disgraced officer Poulson who was appointed by co-Defendant Tucker and has never been investigated in relation to OPDCIDCoC connection to the murder of Chauncey Bailey to this day. Current OPD Chain of Command including Sean Whent, David Downing, and IAD Captain Oliver Cunningham have the same relationship between current chain of command and IAD and still refuse to acknowledge the link between the two complaints (07-0538 and 07-0553) thus suppressing evidence and compromising both cases in refusing to admit the known causal relation between 07-0538 and 07-0553 necessitating the reevaluation and reopening of the Bailey murder investigation in light of the new evidence that has surfaced connecting OPDCIDCoC to gun walking in the Black and Muslim community, and to Bailey's murder as a result of this OPDCIDCoC operation. Factually Bailey's last story connected to Plaintiff filed IAD 07-0538 is universally agreed upon by law enforcement as the motive for Chauncey Bailey's murder. Bailey's last story was specifically about the John Bey and Waajid Bey cases and the Defendant's direct connection and resultant suppression of evidence through lack of investigation.

· · 

·4/11 - Plaintiffs notified the federal monitor and now current compliance director Robert Warshaw of the crimes committed by OPDCIDCoC against plaintiffs during the NSA reform period. Plaintiff's complaints and evidence were ignored, never investigated and never reported by the federal monitor in subsequent NSA reporting even though the magnitude of violations were obviously pertinent to defendant's publically espoused agreement to enact reforms to address historical violations of civil rights against citizens of Oakland including plaintiffs. This lack of reporting by the monitor is in direct contradiction to reporting on Occupy related violations against non Black and Muslim civilians. This lack of acknowledgement and reporting by the City of Oakland paid federal monitor calls into question his impartiality and shines a needed public light on potential bias and prejudices of the assigned federal monitor in regards to Oakland Black and Muslim citizens. A quick look at the history of the monitor will reveal a connection to COINTELPRO era law enforcement training and J. Edgar Hoover FBI destructive agenda operations against urban Black and Muslim citizens labeled "Black Nationalist" and "Rabble Rousers" using illegal and discredited COINTELPRO tactics. Based upon inaction to date and his dubious racial and religious policing history plaintiffs have no confidence in his ability to correct the current chain of command's culture of corruption specifically against Black and Muslim citizens who stand up to law enforcement abuses.

9/11 - Plaintiffs again filed a complaint with the Oakland CPRB detailing the crimes committed by OPDCIDCoC. This time the complaint had additional overwhelming evidence that surfaced substantiating and validating the first Plaintiff filed IAD complaint 07-0538 of OPDCIDCoC complicity in crimes against Plaintiffs, their families, and their community. As resounding public proof of current iteration of CPRB toothlessness to the community, after a year of sitting on the complaint doing nothing, the City Administer hired CPRB city employee staff again closed the case stating they had no jurisdiction.

**Count 19** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations

9/27/12 - One year later Plaintiffs presented to the CPRB Board (made up of Oakland civilians) disputing the CPRB City Administrator employed staff ruling to close the case without investigation. Upon presenting the same new and newly revealed evidence we presented to the court appointed federal monitor Warshaw of PPS LLC, and court appointed compliance director Thomas Frazier, the Citizens Police Review Board (comprised of citizens of Oakland) in 2012 unanimously voted to bypass the City of Oakland's Administrator's office and directly forward the Plaintiff's complaint and request for an independent federal criminal investigation by the Civil Rights Division Department of Justice in D.C. of the Defendants City of Oakland and Oakland police department for POST 9/11 anti Muslim discrimination against Plaintiffs by Defendants. When notified of this complaint by Plaintiffs requesting action by Defendants in pursuing the independent investigation Arturo Sanchez representing the City of Oakland administrator's office replied to Plaintiffs that the CPRB is not a part of the City of Oakland and therefore the City Administrator does not recognize the request. The same City Administrator office agreed to support and pay for an independent investigation of IAD Occupy related conflict of interest using far less as reasoning for supporting this decision proving a continued pattern and practice of discrimination in treatment of Plaintiffs by Defendants.

'4/13 - Plaintiffs then petitioned current NSA court ordered Compliance director Frazier for an independent investigation of 07-0538 filed by plaintiffs to be conducted by his office independent of OPD. This resulted in the Compliance Director's office instead contacting OPD IAD to initiate IAD complaint 13-1062 by Plaintiffs. IAD 13-1062 is an investigation of IAD 07-0538 and the cases originally contained therein, specifically the investigation of the murder of last legal YBMB CEO Waajid Bey and the attempted murder investigation of Plaintiff John Muhammad Bey. As a result Plaintiffs have again found that OPD Chain of command currently engages in discrimination against plaintiffs through a pattern and practice of suppression of evidence and failure to investigate related to the multiple complaints by Plaintiffs. OPD Internal Affairs Department is currently engaging in obstruction of justice, evidence suppression, compromising criminal cases and failure to investigate the current conflict of interest tainted and as yet (3/14) unfinished IAD complaint 13-1062 filed by plaintiffs July 24th 2013 over 6 months ago. The City of Oakland administration and the Oakland Police Department have been notified that IAD 13-1062 is a conflict of interest tainted investigation that meets and or exceeds the standards previously set by the City of Oakland administration seeking an independent investigation of (demographically non Black and Muslim) Occupy related OPD MOR violations. When presented by Plaintiffs with overwhelming evidence to support equal treatment, City of Oakland and OPD continue to refuse Plaintiffs requests for equal treatment constituting clear pattern and practice of discrimination.

**Count 20** - 42 U.S.C. § 1983 & 42 U.S.C. § 1985 Pattern and Practice of Discrimination, suppression of evidence, obstruction of justice, compromising criminal cases, failure to supervise, failure to investigate, failure to report known MOR violations, and defamation of character

Defendants City of Oakland and City of Oakland Police Department have repeatedly been given clear evidence and have been repeatedly notified by Plaintiffs (in public meetings and in writing) and by 3rd party independent reviewers of the need for an outside City of Oakland initiated and paid for independent investigation of OPDCIDCoC violations against Plaintiffs. The current City of Oakland Mayor Quan's office and the former City administrator Santana's office have ignored clear evidence of crimes showing defendant City of Oakland Police Department and then current Chief Howard Jordan engaging in discriminatory actions against Black and Muslim Oakland residents. Including ignoring presented evidence of Defendant OPD running criminal racketeering level operations connected to multiple murders, ethnic cleansing, economic terrorism, million plus dollar fraud, kidnapping and torture, multiple shootings, State aided and abetted theft of Muslim religious land, slanderous character assassination, and destruction of Black and Muslim owned businesses all adversely affecting and violating Plaintiff's civil rights specifically and whole populations of Oakland citizens collectively.

The list of current law enforcement agencies that participated in this POST 9/11 operation against Plaintiff reads almost exactly the same list as the historic COINTELPRO operation agencies revealed and tactics discredited in the 1970's by Citizens' Commission to Investigate the FBI and the Washington D.C. Church committee hearings. A true independent Investigation cannot be performed by any locally based federal and local law enforcement agencies who participated in or are connected to the POST 9/11 COINTELPRO gun walking operation against Plaintiffs' in violation of their civil rights.

### Injury

Plaintiffs have suffered mental, physical, reputation, and economic injury as a result of a systemic pattern and practice of discrimination by Defendants and conspirators et al.

### Plaintiffs Request for Relief:

A. The only reasonable service of Justice acceptable to Plaintiffs will be a non bias independent federal criminal investigation of defendants and conspirators collectively connected to IAD 07-0538, current IAD 13-1062, and the murder of Black journalist Chauncey Bailey. In the case of Current IAD 13-1062 - Evidence of federal, state, county and Defendants city of Oakland and Oakland Police department conspiratorial collaboration dictates an independent transparent Washington D.C. Civil Rights Division (D.C. CRD) led investigation based upon local FBI and ATF involvement in the POST 9/11 COINTELPRO "gun walking" operation with Defendants. To the degree that the D.C. CRD uses its resources to initiate and oversee a criminal investigation of Defendant City of Oakland's Police department personnel for crimes committed "under color of law" during Negotiate Settlement Agreement (NSA) and resulting in murder of Oakland citizens and theft of constitutionally protected religious use land. This includes subpoena power over current and former City of Oakland civilian and current and former OPD personnel as well as unqualified cooperation against all identified outside law enforcement agency personnel who participated in conspiracy with Defendants to deprive Plaintiffs of their civil rights.

B. Immediate placement into federal receivership for Defendant Oakland Police Department

C. Immediate cessation of the hiring process for a permanent Chief of Police by Defendant City of Oakland based upon proof of failure to judge character in hiring and publically supporting Defendant Howard Jordan as Chief of Police by the current administration.

D. Immediate D.O.J Civil Rights Division overseen and managed Federal Receivership for the Oakland Police Department to ensure lasting federal civil rights respect and protections of all citizens of Oakland from former and current COINTELPRO influenced and trained Law Enforcement leadership and the development of a peaceful and mutually respectful community centric police model for the benefit of all citizens of the City of Oakland California.

E. An apology and admission of the COINTELPRO tactic operation and purposeful fomenting of black on black murder and violence by Defendant. Including an admission and apology for aiding Yusuf Bey 4th and resultant fabrication "created" media fueled negative false public perception of Black Muslims and Bey family members.

F. Compensation commensurate with the totality of loss and criminal activity of Defendants against Plaintiffs known and revealed in future investigations directly resulting in deprivation of civil rights and lasting mental, physical, emotional, character, and economic harm inflicted and damage and destruction done as a result of the historical pattern and practice of civil rights violating actions against Plaintiffs by Defendants.

**DECLARATION UNDER PENALTY OF PERJURY**
The undersigned declares under penalty of perjury that they are the plaintiffs in the above
action, that they have read the above complaint, and that the information contained therein is true
and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at Oakland California on March 29th, 2014

Plaintiff

Plaintiff

Date

Date