1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ALI SALEEM BEY, et al.,                     Case No.  14-cv-01626-JSC

8                   Plaintiffs,

9          v.                                    **ORDER DISMISSING CASE WITH
                                                 LEAVE TO AMEND**
10   CITY OF OAKLAND, et al.,

11                  Defendants.                  Re: Dkt. No. 12

12

13          In this First Amended Complaint ("FAC"), Plaintiffs Ali Saleem Bey and John

14   Muhammed Bey, both proceeding in forma pauperis and pro se, allege numerous civil rights

15   violations by the City of Oakland, the Oakland Police Department ("OPD"), various members of

16   the OPD, and a number of "Does."  (Dkt. No. 12.)  Upon the review required by 28 U.S.C.

17   § 1915(e)(2), the Court previously dismissed Plaintiffs' initial complaint with leave to amend,

18   finding that the allegations failed to state a claim upon which relief could be granted.  *Bey v. City

19   of Oakland*, No. 14-cv-01626-JSC, 2014 WL 4220319, at *1 (N.D. Cal. Aug. 25, 2014) ("*Bey I*").

20   Because, upon review, Plaintiffs' FAC fails to cure many of the deficiencies that the Court

21   identified in the initial complaint, the Court DISMISSES Plaintiffs' FAC with leave to amend.

22                  **ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

23          As set forth in the Court's opinion addressing the initial complaint, Plaintiffs are

24   "businessmen, family men and community leaders in the Oakland Black and Muslim community."

25   *Bey I*, 2014 WL 4220319, at *1.  In the FAC, Plaintiffs allege that since January 2002 through the

26   filing of the FAC, the OPD has acted under the color of law to deprive Plaintiffs, and other Black

27   Muslims, of constitutionally protected rights in violation of 42 U.S.C. § 1983.  Plaintiffs also

28   appear to allege that during this same time period, the OPD engaged in a conspiracy to deprive

United States District Court
Northern District of California

United States District Court
Northern District of California

them of rights and privileges in violation of 42 U.S.C. § 1985(3).  The gravamen of Plaintiffs' FAC appears to be that the OPD has engaged in unlawful racial and religious profiling, as demonstrated in two main ways.  First, the FAC includes allegations of discrimination through OPD's general tactics against the Oakland Black Muslim community, which included a later-discredited classification of Plaintiffs as "Domestic Terrorists" and a practice of "gun walking" into the Black Muslim community to facilitate murder within that community.  According to Plaintiffs, this discrimination, and the police tactics used, is merely a continuation of a "historic systemic cultural bias" against Oakland's Black Muslim community that first began in the 1970s during an FBI operation dubbed "COINTELPRO."  (Dkt. No. 12 at 6.)  These allegations, however, do not appear to be related to any of the actual counts of the FAC.  Instead, the counts arise out of the second set of allegations, which focus on OPD's investigations into the attempted murder of Plaintiff John Muhammed Bey and the murder of Waajid Bey, a "close associate" of Plaintiffs and fellow member of the Oakland Black Muslim community.  According to Plaintiffs, OPD's treatment of their requests for internal reviews of those investigations were either ignored altogether or improperly conducted due to conflicts of interest, all out of discriminatory animus. (*Id.* at 8-9.)

Plaintiffs now name as Defendants:  the City of Oakland; the City of Oakland Police Department; OPD Chief Sean Whent; OPD Deputy Chief of Police David Downing; OPD Officers Ersie Joyner, Derwin Longmire, and Oliver Cunningham; Robert Warshaw of Police Performance Solutions llc, and Does 1-101.

The eight counts of the complaint are all brought under 42 U.S.C. §§ 1983 and 1985, and they all allege  "a systemic Pattern and Practice of Racial and Religious Discrimination against plaintiffs, including obstruction of justice, suppression of evidence, failure to investigate resulting in civil rights violation of equal protection and equal [ ] treatment against Plaintiffs."

In Count One, Plaintiffs contend that Defendants have failed to investigate sufficiently and have obstructed the proper investigation of OPD internal affairs complaints due to conflicts of interest and bias against Black Muslims.  The conflict alleged appears to be that Plaintiffs named in their internal affairs complaints *all* OPD officers in the Criminal Investigation Division's Chain

United States District Court
Northern District of California

1    of Command, including OPD Chief Sean Whent, and neither Whent nor the officers he appointed

2    to manage the internal investigations recused themselves.  Plaintiffs allege that Officer

3    Cunningham rejected evidence that Plaintiffs proffered in support of their complaints and contend

4    that another officer's statement that OPD has no authority to question witnesses other than current

5    OPD personnel demonstrates bias.  In support of this count, Plaintiffs further allege that OPD

6    opens and conducts conflict of interest investigations for non-Black and non-Muslim

7    complainants, so the failure in this instance is motived by discriminatory animus.

8         Five counts arise out of a court-approved consent decree—referred to as a "Negotiated

9    Settlement Agreement" or "NSA" throughout the complaint—in a prior police misconduct case in

10   this District, *Allen v. City of Oakland*, No. 00-4599-TEH.  In Count Two, Plaintiffs contend that

11   OPD's failure to resolve Plaintiffs' IAD complaint failed to comply with the consent decree's

12   requirement that OPD reform its Internal Affairs Division.  Although the claim appears to be

13   brought against all Defendants, Plaintiffs note that individual defendants Cunningham and Whent

14   are the ones who failed to resolve the claims or make findings against fellow officers.  Counts

15   Three, Four, and Seven similarly allege that OPD's treatment of Plaintiffs' IAD complaints failed

16   to comply with terms of the consent decree from the *Allen* case by not retaining notes and

17   documents related to the IAD complaints at issue and not "identifying and replacing IAD

18   investigators with an obvious and or 'perceived' conflict of interest."  (Dkt. No. 12 at 15.)  In

19   these counts, Plaintiffs contend that the consent decree requires IAD investigators to record

20   interviews with officers accused of misconduct at complainants' request, but Defendant

21   Cunningham never advised Plaintiffs of that right, and that the City's failure to act on these

22   violations despite their knowledge—essentially, deliberate indifference by any other name—

23   constitutes violations of Sections 1983 and 1985.  In Count Eight, also brought against all

24   Defendants, Plaintiffs fault Compliance Director Warshaw for failing to report the problems

25   identified in Plaintiffs' IAD complaints to Judge Henderson in the *Allen* case, which—according

26   to Plaintiffs—the consent decree required.

27        Counts Five and Six relate to OPD's treatment of evidence that Plaintiffs submitted in

28   support of their IAD complaints.  These counts are also brought against all defendants, though

3

Plaintiffs specifically fault Defendant Cunningham for rejecting certain evidence relating to an internal affairs complaint in the first instance, and Defendants Warshaw and the City of Oakland for ignoring Plaintiffs' complaint about that rejection.  Plaintiffs further fault Cunningham for "suppress[ing]" evidence of conflicts of interest, which led to the IAD's failure to investigate Plaintiffs' 2007 IAD complaint.  At bottom, Plaintiffs contend that the officers' conduct stemmed from the OPD's general policy and practice of hatred towards Black Muslims.

Plaintiffs seek (1) an independent federal investigation of all officers named in Plaintiffs' IAD complaints; (2) placement of the OPD into a federal receivership to be overseen and managed by the DOJ Civil Rights Division; (3) removal of the OPD Chief of Police; (4) an apology and admission regarding the OPD's use of improper "COINTELPRO" tactics and purposeful fomentation of black-on-black murder; and (5) compensation.

## LEGAL STANDARD

The Court must dismiss an in forma pauperis ("IFP") complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face.  28 U.S.C. § 1915(e)(2).  The Court retains discretion over the terms of dismissal, including whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Because this is a pro se civil rights case, the Court must notify Plaintiffs of the deficiencies in the complaint and provide an opportunity to amend prior to dismissal, unless it is completely clear that the deficiencies of the complaint cannot be cured.  *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez,* 203 F.3d 1122, 1138 (Rymer, J., concurring).

Regarding dismissals for failure to state a claim, Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure 12(b)(6).  *Lopez*, 203 F.3d at 1127.  In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true the allegations of the complaint in question, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, *see Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  To avoid dismissal, a complaint must contain more than

United States District Court
Northern District of California

"naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Furthermore, a claim upon which a court can grant relief must have facial plausibility. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.

In addition, on Section 1915 review, an IFP plaintiff's complaint must comply with Rule 8, which requires a short and plain statement of the claims. *See* Fed. R. Civ. P. 8(a). In order to meet the standards of Rule 8, a complaint generally must identify each harm alleged and the defendants responsible for each harm. *See Jones v. U.S. Supreme Ct.*, No. C 10-02750 SI, 2010 WL 2975790, at *1 (N.D. Cal. July 26, 2010).

## THE FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Plaintiffs' Section 1983 Claims

#### 1. Legal Standard

To plead a violation of Section 1983, a plaintiff must allege that someone acting under the color of state law violated his constitutional rights or rights secured by federal statute. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Under Section 1983, municipalities are considered "persons" and therefore may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). However, the Supreme Court has made clear that there is no respondeat superior liability under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Thus, an entity—such as a municipality—cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor, but only for its *own* unconstitutional or illegal policies. *Monell*, 436 U.S. at 689.

To that end, a Section 1983 plaintiff must plead facts sufficient to demonstrate that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404 (emphasis in original). Such municipal

United States District Court
Northern District of California

liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1995). After establishing one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Trevino*, 99 F.3d at 918.

Plaintiffs' Section 1983 claims here, alleged both against individual defendants and a municipality—the City of Oakland—allege violations of Plaintiffs' right to equal protection under the law. The Equal Protection Clause of the Fourteenth Amendment guarantees that "no states shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Equal Protection Clause "keeps governmental decision makers from treating differently any persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Proof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal quotation marks and citation omitted). Putting these two concepts together, to state a Section 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acting under the color of state law "acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1196 (9th Cir. 2005) (citation omitted).

### 2. Analysis

#### a. Claims Against Oakland Police Department

Before turning to an analysis of Plaintiff's substantive claims, the Court first addresses all

United States District Court
Northern District of California

claims against the OPD generally.  As the Court noted in its opinion dismissing the original complaint, "OPD is not a proper defendant as it is an agency of a municipality."  *Bey I*, 2014 WL 4220319, at *6 (citation omitted).  The Court reiterates this point here:  OPD is merely a subdivision of the City of Oakland, which is the properly named municipality in this action.  *See Vance v. Cnty. of Santa Clara*, 928 F. Supp. 2d 993, 996 (N.D. Cal 1996).  Thus, OPD "is a superfluous party to the litigation, because as a municipal department, it cannot be held liable for damages separate from the [City of Oakland].  Therefore, defendant [OPD] should be dismissed with prejudice from this action as an improper party."  *Alston v. Tassone*, No. CIV S-11-2078 JAM GGH PS, 2012 WL 2377015, at *3 (E.D. Cal. June 22, 2012), *report & recommendation adopted by* 2012 WL 3070689 (E.D. Cal. July 27, 2012).

> **b.**        **Section 1983 Claims Alleging Discriminatory Police Conduct**

The gravamen of Plaintiffs' claims in the factual background of the FAC and Counts One, Five, and Six appears to be that OPD's treatment of Plaintiffs' requests for internal investigations—namely, their failure to conduct thorough, unbiased investigations—was motivated by racial and religious discriminatory animus and therefore violated Plaintiffs' right to equal protection under the law.

Other courts have concluded that a plaintiff stated claims for Section 1983 liability— against both officers involved and a municipality—where the plaintiff alleged that the police department's failure to investigate citizens' complaints amounted to deliberate indifference to the need for police action.  *See, e.g.*, *Lacy v. Cnty. of San Diego*, No. 12-CV-624, 2012 WL 4111507, at *3-4 (S.D. Cal. Sept. 18, 2012).  For example, in *Lacy* the plaintiff alleged that the county police department had a de facto policy of lawlessness based on failure to investigate citizens' claims of wrongful conduct involving unlawful arrest.  *Id.* at *3.  The plaintiff in that case alleged that the county had knowledge of earlier unlawful arrest violations, and that it systematically failed to investigate such claims of misconduct—including Plaintiffs'—which led to further examples of unlawful arrests violating individuals' rights.  *Id.* at *3-4.  The *Lacy* court found that the plaintiff had adequately pleaded a Section 1983 claim based on the county's deliberate indifference.  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    But Plaintiffs in this matter do *not* appear to bring a deliberate indifference theory of

2   liability; rather, they contend that OPD had an actual, if unwritten, policy of discriminating against

3   the Black Muslim community on the basis of their race and religion.  Although the Court has not

4   located any cases in which courts found that a complaint stated a claim for an equal protection

5   violation under Section 1983 for discriminatory internal investigation practice, it is well

6   established that the "government may not racially discriminate in the administration of *any* of its

7   services[,]" including investigations.  *Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir.

8   2010).  Thus, while there is no constitutional right to an internal investigation, the state may not

9   discriminate in the implementation of that service.  *See id.* (noting that officers' failure to

10  investigate on the basis of involved individuals' race could violate equal protection for the

11  purposes of a Section 1983 claims); *see also Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th

12  Cir. 2000) ("There is a constitutional right . . . to have police services administered in a

13  nondiscriminatory manner—a right that is violated when a state actor denies such protection to

14  disfavored persons.").  As the Ninth Circuit has further explained, even where *some* services are

15  provided to members of a protected class, "*diminished* police services, like the seat at the back of

16  the bus, don't satisfy the government's obligation to provide services on a non-discriminatory

17  basis." *Elliot-Park*, 592 F.3d at 1007 (citation omitted).  Thus, allegations that the police

18  department provided lower quality services to certain individuals based on their membership in a

19  protected class may state a claim upon which relief can be granted.

20    Accordingly, based on *Elliot-Park* and its predecessors, Plaintiffs may be able to state a

21  claim under Section 1983 by contending that OPD administered its internal investigations

22  procedures in a manner motivated by intentional discrimination against Black Muslims.  *See id.*

23  Plaintiffs have alleged a number of specific instances of purported misconduct—namely, failures

24  to investigate their complaints altogether or failure to report conflicts of interest—that may

25  support such a claim.  Nevertheless, the FAC as written still suffers from infirmities that prevent it

26  from passing Section 1915 review and proceeding to service by the Marshals.

27    First, Plaintiffs do not allege facts sufficient to clearly identify an injury to each Plaintiff in

28  the context of these claims.  The FAC references a 2007 internal affairs division complaint "filed

8

by Plaintiff" that reported OPD's "failure to investigate crimes committed against Plaintiffs." (Dkt. No. 12 at 7.)  The FAC indicates that the internal affairs division complaint was filed after Plaintiff Ali Saleem Bey provided evidence of police misconduct, but it does not allege any facts related to what the "crimes committed against Plaintiffs" are.  Similarly, the FAC alleges that "current Plaintiff" filed the 2013 internal affairs complaint without distinguishing between the two (*id.* at 9), but elsewhere the FAC indicates that a court-appointed monitor actually instructed OPD to open that internal investigation (*id.* at 10).  The FAC also once references an internal affair division complaint that Plaintiff John Muhammed Bey filed in 2005, but nowhere alleges that OPD failed to fulfill its duties with respect to that report.  (*See id.* at 8.)  To state a plausible claim of injury, Plaintiffs must allege sufficient facts to connect OPD's reportedly discriminatory actions to injuries each of the current Plaintiffs actually suffered.  *See Twombly,* 550 U.S. at 565.  In other words, Plaintiffs must specifically identify the complaints they made, what the complaints were about, and what Defendants did not or did not do that Plaintiffs allege violated their own constitutional rights.

Second, Plaintiffs appears to bring all claims against all Defendants.  Although some of the counts now reference particular actions attributable to certain individual defendants, it appears that Plaintiffs still bring all eight counts against all defendants generally.  It is not clear whether this is actually what Plaintiffs intend; but if it is, Plaintiffs have not demonstrated a basis for liability for each individual defendant in each count.  Simply put, as written the FAC fails to give defendants notice of the particular counts against them.  *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges.  As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what.").

Finally, the FAC speaks of conduct beginning in 2001.  As the Court noted in its Order dismissing the original complaint, the statute of limitations for Section 1983 claims is two years, based on California state law.  *See Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1023 (E.D. Cal. 2004).  Throughout the FAC, Plaintiffs include various allegations intended to serve as

United States District Court
Northern District of California

1  grounds for tolling that two-year statute of limitations.  (*See, e.g.*, Dkt. No. 12 at 7, 11-12.)[1]

2        Federal courts also apply a forum state's law regarding tolling, including equitable tolling,

3  when not inconsistent with federal law.  *Hardin v. Straub*, 490 U.S. 536, 537-59 (1989); *Fink v.*

4  *Shedler*, 192 F.3d 911, 913-14 (9th Cir. 1999).  However, federal law governs the determination of

5  when a claim accrues.  *See Elliot v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994).

6  Federal law follows the "discovery rule" for claim accrual, which holds that a claim accrues when

7  the plaintiff knows, or should know, of the injury on which the cause of action is based.  *See*

8  *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).

9        Plaintiffs appear to offer several different theories for tolling the two-year statute of

10  limitations to save their earlier claims, but—at least as currently written—only one holds water.

11  Plaintiffs allege that OPD's conduct constituted a "pattern and practice of discrimination" dating

12  back many years and continuing into the present.  Construing the FAC liberally as required, the

13  facts alleged suggest that otherwise time-barred allegations—*i.e.*, those that occurred over two

14  years before the date that Plaintiffs learned the critical facts of their injuries—may be actionable

15  because they are "related to the acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp.*

16  *v. Morgan*, 536 U.S. 101, 122 (2002).  Although *Morgan* first applied to claims brought under

17  Title VII of the Civil Rights Act, the Ninth Circuit has applied the reasoning to Section 1983

18  claims, as well.  *See Carpenteria Valley Farms v. Santa Barbara*, 344 F.3d 822, 829 (9th Cir.

19  2003).  This is particularly so where the plaintiff alleges facts to support a claim under a "pattern

20  or practice" theory of discrimination.  *See Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir.

21  2002).

22        Accordingly, *if* Plaintiffs are able to amend their claims to comply with the pleadings

23  standards set forth in the Federal Rules of Civil Procedure, they likely will have adequately

24  pleaded a basis for tolling.  However, for the reasons described above, based on the present state

25  of the FAC, the Section 1983 claims asserted in Counts One, Five, and Six must be dismissed

---

27  [1] The FAC includes the header "Motion for Tolling based on new evidence."  (Dkt. No. 12 at 11.)
Construing the FAC liberally, the Court notes that a motion is neither appropriate nor required;
28  rather, a complaint simply must allege sufficient facts to support a plausible basis for tolling the
statute of limitations.

United States District Court
Northern District of California

1    without prejudice.

2                c.        **Section 1983 Claims Arising Out of the Consent Decree**

3          Counts Two, Three, Four, Seven, and Eight fare no better.  As written, these counts all

4    appear to arise out of various Defendants' alleged violations of procedural requirements set forth

5    in the consent decree from *Allen v. City of Oakland*, No. 00-4599-TEH.  According to the

6    allegations in the FAC, as well as the public docket in *Allen*, the consent decree sought to enact

7    various reforms throughout the Oakland Police Department, including the OPD's Internal Affairs

8    Division.  *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2006)

9    (noting that materials from a proceeding in another court are appropriate for judicial notice).

10   However, to the extent that Plaintiffs are attempting to base these counts on the violation of

11   provisions in that agreement, such a court ordered agreement or consent decree does not provide

12   Plaintiffs with an independent claim for relief.  *Diaz v. Diaz*, No. 1:12-cv-01296-AWI-SAB (PC),

13   2013 WL 6047620, at *5 (E.D. Cal. Nov. 14, 2013) (citations omitted); *see also Cagle v.

14   Sutherland*, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often impose requirements

15   beyond the constitutional minimum and do not create or expand rights or a private cause of

16   action).  Accordingly, Plaintiffs "may not rely on the violation of consent decrees or remedial

17   plans [agreed upon] in other cases to state a claim."  *Diaz*, 2013 WL 6047620, at *5 (citation

18   omitted); *see Frost v. Symington*, 197 F.3d 348, 358-59 (9th Cir. 1999).  What is more, relief for

19   violation of a consent decree, negotiated settlement agreement, or remedial plans can only be

20   pursued in the case in which the decree, agreement, or plan was issued, *not* in a separate civil

21   action.  *See Frost*, 197 F.3d at 358-59; *Crayton v. Terhune*, No. C 98-4386 CRB (PR), 2002 WL

22   31093590, at *4 (N.D. Cal. Sept. 17, 2002).  Because it is clear that the deficiencies of these

23   counts—insofar as they are brought under the consent decree—cannot be cured, they are

24   dismissed with prejudice.  *See Noll*, 809 F.2d at 1448.

25   **B.   Plaintiffs' Section 1985(3) Conspiracy Claims Fail**

26         Finally, all counts appear to also allege conspiracy under 42 U.S.C. § 1985.  Claims under

27   Section 1985 involve an "intent to deprive [ ] victims of the equal protection of the laws," which

28   means there must be "racial, or perhaps otherwise class-based, invidiously discriminatory animus

United States District Court
Northern District of California

11

behind the conspiratorial action." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983); *see, e.g.*, *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 922 (N.D. Cal. 2010).  First, "to state a claim for conspiracy under [Section] 1985, a plaintiff must first have a cognizable claim under [Section] 1983." *Id.* at 930. Assuming for the purposes of this opinion that Plaintiffs here have stated such a claim, to then state a claim for a violation of Section 1985, a plaintiff also must allege facts sufficient to demonstrate a conspiracy—*i.e.*, the existence of an agreement and concerted action amongst the defendants.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004).  Thus, in addition to allegations about allegedly unconstitutional *conduct*, a complaint must include facts pertaining to the defendants' agreement to violate the plaintiffs' constitutional rights.  *See id.* (dismissing Section 1985 claims where the complaint was "devoid of any discussion of an agreement amongst [defendants] to violate [plaintiff's] constitutional rights").  However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

Plaintiffs' FAC fails to allege facts sufficient to state a plausible claim of Section 1985 conspiracy.  First, the FAC as written fails to state a Section 1983 Equal Protection claim for the reasons explained above.  Moreover, Plaintiffs still do not "allege facts that plausibly support an inference that each and every defendant was involved in a conspiracy to injure Plaintiffs." *Bey I*, 2014 WL 4220319, at *6.  Rather, the FAC contains conclusory allegations that such a conspiracy existed; this is not enough to state claim under Section 1985.  Along similar lines, Plaintiffs' allegations fail to make clear which individual defendants were actually involved in such a conspiracy.  Accordingly, the Court must dismiss all of Plaintiffs' Section 1985 counts for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons explained above, Plaintiffs' FAC does not state a claim against the defendants and therefore must be dismissed.  All claims against Defendant OPD are dismissed with prejudice and may not be reasserted in a Second Amended Complaint.  The same is true of Counts Two, Three, Four, Seven, and Eight, to the extent they allege violations of a consent decree from other litigation.  The dismissal is without prejudice as to the remaining Section 1983

United States District Court
Northern District of California

United States District Court
Northern District of California

and 1985(3) claims, which means that Plaintiffs have one more opportunity to fix the defects in their allegations as to these claims.  In amending their allegations, Plaintiffs should keep in mind the following:

      1.     Each count of the second amended complaint must identify the defendants being sued *and* set forth or identify factual allegations that give rise to a plausible inference that the named defendant is liable.

      2.     The second amended complaint must clearly identify how Ali Saleem Bey and John Muhammed Bey have been injured and how each named defendant caused the injury.

      Plaintiffs must file their second amended complaint by January 23, 2015.  Plaintiffs are warned that if they do not file by that date their lawsuit will be dismissed.  The Court encourages Plaintiffs to seek free assistance from the Northern District's Pro Se Help Desk, United States Courthouse, San Francisco, 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, CA 94102 or the Help Desk at the Oakland Federal Courthouse, 1301 Clay Street, 4th Floor, Room 470S, Oakland, CA 94612.  Appointments can be made in person or by calling 415-782-8982.

      **IT IS SO ORDERED**.

Dated:  December 18, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge