1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ALI SALEEM BEY, et al.,                Case No.  14-cv-01626-JSC

               Plaintiffs,

8

        v.

9                                           ORDER RE: MOTION FOR
                                            JUDGMENT ON THE PLEADINGS
10   CITY OF OAKLAND,
                                            Re: Dkt. No. 33
               Defendant.

11

12

13        Plaintiffs Ali Saleem Bey and John Muhammed Bey, proceeding pro se, bring this action

14   against the City of Oakland ("Defendant").  In the Second Amended Complaint ("SAC"),

15   Plaintiffs allege numerous civil rights violations by the Oakland Police Department ("OPD") and

16   its officers, generally contending that the OPD failed to adequately investigate Plaintiffs' internal

17   affairs division complaints due to racial and religious discrimination against Plaintiffs as members

18   of the Black Muslim community.  (Dkt. No. 15.)  Now pending before the Court is Defendant's

19   motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt.

20   No. 33.)  Having considered the parties' submissions, and having had the benefit of oral argument

21   on December 3, 2015, the Court GRANTS Defendant's motion.

22                                    **BACKGROUND**

23   **I.      Factual Background**

24        The following background is taken form the factual allegations in the SAC and the

25   documents attached thereto.[1]

26   _____

27   [1] When considering a 12(b)(6) motion to dismiss, a court does not normally look beyond the
     complaint.  *See* Fed. R. Civ. P. 12(b)(6); *see also Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d

28   792, 795 (N.D. Cal. 2005) ("[M]aterials outside the pleadings ordinarily are not considered on a
     motion to dismiss[.]").  However, courts may consider documents alleged in a complaint and

Plaintiffs are "businessmen, family men and community leaders in the Oakland Black and Muslim community."   The causes of action in the SAC arise out of OPD's investigations into the attempted murder of Plaintiff John Muhammed Bey, both Plaintiffs' requests for protection and assistance regarding the murder of Waajid Bey—a "close associate" of Plaintiffs and fellow member of the Oakland Black Muslim community—and the OPD's short shrift, at best, and complete disregard, at worst, of each Plaintiffs' requests for OPD internal investigations. According to Plaintiffs, they repeatedly brought these systemic failures to the attention of OPD officers, the chief of police, and the Oakland mayor's office, but no action was taken for years.  To the contrary, only when Plaintiffs relayed their evidence to the compliance director appointed to oversee the OPD did the Department re-open an investigation into Plaintiffs' complaints.  This investigation resulted in a finding that the OPD had violated its own policies and failed to investigate, which Plaintiffs contend is evidence of violations of their civil rights.

In 2002 an OPD officer brought an employment discrimination suit against OPD claiming that other officers wrongly believed that he was a Black Muslim.  (Dkt. No. 15 ¶ IV.Y.)  As part of that case, the officer identified OPD officers who were hostile to Black Muslims in the workplace. (*Id.*)

Specifically, in 2003 OPD requested federal resources from the FBI to designate and investigate Plaintiffs and their family members as "Domestic Terrorists."  (*Id.* ¶ IV.)  As a result, OPD targeted Plaintiffs' businesses, including Ali Saleem Bey's Nile Valley Industries, John

---

essential to a plaintiff's claim.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (emphasis in original), and may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Here, Plaintiffs did not submit a request for judicial notice, but nevertheless submitted along with his opposition to the motion to dismiss a number of documents that were not attached to or referenced in the complaint.  (*See* Dkt. No. 47 at 35-36 (including exhibits labeled "Exhibit JTTF Complicity," "Exhibit Hate," "Exhibit Culturalized Bias," "Exhibit Unequal," "Exhibit 9XX," "Exhibit 68 COINTELPRO racial Vendetta," "Exhibit COINTELPRO," "Exhibit D," "Exhibit: JMB Case Witness," "Exhibit I.D.," "Exhibit JTTF," and an untitled exhibit that is a newspaper article describing Yusuf Bey 4th's arrest).)  The Court therefore declines to consider the exhibits offered for the first time in Plaintiffs' supplemental opposition.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Muhammed Bey's U.D. Security Services, and Your Black Muslim Bakery, owned by Plaintiffs'

2    close personal friend and associate Waajid Bey.  (*Id.* ¶¶ IV, IV.A.)

3         On February 1, 2004 Waajid Bey was kidnapped, beaten to death, and buried in a shallow

4    grave in the Oakland Hills, where a hiker discovered his body six months later.  (*Id.* ¶¶ IV.A,

5    IV.D.)  On March 1, 2004, Plaintiffs filed a missing persons report.  (*Id.* ¶ IV.B.)  By April 1,

6    2004, OPD was "aware of the hostility between Plaintiffs[,] who OPD knew represented as

7    spokespersons for the vast majority of community members[,] and a small group of members who

8    began to act in a manner to take advantage of the disappearance of Waajid Bey."  (*Id.* ¶ IV.C.)  In

9    particular, in the wake of Waajid Bey's disappearance, that small group filed forms for change of

10   ownership and control of Waajid Bey's business, Your Black Muslim Bakery.  (*Id.*)  Plaintiffs

11   initiated a civil lawsuit against that small opposition group, then received multiple threats from

12   them and reported those threats to OPD.  (*Id.* ¶¶ IV.D, IV.D.1.)

13        On June 17, 2005, four gunmen attacked John Muhammed Bey.  (*Id.* ¶ IV.F.)  Plaintiffs

14   informed OPD that the attack was directly connected to Waajid Bey's murder and the Your Black

15   Muslim bakery opposition group.  (*Id.*)  In response to the threat of more violence, John

16   Muhammed Bey left the area and moved to another state with his family.  (*Id.* ¶ IV.G.)  On August

17   19, 2005, less than two months after the incident, OPD closed its investigation into the attempted

18   murder of John Muhammed Bey "without conducting any follow up investigations with witnesses

19   or known leads."  (*Id.* ¶ IV.H.)  That same week that OPD closed that case, OPD arrested Yusuf

20   Bey 4th ("Yusuf 4th"), a 19-year-old sandwich maker at Your Black Muslim Bakery known by

21   OPD to be connected to Waajid Bey's murder and the attempted murder of John Muhammed Bey.

22   (*Id.* ¶ IV.H1.)  Yusuf 4th was charged with "Domestic Terrorism" for brandishing a shotgun in

23   commission of carjacking and was released on bail.  (*Id.*)  Given Yusuf 4th's release and the

24   pattern of violence and threats, Ali Saleem Bey filed an application for a concealed carry weapons

25   permit, but OPD denied the request four months later.  (*Id.* ¶¶ IV.I, IV.L.)

26        In November 2005, OPD met with the FBI to discuss further violent weapons-related

27   incidents involving Yusuf 4th.  (*Id.* ¶ IV.J.)  At that time, Yusuf 4th was the "lead suspected" in

28   John Muhammed Bey's attempted murder, but OPD decided to give "special treatment" to Yusuf

United States District Court
Northern District of California

4th by declining to arrest him despite one officer's desire to do so.  (*Id.*)

On July 6, 2007, Ali Saleem Bey "gather[ed] evidence . . . that show[ed] a systemic civil rights violations by OPD against Plaintiffs and associates showing a pattern and practice of discrimination against Plaintiffs as . . . Black Muslims."  (*Id.* ¶ IV.M.)  Ali Saleem Bey sought assistance from the Oakland Mayor's Office, which directed him to file complaints with the county district attorney and the city's Citizens Police Review Board.  (*Id.*)  Ali Saleem Bey filed OPD police misconduct compliant 07-0538 on July 13, 2007, which faulted OPD and several officers for failure to investigate crimes against Waajid Bey, John Muhammed Bey, and reckless endangerment of Ali Saleem Bey.  (*Id.* ¶ IV.N.)  The Citizens Police Review Board closed the complaint on the same day and, as a matter of policy, forwarded the matter to OPD's Internal Affairs Division.  (*Id.*)  On July 17, 2007 Ali Saleem Bey turned over more evidence of systemic OPD misconduct and special treatment of Yusuf 4th to journalist Chauncey Bailey.  (*Id.* ¶ IV.O.)

On September 1, 2007, OPD's Internal Affairs Division sent Ali Saleem Bey a letter regarding his complaint numbered 07-0538.  (*Id.* at 29.)  The letter indicating that the Internal Affairs Division "has documented and worked toward resolving your complaint" and that "[t]he circumstances will be further reviewed in order to improve our future service to the community."  (*Id.*)

Nearly seven years then passed during which time Plaintiffs did not pursue any further administrative or judicial avenues for relief.  (*See id.* ¶ IV.R.)  In 2013, Plaintiffs gave their evidence to Federal Compliance Director Frazier, who had been appointed to oversee the OPD.  (*Id.*)  Frazier directed OPD's Internal Affairs Division to reopen Ali Saleem Bey's Internal Affairs complaint No. 07-0538 and the Criminal Investigation Division's investigations into the murder of Waajid Bey and attempted murder of John Muhammed Bey.  (*Id.* ¶ IV.S.)  On July 26, 2013, the Internal Affairs Division reopened a consolidated investigation of these three incidents designated as Internal Affairs complaint No. 13-1062.  (*Id.* ¶ IV.T.)

On March 18, 2014, OPD's Internal Affairs Division sent Ali Saleem Bey a letter regarding the resolution of complaint No. 13-1062, which had alleged that "there was a systematic failure on the part of the Oakland Police Department during the investigation of the murder of

Waajid Bey and the attempted murder of John Bey as it relates to the follow up criminal investigation." (*Id.* at 23.)  The letter indicated that OPD's investigation "disclosed sufficient evidence to determine that the alleged conduct did occur" and therefore "[a] finding of 'Sustained' has been determined." (*Id.*)  OPD notified Ali Saleem Bey that "the individual Subject Officers and their immediate supervisor are no longer employed by the [OPD]." (*Id.*)

## II.       Procedural History

Plaintiffs initiated this action on April 9, 2014, and filed the SAC on January 23, 2015. Although Plaintiffs name as Defendants the City of Oakland and Does 1-100, all eight counts of the SAC are brought solely against the City.  Six of the counts arise under 42 U.S.C. § 1983, and two under 42 U.S.C. § 1985.

Counts One, Two, Four, Six, Seven, and Eight allege that the OPD's actions related to its treatment of Plaintiffs' IAD complaints constituted discrimination based on race and religion in violation of Plaintiffs' right to equal protection under the law.  In Count One, Plaintiffs contend that the OPD's failure to retain notes and documents related to Plaintiffs' internal affairs complaints and the short-lived investigations that followed violated the Department's policies and represented racial and religious discrimination against Plaintiffs as Black Muslims.  In Count Two, Plaintiffs contend that OPD policy required the Department to resolve all internal affairs complaints by making a particular finding, and that OPD's failure to resolve Plaintiffs' complaints constitutes a violation of Section 1983.  In the fourth count, Plaintiffs allege that the OPD's failure to investigate repeated IAD complaints from Plaintiffs—even when, for example, Plaintiff Ali Saleem Bey's 2013 IAD complaint explicitly complained about the Department's failure to investigate a prior IAD complaint—is further evidence of a pattern and practice of discrimination. Count Five faults the OPD for misrepresenting in its response to Plaintiff Ali Saleem Bey's 2013 IAD complaint that it no longer employed the officer complained of, when certain officers remained in the OPD's employ.  In Count Seven, Plaintiffs allege that the officers responsible for investigating the 2013 IAD complaint should have recused themselves, and in failing to do so denied Plaintiffs "equal protection of a conflict of interest[-]free investigation." (Dkt. No. 15 at 16.)  Finally, in Count Eight Plaintiffs allege that the OPD failed to advise Plaintiffs of their right

United States District Court
Northern District of California

1   to have officers tape record all interviews and statements of accused officers in connection with

2   the 2013 IAD investigation, which further violates Plaintiffs' right to equal protection under the

3   law.

4          The two other counts allege that the OPD has conspired to violate Plaintiffs' civil rights in

5   violation of 42 U.S.C. § 1983.  In Count Three, Plaintiffs allege that the OPD's failure to

6   investigate the current employees named in Plaintiff Ali Saleem Bey's 2013 IAD complaint was

7   "purposeful, plotted, and planned" and represented the OPD's conspiracy to deprive Plaintiffs of

8   their rights to equal protection under the law.  Specifically, Plaintiffs argue that by failing to

9   investigate the employees named in the 2013 IAD complaint, OPD's employees have violated

10  Department policy, obstructed justice, failed to investigate, recklessly endangered and defamed

11  Plaintiffs, and compromised other criminal cases to Plaintiffs' detriment, all as a conspiracy to

12  further a pattern and practice of discriminating against Black Muslims.  In Count Five, Plaintiffs

13  contend that the OPD's response to that 2013 IAD complaint, which admits the Department's

14  "systemic failures" in connection with the investigations that Plaintiffs sought.

15         At bottom, Plaintiffs contend that the OPD's conduct stemmed from the Department's

16  general policy and practice of hatred towards Black Muslims.

17         Plaintiffs seek (1) an independent federal investigation of all officers named in Plaintiffs'

18  IAD complaints; (2) immediate removal of the OPD's Chief and Deputy Chief of Police; (3)

19  immediate placement of the OPD into a federal receivership to be overseen and managed by the

20  DOJ Civil Rights Division; (4) an apology and admission regarding the OPD's use of improper

21  "COINTELPRO" tactics, purposeful fomentation of black on black murder and other violence and

22  defaming Black Muslims and the Bey family; and (5) compensation for, among other things,

23  lasting mental, physical, emotional, character, political, and economic harm resulting from the

24  pattern and practice of racial and religious discrimination.

25         The Court previously reviewed Plaintiffs' SAC pursuant to 28 U.S.C. § 1915(e)(2) and

26  concluded that the allegations were sufficient to survive Section 1915 review and proceed to

27  service.  However, the Court noted that its "decision to allow the SAC to proceed to service [was]

28  without prejudice to Defendant moving to dismiss the claims on any grounds."  (Dkt. No. 16 at 8.)

1   Defendant then moved to dismiss the SAC in its entirety pursuant to Federal Rule of Civil

2   Procedure 12(c).  Plaintiffs' opposition to the motion to dismiss largely relied on the Court's

3   Order reviewing the SAC pursuant to Section 1915 as authority for the sufficiency of the claims,

4   despite that the Courts' Section 1915 review Order clarified that the determination was without

5   prejudice to Defendant moving to dismiss the claim on any grounds.  (*See* Dkt. No. 46; *see, e.g.*,

6   Dkt. No. 16 at 6 (in response to Defendant's argument that certain claims are time-barred, arguing

7   that they "have sufficiently pleaded for the purposes of Section 1915 review a basis for equitable

8   tolling based on allegations that OPD covered up its discriminatory tactics").)  Accordingly, the

9   Court permitted Plaintiffs to file a supplemental opposition addressing the merits of Defendant's

10  argument without reliance on the Court's Section 1915 Order as authority, and allowed Defendant

11  to file a supplemental reply.  (*Id.* at 2.)

12                                    **LEGAL STANDARD**

13          "After the pleadings are closed, but within such time as not to delay the trial, any party

14  may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In deciding a Rule 12(c)

15  motion, the court may consider "documents attached to the complaint, documents incorporated by

16  reference in the complaint, or matters of judicial notice."  *United States v. Ritchie*, 342 F.3d 903,

17  908 (9th Cir. 2003).  A court "must accept all factual allegations in the complaint as true and

18  construe them in the light most favorable to the non-moving party."  *Fleming v. Pickard*, 581 F.3d

19  922, 925 (9th Cir. 2009) (citation omitted); *see also Yakima Valley Mem'l Hosp. v. Wash. State

20  Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011).  Accepting all allegations of the non-moving

21  party as true, judgment "is proper when the moving party clearly establishes on the face of the

22  pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as

23  a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th

24  Cir. 1989); *see also Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).  When a

25  Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer is filed, or when

26  it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard

27  applies to both.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In other

28  words, the standard of review is "functionally identical" to the Rule 12(b)(6) standard.  *Cafasso v.*

United States District Court
Northern District of California

1   *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  "Dismissal [of claims] can

2   be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

3   cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)

4   (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

5                                            **DISCUSSION**

6           Defendant contends that the SAC must be dismissed for three main reasons: (1) because

7   the statute of limitations bars most of Plaintiffs' causes of action; (2) because Plaintiffs fail to

8   adequately allege deprivation of a constitutional right, as required to state a claim under both

9   Sections 1983 and 1985; and (3) because the intracorporate conspiracy doctrine bars Plaintiffs'

10  Section 1985 conspiracy claims.  The Court will address each in turn.

11  **I.      Statute of Limitations**

12          A.      *When Plaintiffs' Claims Accrued*

13          "Section 1983 does not contain its own statute of limitations.  Without a federal limitations

14  period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal

15  injury claims in the forum state."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citation

16  omitted).  In California, the statute of limitations for personal injury actions is two years.

17  *Canatella v. Van de Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *see also* Cal. Code Civ. Proc.

18  § 335.1.  Still, federal law determines when a claim accrues.  *Morales v. Los Angeles*, 214 F.3d

19  1151, 1153-54 (9th Cir. 2000).  "Under federal law, a claim accrues when the plaintiffs knows or

20  has reason to know of the injury which is the basis of the action."  *TwoRivers*, 174 F.3d at 991

21  (citation omitted); *see also Hensley v. United States*, 531 F.3d 1052, 1056-57 (9th Cir. 2008) ("As

22  a general rule, a claim accrues when a plaintiff knows or has reason to know of the injury which is

23  the basis of his action [and when] plaintiffs [know] both the fact of injury and its immediate [ ]

24  cause.") (internal quotation marks omitted).  A plaintiff need not know the full extent of his

25  injuries in order for the claim to accrue.  *See Wallace v. Kato*, 549 U.S. 384, 390-91 (2007); *see,*

26  *e.g.*, *Ward v. Ives*, No. 2:11-cv-1657-GEB-EFB, 2014 WL 4417764, at *7 (E.D. Cal. Sept. 4,

27  2014).

28          Here, the SAC allegations are largely focused on conduct from 2005 to 2007, though the

United States District Court
Northern District of California

causes of action themselves are almost entirely focused on OPD's conduct in investigating and resolving the 2013 consolidated Internal Affairs complaint.  (*See* Dkt. No. 15 at 13-16 (Count 1 is failing to retain records from the 2005 and 2007 investigations and the remaining counts involve certain failures or shortcomings related to OPD's investigation and ultimate resolution of the 2013 consolidated Internal Affairs complaint (Counts 2, 3, 4, 5, 6, 7, 8).

i.      2005 investigation

The failure to investigate the murder of Waajid Bey occurred following his death in June 2005.  (Dkt. No. 15 ¶ IV.F.)  The failure to investigate the attempted murder of John Muhammed Bey occurred, at the latest, in October 2005—as the SAC alleges that OPD closed its investigation two months after the August 19, 2005 incident.  (*Id.* ¶ IV.H.)  Plaintiffs allege that they had evidence of "systemic civil rights violations" by OPD "against Plaintiffs and associates showing a pattern and practice of discrimination against Plaintiffs" as Black Muslims as of July 6, 2007. (Dkt. No. 15 ¶ IV.M.)  Having alleged acknowledgment of this discrimination by July 2007, Plaintiffs' Section 1983 and 1985 claims accrued as of that date.  *See Hensley*, 531 F.3d at 1056-57; *TwoRivers*, 174 F.3d at 991.  This is true even if, at that time, Plaintiffs did not have knowledge of the full extent of the discrimination that they may have later learned, for example, after collecting documents through FOIA requests.  *See Wallace*, 549 U.S. at 390-91; *Ward*, 2014 WL 4417764, at *7.  Applying the two-year statute of limitations, Plaintiffs should have filed an action challenging the OPD's discriminatory failure to investigate the murder of Waajid Bey and attempted murder of John Muhammed Bey by July 2009.

ii.      2007 Internal Affairs complaint

To the extent that Plaintiffs' claims arise out of discriminatory conduct in connection with OPD's investigation of Ali Saleem Bey's 2007 Internal Affairs complaint No. 07-0538, Defendant urges that any such claim accrued on September 1, 2007 "when Plaintiffs received notice, to their great dissatisfaction and dismay, that the investigation had been completed and would be closed." (Dkt. No. 33 at 10.)  Plaintiffs indeed allege that the investigation initiated by their 07-0538 Internal Affairs complaint was closed only 29 days after the 2007 murder of Chauncey Bailey. (Dkt. No. 15 at 29 ("Note: IAD complaint 07-0538 was filed 7/13/2007 4 days before Bailey

United States District Court
Northern District of California

1    received story from Saleem Bey and over 2 weeks before his murder.  Then it was closed 29 days

2    after his murder and it never shows up in any investigation.").)  Thus, any claims arising from that

3    investigation are time barred.

4          Finally, some of Plaintiffs' allegations—perhaps the lion's share of their actual causes of

5    action—are based on OPD's conduct in the course of investigating the consolidated 2013 Internal

6    Affairs complaint, No. 13-1062.  Plaintiffs received notice of OPD's response to that consolidated

7    complaint on March 18, 2014 and filed this action just three weeks later—well within the two-year

8    statute of limitations.  Indeed, Defendant appears to concede that any discriminatory conduct

9    associated with OPD's investigation and handling of the 2013 consolidated Internal Affairs

10   investigation is timely.  (*See* Dkt. No. 44 at 5.)

11         B.     *The Continuing Violations Doctrine Does Not Apply*

12         Plaintiffs appear to contend that the continuing violations doctrine applies to reach back

13   from the 2013 Internal Affairs complaint and make the earlier time-barred claims actionable.  (*See*

14   Dkt. No. 43 at 11 ("Defendant was repeatedly and 'unbroken' put on notice by Plaintiffs 2007 –

15   2014" of the claims); *id.* at 12 (explaining that the allegations report "multiple and repeating

16   instances of civil rights violations against the same persons" that are "all clearly related" and

17   create a "pattern").)

18         The continuing violation theory applies to Section 1983 actions.  *See Pouncil v. Tilton*, 704

19   F.3d 568, 580 (9th Cir. 2012); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (citation

20   omitted).  The theory allows a plaintiff to seek relief for events outside of the limitations period

21   where the wrong continued unabated into the limitations period.  *See Pouncil*, 704 F.3d at 580

22   (citation omitted).   However, "discrete discriminatory acts are not actionable if time-barred, even

23   when they are related to acts alleged in timely filed charges."[2]  *Nat'l R.R. Passenger Corp. v.*

24   *Morgan*, 536 U.S. 101, 113 (2002).  "Although *Morgan* was a Title VII case, . . . [the Ninth

25   Circuit has] applied *Morgan* to bar [Section] 1983 claims predicated on discrete time-barred acts,

26

27   ─────────────────────
     [2] Even when these earlier acts are time-barred and therefore not actionable, a plaintiff may still use
     them "as evidence to establish motive and to put his timely-filed claims in context."  *Pouncil*, 704

28   F.3d at 580  (citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002)).

*United States District Court*
*Northern District of California*

notwithstanding that those acts are related to timely-filed claims." *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) (citation omitted).[3]  Even where acts occur as part of an ongoing policy or practice, if the "heart of the plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of the policy, . . . [t]hese individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003); *see, e.g.*, *Spitzer v. Aljoe*, No. 13-CV-05442-MEJ, 2015 WL 1843787, at *8 (N.D. Cal. Apr. 6, 2015).  Thus, the question is whether a case involves "the delayed, but inevitable, consequences of the [earlier time-barred conduct], or an independently wrongful, discrete act [within the limitations period[.]" *Pouncil*, 704 F.3d at 581.

Here, Plaintiffs allege generally that OPD had a policy of discriminating against Black Muslims.  But the particular allegations of discriminatory conduct relate to discrete incidents: OPD's failure to investigate the murder of Waajid Bey and the attempted murder of John Muhammed Bey in 2007; and failure to adequately and impartially investigate the 2013 consolidated Internal Affairs complaint.  While the Ninth Circuit has not held that a failure to investigate pursuant to a policy of discrimination constitutes a discrete act, it has held that particular instances of allegedly discriminatory conduct that occurred pursuant to an ongoing policy qualify as discrete acts under *Morgan*.  *See Pouncil*, 704 F.3d at 583 (finding plaintiff's request for conjugal visits in 2008 was a discrete act from his request for conjugal visits in 2002); *Cherosky*, 330 F.3d at 1238 (noting that denial of an employee's new request for the same accommodation would begin to run the clock anew despite an earlier denial because "these individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination"); *Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1026-27 (E.D. Cal. 2004) (dismissing time-barred false arrest and selective enforcement claims as time-barred and

---

[3] Prior to *Morgan*, courts held that a continuing violation may also exist where a defendant maintains a "discriminatory system or policy" that "operated at least in part within the limitation period[.]" *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989)).  "Since *Green*, however, the United States Supreme Court has held that discrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Spitzer v. Aljoe*, No. 13-CV-05442-MEJ, 2015 WL 1843787, at *8 (N.D. Cal. Apr. 6, 2015).

United States District Court
Northern District of California

concluding that the continuing violation doctrine did not apply).  Further, the actual causes of action similarly relate to discrete incidents: the City's failure to retain records from the 2005 and 2007 investigations (Count 1); and  certain failures or shortcomings related to OPD's investigation and ultimate resolution of the 2013 consolidated Internal Affairs complaint (Counts 2, 3, 4, 5, 6, 7, 8).  This case does not involve the continued ill effects of the earlier 2007 discriminatory OPD practices, but rather a discrete incident of alleged misconduct—the failure to properly investigate the 2013 complaint.  Thus, the continuing violation doctrine does not reach back to save Plaintiffs' otherwise time-barred claims.  *See Pouncil*, 704 F.3d at 583; *Cherosky*, 330 F.3d at 1238; *Thompson*, 314 F. Supp. 2d at 1026-27.

Plaintiffs' citation of *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002), is unpersuasive. *Flowers* merely noted that the continuing tort doctrine applies only when there is no "single incident" that "can fairly or realistically be identified as the cause of significant harm."  *Id.* at 1126 (internal quotation marks and citation omitted).  Plaintiffs' reliance on two cases from other circuits, *Miller v. Beneficial Management Corp.*, 977 F.2d 834 (3d Cir. 1992), and *O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001), is also unavailing.  These cases were decided before *Morgan* and thus before the United States Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in a timely charge."  *Carpinteria*, 344 F.3d at 828 (quoting *Morgan*,536 U.S. at 113).  In short, the continuing violation doctrine does not apply here to save Plaintiffs' otherwise time-barred claims.

C.    *There Are No Grounds for Extending the Limitations Period*

Notwithstanding the foregoing conclusion, there are two doctrines that may extend the limitations period of preclude a defendant from asserting a statute of limitations defense: equitable tolling and equitable estoppel.

1.    Equitable Tolling

In their first opposition, but not their supplemental opposition, Plaintiffs included a section of their argument entitled "Equitable Tolling Applies to Plaintiffs' Claims[.]"  (Dkt. No. 43 at 12.) Equitable tolling focuses on "whether there was excusable delay by the plaintiff[.]"  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  The body of that section of Plaintiffs' brief was

actually devoted to an argument for equitable estoppel, a different doctrine that can bring in otherwise untimely claims for different reasons.  (*See* Dkt. No. 43 at 12-13 ("[Defendants'] fraudulent concealment of IAD07-0538 (**EQUITABLE ESTOPPEL**) directly impeded Plaintiffs' ability to file a timely Complaint") (emphasis in original).)  It may be that Plaintiffs used the term "tolling" because the Court referenced tolling in its Order reviewing the SAC under Section 1915.  (See Dkt. No. 16 at 6.)  In any event, in their supplemental opposition, Plaintiffs do not contend that they are entitled to equitable tolling of the statute of limitations and instead focus exclusively on equitable estoppel (Dkt. No. 47 at 12-15), as will the Court.

## 2.    Equitable Estoppel

Equitable estoppel "focuses primarily on the actions taken by the *defendant* to prevent a plaintiff from filing suit[.]"  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted) (emphasis in original).  "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party should not be allowed to benefit from its own wrongdoing."  *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (internal quotation marks and citation omitted).  The doctrine "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  The plaintiff carries the burden of pleading and proving the following elements of equitable estoppel: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."  *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991); *see also Lukovsky*, 535 F.3d at 1051 (noting that the requirements under California law are the same).  As for the third element, "a plaintiff can know, or suspect, that she has a cause of action and still be 'ignorant of the true facts' of the case."  *Amaro*, 653 F.3d at 813.  Equitable estoppel bars a statute of limitations defense "when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit."  *Stitt*, 919 F.2d at 522.

When estoppel is sought against the government, "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of

United States District Court
Northern District of California

estopping the government." *Id.* Put another way, a plaintiff asserting equitable estoppel "must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky*, 535 F.3d at 1051-51 (emphasis in original) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)).

But Plaintiffs have not sufficiently alleged the elements of equitable estoppel. Though it is not entirely clear from their opposition or supplemental opposition, their argument appears to be that (1) OPD had knowledge of its own discrimination and that it covered up its own wrongdoing; (2) OPD issued reports about the 2007 internal affairs complaint to prevent Plaintiffs from filing suit; (3) Plaintiffs did not know that there was actual discrimination or cover-ups going on; and (4) they detrimentally relied on OPD's cover-up by not bringing a federal action. *See Bolt*, 944 F.2d at 609; *Lukovsky*, 535 F.3d at 1051. But this is not adequately alleged in the SAC; instead, it appears from the SAC that Plaintiffs were convinced they had a discrimination claim as early as 2007, but waited to file suit until 2013 when OPD admitted some wrongdoing related to the earlier investigations. But the resolution of the 2013 investigation was not a smoking gun that changed the Plaintiffs' knowledge of their case.

*Estate of Amaro v. City of Oakland*, 653 F.3d 808 (2011), does not persuade the Court otherwise. There, police officers severely beat a man ("decedent") during the course of his arrest, and several individuals witnessed the incident. *Id.* at 809-10. The police report of the arrest omitted any reference to the beating. *Id.* at 810. Despite repeated reports of pain and requests for medical attention, the decedent was denied any medical attention. Five days later, upon his release, the decedent told his mother—the lead plaintiff in the action—about the beating. *Id.* At some point, the decedent saw a doctor, who urged him to seek immediate emergency medical care due to multiple broken ribs and a collapsed lung. *Id.* The plaintiff expressed to his mother his intent to sue the police department. *Id.* He did not seek emergency medical treatment, and instead was found dead in his friend's house several days later; the autopsy confirmed that his death was due to blunt trauma consistent with the decedent's report of the beating. *Id.* Despite his knowledge of the cause of death, the investigator assigned to the incident nevertheless reported to

the decedent's mother that he had died in the street due to gang violence. *Id.* at 811. The plaintiff still believed her son, and sought police records, but the department repeatedly denied her requests. *Id.* The department then opened an internal affairs investigation into the incident, which confirmed that the police had beaten the decedent, that the report left out that information, that the reporting officer had forged his supervisor's signature on the report, and that the officers had been derelict in not responding to the decedent's request for medical attention. *Id.* at 812. The department never gave the plaintiff a copy of this internal affairs report. *Id.* Because the plaintiff had no records or evidence to support her claim of excessive force, all five attorneys the plaintiff met with regarding a possible wrongful death case declined to take her case. *Id.* One attorney helped the plaintiff file a claim under the Governmental Tort Action statute alleging excessive force, but the city took no action on this claim. *Id.* More than eight years later—well past the statute of limitations—the FBI launched an investigation into multiple allegations of excessive force by Oakland police officers, including the incident involving the decedent. *Id.* Only once news reports of this FBI investigation surfaced was the plaintiff able to secure counsel to file her Section 1983 claim about her son's death. *Id.*

The district court denied the City's motion for summary judgment, concluding that the plaintiff had submitted evidence sufficient to establish equitable estoppel. The court also certified to the Ninth Circuit for interlocutory appeal the question of whether equitable estoppel applies when a plaintiff believes she has a cause of action, but is ignorant of the true facts. The Ninth Circuit affirmed and held that "the doctrine of equitable estoppel *does* apply where a plaintiff believes she has a 42 U.S.C. § 1983 claim but is dissuaded from bringing the claim by affirmative misrepresentations and stonewalling by the police." *Id.* at 815.

Plaintiffs urge that this case involves the same defendant (the city of Oakland and its police department), the "same 'Blue Stone Wall' circumstances" and therefore equitable estoppel should also apply. But unlike *Amaro*, the SAC does not include allegations that OPD made affirmative misrepresentations about the underlying incidents. For example, there are no allegations that OPD presented documents to Plaintiffs that covered up the facts of Waajid Bey's murder or the investigation into it, or about John Bey's attempted murder and associated investigation. Instead,

1     OPD's letter closing Internal Affairs investigation number 07-0538 indicated OPD "has

2     documented and worked toward resolving your complaint" and that "[t]he circumstances will be

3     further reviewed in order to improve our future service to the community."  (Dkt. No. 15 at 29.)

4     While the investigation might have been subpar, such inadequate police services are the basis of

5     Plaintiffs' discrimination claim and therefore cannot serve as the separate, affirmative misconduct

6     underlying a governmental estoppel.  Nor are there any allegations here, as in *Amaro*, that OPD

7     later admitted covering up unconstitutional conduct: in *Amaro*, OPD admitted covering up

8     evidence of excessive force, whereas the letter resolving Plaintiffs' 2013 Internal Affairs

9     complaint merely indicates that the department did not adequately investigate Plaintiffs' claims in

10    2004, 2005 and 2007.  Neither the letter nor any other SAC allegations indicate that OPD ever

11    acknowledged discrimination.  The facts alleged here are simply not of the same quality as those

12    in *Amaro.*

13          Lastly, Plaintiffs appear to argue that OPD is equitably estopped from asserting a statute of

14    limitations defense because it owes a fiduciary relationship to Plaintiffs.  (Dkt. No. 47 at 8-9.)

15    Plaintiffs cite *Parson v. Tickner*, 31 Cal. App. 4th 1513 (1995), for the concept of the "delayed

16    accrual rule," which provides that the "fiduciary relationship carries a duty of full disclosure, and

17    application of the discovery rule 'prevents the fiduciary from obtaining immunity for an initial

18    breach of duty by a subsequent breach of the obligation of disclosure." *Id.* at 1526.  In other

19    words, a fiduciary cannot assert a statute of limitations defense by failing to disclose information

20    critical to the claim.  But for this rule to apply, the defendant must have a duty to disclose based

21    on a fiduciary or confidential relationship.  Plaintiffs argue that OPD has a "fiduciary

22    responsibility under color of law [ ] to give equal treatment of an impartial [Internal Affairs

23    Division] investigation executed according to Defendant['s] Manual of Rules" and failed to do so.

24    (Dkt. No. 47 at 9.)  But Plaintiffs cite no authority for the proposition that police owe a fiduciary

25    duty in this context, and the Court has found none.

26          In short, Plaintiffs have not alleged facts sufficient to plausibly support equitable estoppel.

27                                                    *   *   *

28          For the reasons explained above, any claims related to OPD's conduct regarding the 2004,

United States District Court
Northern District of California

16

1   2005, and 2007 investigations are time-barred and must be dismissed.  These factual allegations

2   may still serve as relevant evidence regarding the timely Section 1983 and 1985 claims.  *See*

3   *Pouncil*, 704 F.3d at 580 (citing *RK Ventures, Inc.*, 307 F.3d at 1062).

4   **II.      Adequacy of Timely Claims**

5           As discussed above, the only timely claims are those based on Defendant's 2013 Internal

6   Affairs Division investigation.  The Court will now address the sufficiency of these claims.

7           A.      *Section 1983 Claims*

8           To state a claim under Section 1983, a complaint "must both (1) allege the deprivation of a

9   right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was

10  committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063,

11  1067 (9th Cir. 2006).  "To adequately plead these elements, the complaint must identify what

12  constitutional or other federal right each defendant violated, providing sufficient facts to plausibly

13  support each purported violation." *See Burnell v. Marin Humane Soc'y*, No. 14-cv-05635-JSC,

14  2015 WL 4089844, at *2 (N.D. Cal. July 6, 2015) (citations omitted).

15          Here, Plaintiffs' Section 1983 claims allege violations of their right to equal protection

16  under the law based on religious and racial discrimination as Black Muslims.  To state a Section

17  1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants

18  acting under the color of state law "acted with an intent or purpose to discriminate against the

19  plaintiff based on membership in a protected class[,]" *Thornton v. City of St. Helens*, 425 F.3d

20  1158, 1196 (9th Cir. 2005) (citation omitted).  A plaintiff must also include allegations that

21  plausibly establish "that [the] plaintiff was treated differently from persons similarly situated."

22  *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F.

23  App'x 641 (9th Cir. 2014); *Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2014 WL

24  4063006, at *9 (N.D. Cal. Aug. 14, 2014) (noting that, to state an equal protection discrimination

25  claim, the plaintiff "must allege facts showing that there were similarly-situated individuals not in

26  his protected class who were treated more favorably") (citation omitted).  Conclusory allegations

27  of discrimination are not enough. *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San*

28  *Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004).

United States District Court
Northern District of California

United States District Court
Northern District of California

In addition, all of the Section 1983 claims in the SAC are pleaded against the City of Oakland.  "Municipalities are 'persons' under [Section 1983] and thus may be liable for causing a constitutional deprivation."  *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2005) (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).  However, "a municipality may not be sued under [Section] 1983 solely because an injury was inflicted by its employees or agents."  *Id.*  Instead, municipal liability requires that "an action pursuant to official municipal policy of some nature caused a constitutional tort."  *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1148 (N.D. Cal. 2014) (citing *Monell*, 436 U.S. at 691); *see also Long*, 442 F.3d at 1185 ("[I]t is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible.").  Thus, to state a claim for municipal liability under Section 1983 for a violation of constitutional rights, a plaintiff must allege facts showing (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("[P]laintiffs must establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.") (citation omitted).  There can be no municipal liability without an underlying constitutional violation.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

### 1.   Count 1

The first count is a Section 1983 claim against the City for racial and religious discrimination by failure to retain records of (1) the investigation into the 2005 attempted murder of John Muhammed Bey and (2) the 2007 Internal Affairs complaint that Ali Saleem Bey filed.

A plaintiff can state a claim for Section 1983 liability—against both officers involved and a municipality—where the plaintiff alleges that the police department's failure to investigate citizens' complaints amounts to deliberate indifference to the need for police action.  *See, e.g.*, *Lacy v. Cnty. of San Diego*, No. 12-CV-624, 2012 WL 4111507, at *3-4 (S.D. Cal. Sept. 18, 2012).  A Section 1983 may also lie based on allegations that a police department administered its

United States District Court
Northern District of California

internal investigations procedures in a manner motivated by intentional discrimination against Black Muslims.  *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010).  But the allegations in Count 1 fail to state a claim.

On the one hand, Plaintiffs have alleged that OPD had a policy of discriminating against Black Muslims.  But they have not connected that discriminatory policy to the failure to retain records of the investigations.  There are no allegations that OPD actually retained records of investigations into reported crimes against and Internal Affairs complaints filed by non-Black Muslims—thus, there are no allegations regarding OPD's treatment of similarly situated individuals.  On their own, the allegations that Plaintiffs, as Black Muslims, are members of a protected class and that OPD officers provided diminished police services to them in the form of failure to retain records is not enough to plausibly allege discriminatory intent or differential, discriminatory treatment, no matter how diminished the services were.  *See Ventura Mobilehome Cmtys. Owners Ass'n*, 371 F.3d at 1055; *Lam*, 868 F. Supp. 2d at 951; *Castro*, 2014 WL 4063006, at *9.  Accordingly, Plaintiffs fail to state a plausible claim for relief as to Count 1.

2.      Count 2

The Court reaches the same conclusion about the second count.  Count 2 is a Section 1983 claim against the City for racial and religious discrimination by failing to resolve Plaintiffs' 2013 Internal Affairs complaint as mandated by OPD policy.  Specifically, Plaintiffs allege that the City failed to make any findings on any of Plaintiffs' factual claims against officers still employed at OPD.  (Dkt. No. 15 at 13-14.)  As with the failure to retain records alleged in Count 1, Plaintiffs have failed to connect the alleged failure to make factual findings in connection with the 2013 investigation into OPD's alleged policy and practice of discriminating against Black Muslims.  There are no allegations that OPD followed its policy by making factual findings against current officers in the context of Internal Affairs complaints filed by non-Black Muslims—thus, there are no allegations regarding OPD's treatment of similarly situated individuals.  On their own, the allegations that Plaintiffs, as Black Muslims, are members of a protected class and that OPD officers provided diminished police services to them in the form of failure to make factual findings consistent with department policy is not enough to plausibly allege discriminatory intent or

19

1    differential, discriminatory treatment, no matter how diminished the services were.  Accordingly,

2    Plaintiffs fail to state a plausible claim for relief as to Count 2.

3                    3.       Count 4

4           Count 4 fares no better.  In Count 4, Plaintiffs allege that OPD's investigation of Plaintiffs'

5    2013 Internal Affairs complaint failed to investigate Ali Saleem Bey's 2007 Internal Affairs

6    complaint—which, in turn, was a complaint for failure to investigate the 2004 and 2005 crimes

7    against Waajid Bey and John Muhammed Bey—as part of the department's pattern and practice of

8    discrimination.  (Dkt. No. 15 at 14.)

9           The SAC does allege that OPD investigated and made findings regarding the initial

10   investigations into the 2004 and 2005 crimes against the Beys, and sustained Plaintiffs' allegations

11   that the investigations were insufficient.  The gravamen of Count 4 seems to be that OPD also

12   should have sustained Ali Saleem Bey's Internal Affairs complaint as a separate instance of

13   wrongdoing.  But the 2013 Internal Affairs complaint reopened the 2007 Internal Affairs

14   complaint, so such a finding would appear to be unnecessary.  But even if it were not, again,

15   Plaintiffs have failed to connect the 2013 failure to investigate the 2007 Internal Affairs complaint

16   in the context of the 2013 Internal Affairs investigation to OPD's alleged policy and practice of

17   discriminating against Black Muslims.  There are no allegations that OPD make findings on

18   underlying Internal Affairs complaints filed by non-Black Muslims when they were reopened and

19   consolidated with other Internal Affairs complaints—thus, there are no allegations regarding

20   OPD's treatment of similarly situated individuals.  On their own, the allegations that Plaintiffs, as

21   Black Muslims, are members of a protected class and that OPD officers provided diminished

22   police services to them in the form of failure to make factual findings consistent with department

23   policy is not enough to plausibly allege discriminatory intent or differential, discriminatory

24   treatment, no matter how diminished the services were.  Accordingly, Plaintiffs fail to state a

25   plausible claim for relief as to Count 4.

26                   4.       Count 5

27          The same is true of Count 5.  The fifth count alleges that the City of Oakland is liable

28   under Section 1983 for violating Plaintiffs' civil rights and violating department policy by stating

United States District Court
Northern District of California

20

in their letter resolving Plaintiffs' 2013 Internal Affairs complaint that the "individual Subject Officers and their immediate supervisor are no longer employed by" OPD when Deputy Chief Downing and OPD Chief Sean Whent were still working there.  (Dkt. No. 15 at 15.)

The SAC does not allege that Plaintiffs specifically named David Downing and Sean Whent as having committed wrongdoing in their Internal Affairs complaints, and the attached copies of the complaints themselves indicate that they did not.  To the contrary, the factual allegations of Count 5 appear to concede they do not, alleging instead that Plaintiffs "implicitly complained" of Downing's and Whent's conduct in relation to Ali Saleem Bey's 2007 Internal Affairs complaint.  (Dkt. No. 15 at 15.)  But even if they had, the SAC does not contain allegations that connect any misrepresentation about the employment status of Downing and Whent to Plaintiffs' protected status as Black Muslims, nor allegations that such false statements are not asserted against similarly situated individuals.

### 5.    Count 7

In Count 7, Plaintiffs allege that the City of Oakland violated their right to equal protection and violated the department's own policy by failing to provide an unbiased investigation due to a conflict of interest because certain officers should have recused themselves from the 2013 investigation because they were named in the complaint.  (Dkt. N. 15 at 16.)   Again, Plaintiffs have not connected the officers' recusal, or lack thereof, to Plaintiffs' race.  Nor have they alleged that the officers would have recused themselves if the Internal Affairs complaint had been filed by similarly situated individuals of other racial and religious backgrounds.  Plaintiffs have therefore failed to state a claim for a Section 1983 equal protection violation based on these alleged conflicts of interest.

### 6.    Count 8

Lastly, Count 8 is a Section 1983 claim for violating Plaintiffs' right to equal protection by failing to advise Plaintiffs of their right to transcripts of any and all interviews with accused officers and failing to investigate the officers named in the 2013 Internal Affairs complaint.  (Dkt. No. 15 at 17.)  Like the foregoing claims, Plaintiffs have not connected the failure to disclose the availability or existence of transcripts to Plaintiffs' race or religion, nor have they alleged that

United States District Court
Northern District of California

21

1    OPD treats similarly-situated individuals of a different race or religion differently when it comes

2    to Internal Affairs interview transcripts.  Thus, Plaintiffs fail to state a Section 1983 claim for an

3    equal protection violation based on failure to advise Plaintiffs of their right to request transcript of

4    involved-officer interviews.

5                                                                    *    *    *

6           In short, Plaintiffs have failed to plausibly allege any equal protection violations stemming

7    from OPD's investigation into their 2013 Internal Affairs complaint.  Because Plaintiffs have

8    failed to state a claim for a violation of a constitutional right, the Court need not address whether

9    the City's custom, policy, or practice was the moving force behind the violation for the purposes

10   of establishing municipal liability.  *See Scott*, 39 F.3d at 916.

11          B.      *Section 1985 Conspiracy Claims*

12          Counts three and six of the SAC allege that the City of Oakland is liable for conspiracy to

13   violate Plaintiffs' civil rights pursuant to 42 U.S.C. § 1985.  But Section 1985 is not a stand-alone

14   substantive right.  It "creates no independent cause of action and provides remedial relief only

15   after a violation of a specifically defined and designated federal right is first established."  *Harmon*

16   *v. City of Fresno*, No. CV F 08-1311 LJO GSA, 2008 WL 4690897, at *9 (E.D. Cal. Oct. 21,

17   2008).  Because, as discussed above, the SAC does not allege fact sufficient to state a plausible

18   claim that Defendant violated any constitutional right of Plaintiffs, the Section 1985 counts

19   likewise fail to state a claim.  *See Vinatieri v. Mosley*, 787 F. Supp. 2d 1022, 1031 (N.D. Cal.

20   2011).

21          The Section 1985 claims fail for another reason, as well.  To state a claim for violation of

22   Section 1985, a plaintiff must allege facts sufficient to establish a conspiracy.  *See Olsen v. Idaho*

23   *State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (affirming dismissal of § 1985 claim where

24   plaintiff's complaint included no allegations describing the defendants' agreement to violate her

25   constitutional rights and failed to adequately allege a constitutional violation); *see also Burns v.*

26   *Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (noting that a § 1983 plaintiff "must state specific

27   facts to support the existence of the claimed conspiracy"); *Gressett v. Contra Costa Cnty.*, No. C-

28   12-3798 EMC, 2013 WL 2156278, at *15-16 (N.D. Cal. May 17, 2013) ("Whether a plaintiff has

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1   alleged sufficient facts to show a conspiracy is generally a case[-]specific, fact-intensive inquiry.

2   Courts look to a variety of factors, such as whether the plaintiff has set forth facts from which a

3   motive can be inferred, facts showing acts taken in furtherance of the conspiracy, and facts

4   showing specific agreement to be part of a conspiracy.") (citations omitted); *see, e.g.*, *Lacey v.*

5   *Maricopa Cnty.*, 693 F.3d 896, 935-36 (9th Cir. 2012) (existence of conspiracy adequately alleged

6   where, among other reasons, the complaint "detail[ed] reasons for why each [conspirator] had a

7   motive"); *Sanchez v. Aviva Life & Annuity Co.*, No. C-09-1454 FCD, 2010 WL 2606670, at *4

8   (E.D. Cal. June 28, 2010) (sufficient to include "detailed allegations regarding the nature of the

9   conspiracy, the communication and interaction between [the members of the conspiracy], the

10  nature and mechanics of the [acts taken in furtherance of the conspiracy], and the motives of the

11  alleged conspiring parties."). Here, aside from the broad allegation that OPD had a policy and

12  practice of discriminating against Black Muslims, Plaintiffs' conspiracy claims do not include

13  facts demonstrating that OPD and any individual officers entered any such agreement, what each

14  participant's role was, whether each participant had knowledge of the plan to violate Plaintiffs'

15  rights and how they did so. The SAC therefore fails to plausibly allege conspiracy.

16          In addition, the SAC names only the City of Oakland as a defendant, and alleges that only

17  the City of Oakland is liable for the Section 1985 conspiracy. However, it appears that the basis

18  of the claim is that OPD conspired with its own employees to violate Plaintiffs' rights. (*See* Dkt.

19  No. 15 at 14-15.) Under the intracorporate conspiracy doctrine, "a corporation cannot conspire

20  with its own employees or agents." *Wash. v. Duty Free Shoppers*, 696 F. Supp. 1323, 1325 (N.D.

21  Cal. 1988) (citation omitted). The Ninth Circuit "has not yet addressed whether individual

22  members of a single government entity can form a 'conspiracy' within the meaning of [S]ection

23  1985[,]" and other circuits are split. *Fakoya v. Cnty. of Clark*, No. 2:12-cv-02149-JAD-CWH,

24  2014 WL 5020592, at *7 (D. Nev. Oct. 8, 2014) (citations omitted); *see also Portman v. Cnty. of*

25  *Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993) (recognizing the split in authority but declining to

26  resolve the dispute). Courts within this District also appear split on the issue. *Compare Rabkin v.*

27  *Dean*, 856 F. Supp. 543, 551-52 (N.D. Cal. 1994) (finding "persuasive the rationale supporting the

28  application of the intra-corporate conspiracy doctrine to bar a Section 1985 claim where the

1   conspiratorial conduct challenged is essentially a single act by a single governmental body acting

2   exclusively through its own officers, each acting within the scope of his or her official capacity"),

3   *and Welsh v. City & Cnty. of San Francisco*, No. C-93-3722 DLJ, 1995 WL 415127, at *3 (N.D.

4   Cal. June 30, 1995) (barring § 1985 claim against City of San Francisco and its agents pursuant to

5   intracorporate conspiracy doctrine), *with Rashdan v. Geissberger*, No. C 10-00634 SBA, 2011 WL

6   197957, at *7 (N.D. Cal. Jan. 14, 2011) (declining to extend the intracorporate conspiracy doctrine

7   to a § 1985(3) claim); *Rivers*, 2010 WL 145094, at *7-8 (same); *Washington*, 696 F. Supp. at 1327

8   (same).

9          The Supreme Court has also declined to answer the question.  *See Hull v. Shuck*, 501 U.S.

10   1261, 1261 (1991); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 n.11 (1979).

11   The Second, Fourth, Sixth, Seventh, and Eighth Circuits extend the doctrine to Section 1985

12   claims, thus barring conspiracy claims that a single government entity conspired with its own

13   employees, but the First, Third, Tenth, and Eleventh Circuits do not apply the doctrine and allow

14   such claims.  *See Rivers v. Cnty. of Marin*, No. C-09-1614 EMC, 2010 WL 145094, at *7-8 (N.D.

15   Cal. Jan. 8, 2010); *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057-58 (C.D. Cal. 2000);

16   *Washington v. Duty Free Shoppers*, 696 F. Supp. 1323, 1326-27 (N.D. Cal. 1988).  However,

17   "even those circuits that extend the doctrine to civil rights cases" have "recognized an exception

18   where an officer or agent has an independent personal stake in achieving the corporation's illegal

19   objective."  *Rivers*, 2010 WL 145094, at *8 (internal quotation marks and citations omitted).

20          In *Rashdan*, the Court noted that the intracorporate conspiracy doctrine was first developed

21   in the context of antitrust cases, and the Ninth Circuit "has counseled that application of the

22   doctrine is dependent upon the type of conduct the statute at issue is intended to proscribe."  2011

23   WL 197957, at *6.  Specifically, in *Webster v. Omnitrition International, Inc.*, the court held that

24   the intracorporate conspiracy doctrine does not apply to conspiracy claims under the Racketeer

25   Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(d), because, unlike antitrust laws, such

26   conspiracies fall within the type of conduct the statute is meant to prevent.  79 F.3d 776, 787 (9th

27   Cir. 1996). Applying this logic, the *Rashdan* court concluded that the intracorporate conspiracy

28   doctrine is also inapplicable to a Section 1985 claim, reasoning that

United States District Court
Northern District of California

[u]nlike antitrust conspiracies, which mainly are directed at the anticompetitive and collaborative efforts of businesses, the conspiracy in a [Section] 1985(3) claim is focused on the discriminatory conduct of the individuals involved. Thus, regardless of whether the defendants were acting as individuals or within the course and scope of their employment, their agreement to deprive another of his or her equal protection rights remains subject to the proscriptions of [Section] 1985(3).

*Rashdan*, 2011 WL 197957, at *7 (citations omitted). The Court finds this logic persuasive, and therefore concludes that a Section 1985 claim is not necessarily barred by the intracorporate conspiracy doctrine. But here, the claim still fails for the reasons discussed above—*i.e.*, because Plaintiffs have not adequately alleged an underlying constitutional violation, and because they have not included sufficient facts to plausibly allege the existence of a conspiracy.

C.      *Leave to Amend*

"Leave to amend is not automatic upon granting a motion for judgment on the pleadings under Rule 12(c), but it within the Court's discretion." *Guidiville Rancheria of Cal. v. United States*, No. 12-cv-1326 YGR, 2014 WL 3749227, at *3 (N.D. Cal. July 24, 2014) (citation omitted). The same standard applies when considering whether to grant leave to amend after granting a Rule 12(b)(6) motion to dismiss. *See id.* Thus, leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, particularly where the plaintiff is pro se. *Lopez*, 203 F.3d at 1130-31. However, leave to amend need not be granted, even to a pro se litigant, where further amendment would be futile. *McQuillon v. Schwarzenegger*, 269 F.3d 1091, 1099 (9th Cir. 2004). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Vantine Corp. Sec. Litig.*, 283 F.3d 1079, 1097-98 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (district court may deny a plaintiff leave to amend if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure the deficiencies). Here, while Plaintiffs have had two opportunities to amend after instruction from the Court in the context of Section 1915 review, this is the first time that the Court has addressed the adequacy of the claims with the benefit of adversarial briefing on a motion to dismiss. Accordingly, the Court will grant Plaintiffs

United States District Court
Northern District of California

leave to amend their claims to cure the defects discussed in this Order.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendant's motion for judgment on the pleadings.  However, the Court will grant Plaintiffs leave to amend the complaint to remedy the defects discussed above.  Plaintiffs' Third Amended Complaint ("TAC") is due by January 5, 2016.  If Plaintiffs fail to file a TAC by that deadline, the Court will dismiss Plaintiffs' claims with prejudice.

The Court encourages Plaintiffs to seek free assistance from the Northern District's Pro Se Help Desk, United States Courthouse, San Francisco, 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, CA 94102 or the Help Desk at the Oakland Federal Courthouse, 1301 Clay Street, 4th Floor, Room 470S, Oakland, CA 94612.  Appointments can be made in person or by calling 415-782-8982.

This Order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: December 15, 2015

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge