1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11

| | |
|---|---|
| ALI SALEEM BEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No.  14-cv-01626-JSC<br><br>**ORDER RE: MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 65 |

12
13
14
15
16
17
18
19
20
21
22
23
24

Plaintiffs Ali Saleem Bey and John Muhammed Bey, proceeding pro se, bring this action against the City of Oakland ("Defendant").[1]  In the Third Amended Complaint ("TAC"), Plaintiffs allege numerous civil rights violations by the Oakland Police Department ("OPD"), generally contending that the OPD failed to adequately investigate Plaintiffs' internal affairs complaints due to racial and religious discrimination against Plaintiffs as members of the Black Muslim community.  (Dkt. No. 60.)[2]  Now pending before the Court is Defendant's motion to dismiss the TAC for failure to state a claim.  (Dkt. No. 65.)  Having considered the parties' submissions, the Court concludes that oral argument is unnecessary and VACATES the April 28, 2016 hearing.  The Court GRANTS Defendant's motion to dismiss Count One as time-barred and Count Four as duplicative, but denies dismissal of the remaining equal protection claims.  Plaintiffs have sufficiently alleged that the Occupy Oakland internal affairs complainants were similarly situated to Plaintiffs but that OPD nonetheless unconstitutionally treated Plaintiffs' complaints differently.

25
26
27
28

---

[1] The Third Amended Complaint also lists a number of individual Oakland Police Department officers as defendants, but the Court has already dismissed the claims against the individual officers.  (*See* Dkt. No. 63.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

## A.     Factual Background

The TAC is not a model of clarity: 75 pages long, repetitive, and rather difficult to follow, it fails to comply with Federal Rule of Civil Procedure 10(b)'s requirement that complaints be written in numbered paragraphs.  *See* Fed. R. Civ. P. 10(b).  Nevertheless, the following background is the Court's best effort at synthesizing the TAC's factual allegations, the documents attached thereto, and other documents of which the Court takes judicial notice.[3]

Plaintiffs are "businessmen, family men and community leaders in the Oakland Black and Muslim community."  (Dkt. No. 60 at 3.)  The causes of action in the TAC arise out of OPD's investigations into the attempted murder of Plaintiff John Muhammed Bey, Plaintiffs' requests for protection and assistance regarding the murder of Waajid Bey—a close associate of Plaintiffs and fellow member of the Black Muslim community—and OPD's insufficient response to and concealment of information regarding each of Plaintiffs' requests for OPD internal investigations.  According to Plaintiffs, they repeatedly brought these systemic failures to the attention of OPD

---

[3] When considering a 12(b)(6) motion to dismiss, a court does not normally look beyond the complaint.  *See* Fed. R. Civ. P. 12(b)(6); *Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d 792, 795 (N.D. Cal. 2005).  However, a court may "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (emphasis in original), and may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Defendant asks the Court to take judicial notice of four documents: two are court orders entered in *Allen v. City of Oakland*, No. 3:00-cv-04599-TEH, a case repeatedly mentioned in the TAC.  The other two are public records and recommendations from the City of Oakland about the City's decision to hire a third party to assist in Internal Affairs Department investigations related to the "Occupy Oakland" protests.  The Court may take judicial notice of documents filed on the public docket in other proceedings if they are directly related to the case at issue, *see U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted), and official acts or records from public agencies and government entities, *see Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 (9th Cir. 2007) (taking judicial notice of a municipal ordinance); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (taking judicial notice of records and reports from administrative bodies); *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (taking judicial notice of legislative history).  Accordingly, the Court GRANTS Defendant's request for judicial notice.  On the other hand, Plaintiffs include new factual allegations in their opposition, without a request for judicial notice, including descriptions of media coverage of Occupy Oakland protests and excerpts from news articles describing related events.  (*See* Dkt. No. 69 at 11-13.)  The Court does not consider new facts alleged for the first time in a plaintiff's opposition to a motion to dismiss.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

officers, the chief of police, and the mayor's office, but OPD did not take action for years and hid the true nature of the issues.  Only years later, when Plaintiffs obtained new documents and relayed their evidence to the compliance director appointed to oversee the OPD, did the Department re-open an investigation into Plaintiffs' complaints.  This investigation resulted in a finding sustaining Plaintiffs' allegation that OPD had violated its own policies and failed to investigate.  Plaintiffs contend that this investigation, too, was woefully insufficient and yet another instance of discrimination.

1.    Initial Murder Investigations & 2007 Internal Affairs Complaint

From 2004 to 2007, OPD Officers Brock and Crutchfield were assigned to investigate crimes of murder and attempted murder that involved Plaintiffs but failed to investigate due to Plaintiffs' Black Muslim status.  (*Id.* at 28.)  In February 2004, Plaintiffs' close friend and associate Waajid Bey disappeared.  (Dkt. No. 60 at 3.)  Four days later, Plaintiffs filed a missing persons report with OPD.  (*Id.*)  Six months later, Waajid's body was discovered and OPD opened a murder investigation.  (*Id.*)

In June 2005, four gunmen ambushed John Muhammed Bey, and OPD opened an investigation into the attempted murder.  (*Id.* at 3-4.)  Two months later, in August, OPD's Criminal Investigations Division closed the investigation into John Muhammed Bey's attempted murder without advising him.  (*Id.* at 4.)

Nearly two years later, in July 2007, Ali Saleem Bey filed with OPD's Citizens' Police Review Board a police misconduct complaint challenging OPD and Officers Brock and Crutchfield for failing to investigate the crimes against Waajid Bey and John Muhammed Bey.[4]  (*Id.* at 4, 20, 62, 66.)  The complaint became Internal Affairs Division Case No. 07-0538 (the "2007 Internal Affairs Complaint").  Two months later, Officers Whent and Downing closed the investigation.  (*Id.* at 4.)  The Internal Affairs Division sent Ali Saleem Bey a letter regarding the

---

[4] Earlier iterations of the pleadings indicated that during this time Ali Saleem Bey "gather[ed] evidence . . . that show[ed] a systemic civil rights violation by OPD against Plaintiffs and associated showing a pattern and practice of discrimination against Plaintiffs as Black Muslims." (Dkt. No. 15 ¶ IV.M.)

2007 Internal Affairs Complaint, indicating that the Internal Affairs Division had completed its investigation into the allegations, had "documented and worked toward resolving your complaint[,]" and that "[t]he circumstances will be further reviewed in order to improve our future service to the community." (*Id.* at 63.) That investigation should have resulted in findings about Officers Joyner, Brock, and Crutchfield, but instead the letter did not include any findings. (*Id.* at 7.) Officers Whent and Downing supervised the investigation of the 2007 Internal Affairs Complaint. (*See id.* at 13.) At the time they issued the letter, Officers Whent and Downing knew that Officers Brock and Crutchfield had engaged in misconduct against Plaintiffs and knew that OPD had failed to investigate the Waajid and John Muhammed Bey cases, as OPD later found in 2013. (*Id.* at 17, 19.) Officer Whent obstructed justice by concealing evidence that Officer Joyner had failed to supervise Officers Brock and Crutchfield in their investigations into the murders. (*Id.* at 20.)

The failure to investigate was discrimination when compared to Whent's supervision of an internal affairs complaint filed by "similar[ly] situated OPD [O]fficer Grant" in Internal Affairs Complaint No. 07-0553, which sought review of OPD's handling of the murder of Chauncey Bailey, who was not a Black Muslim. (*Id.* at 13, 32, 38.) In contrast to Plaintiffs' complaint, which complained of murders of Black Muslims, OPD's investigation into Internal Affairs Complaint No. 07-0553 resulted in detailed reports and findings about Officers Joyner, Longmire, and Loman. (*Id.* at 33, 38.)

> 2.  Yusuf Bey 4th and Related Murder Investigations

That same month, Yusuf Bey 4th murdered two civilians, Odell Robeson and Michael Wills, using a "gun walked" AK47 that OPD chain of command knew Yusuf Bey 4th possessed. (*Id.* at 11.) OPD also knew that an armed Yusuf Bey 4th posed a threat to Plaintiffs due to a dispute between them over the ownership of Your Black Muslim Bakery. (*Id.*) Nevertheless, OPD and the Alameda County District Attorney's approved and participated in Yusuf Bey 4th's release from custody in Solano County. (*Id.* at 12.) Journalist Chauncey Bailey published a story on July 17, 2007 and was murdered on August 2, 2007 with the same gun-walked weapon. (*Id.* at 10, 12.) Yusuf Bey 4th was arrested on August 1, 2007, but OPD changed the arrest record to the

4

1    day after Bailey's murder.  (*Id.* at 12.)  Officer Joyner had ordered OPD's Criminal Investigation

2    Division to cease all surveillance of Yusuf Bey 4th and his associates with access to the "gun

3    walked" AK47 on August 2, 2007, thus "missing" the third Yusuf Bey gun walked-weapon

4    murder in as many weeks.  (*Id.*)  OPD chain of command knew that this order posed a direct threat

5    to Plaintiffs.  (*Id.*)  Yusuf Bey 4th ordered Bailey's murder to silence Bailey's story, which would

6    have exposed OPD chain of command's actions that resulted in "Black on Black murder and the

7    murder of innocent civilians."  (*Id.* at 13.)

8        In 2009, the California Department of Justice requested evidence related to OPD's

9    Chauncey Bailey murder investigation.  (*Id.* at 10.)  Whent and Downing failed to include

10   Plaintiffs' 2007 Internal Affairs Complaint in response to that request, even though it was

11   responsive.  (*Id.* at 10, 13.)  The 2007 Internal Affairs Complaint was related to the Chauncey

12   Bailey murder investigation because the officers responsible for investigating the 2007 Internal

13   Affairs Complaint knew that Ali Saleem Bey, John Muhammed Bey, and Waajid Bey were the

14   sources and subjects of Chauncey Bailey's last story, which caused his murder.  (*Id.* at 10.)  OPD

15   chain of command knew that the gun used to kill Chauncey Bailey was the same that Yusuf Bey

16   4th stole between 2005 and 2007 and, despite that knowledge, that OPD failed to recover as part

17   of their depraved indifference to Plaintiffs and their families.  (*Id.*)  In later-released Department

18   of Justice documents, OPD Criminal Investigations Division employees "expressed frustration and

19   disdain for plaintiffs as police reform activist labeled 'rabble rousers', Black Muslim community

20   leaders, and politically powerful independent business men."  (*Id.* at 27.)  Also in 2009, Officer

21   Joyner stated that "all things were treated differently" when it came to OPD's interaction with

22   Plaintiffs, "their associations[,] and religious affiliations."  (*Id.* at 14.)

23       3.    2011: Citizens Police Review Board Complaint

24       After filing the 2007 Internal Affairs Complaint, at least four years then passed during

25   which time Plaintiffs did not pursue any further administrative or judicial avenues for relief.[5]  In

26

27   ───────────────────────
     [5] In all three earlier iterations of the pleadings, including the Second Amended Complaint
28   ("SAC"), Plaintiffs' alleged period of inaction was even longer: they previously alleged that they
     did not pursue any administrative or judicial remedies until July 26, 2013.  (Dkt. No. 15 ¶ IV.R.)

United States District Court
Northern District of California

March 2011, Plaintiffs requested records from the Waajid Bey and John Muhammed Bey investigations, but learned that OPD had lost the files. (*Id.*) In July 2011, Officer Longmire testified that OPD chain of command permits a policy of hatred and intolerance against Black Muslims among its employees, and that anyone associated with Your Black Muslim Bakery was a target of the Criminal Investigation Division's hatred. (*Id.* at 15, 27, 29.) Two months later, Plaintiffs discovered "through due diligence" that OPD's Criminal Investigations Division had closed its investigation into John Muhammed Bey's attempted murder back in August 2005. (*See id.* at 4.) Accordingly, in November Plaintiffs filed a Citizens Police Review Board complaint in "against defendant chain of command responsible for concealing John [Muhammed] Bey and Waajid Bey['s] case files and deception over [the] status" of the investigations. (*Id.*) The TAC does not allege what became of that complaint. In July 2012, Plaintiffs also notified the Oakland City Council and City Attorney's Office that OPD officers had been concealing evidence of misconduct related to murder investigations. (*Id.*)

### 3. 2013 Internal Affairs Complaint

In March 2013, Plaintiffs asked Thomas Frazier, who had been appointed as compliance director to oversee OPD pursuant to a Negotiated Settlement Agreement in *Allen v. City of Oakland*, a federal action then pending in the Northern District of California, to investigate OPD's pattern and practice of discrimination against Plaintiffs and other Black Muslims. (*Id.* at 4, 9) Specifically, Plaintiffs requested that Frazier investigate misconduct by OPD, and Officers Whent, Downing, Longmire, and Joyner, related to the 2004 investigation into Waajid Bey's murder; the 2005 investigation into John Muhammed Bey's attempted murder; Officers Whent and Downing's insufficient investigation of and concealment of misconduct in response to the 2007 Internal Affairs Complaint; and OPD chain of command's obstruction of justice related to the murder investigations of Chauncey Bailey, Odell Robeson, Michael Wills, and Waajid Bey, all of which are related to Defendant's discrimination against Plaintiffs. (*Id.* at 5.) At this time, Plaintiffs named a number of individual officers, including Officers Crutchfield, Whent, Longmire, Joyner, and Downing, as failing to investigate crimes against Plaintiffs and concealing the pattern and practice of racial and religious profiling against Plaintiffs since 2001. (*Id* at 5-6.) Frazier opened

an investigation into Plaintiffs' complaint on April 20, 2013, which became Internal Affairs complaint No. 13-1062 ("2013 Internal Affairs Complaint").  (*See id.* at 5, 6, 62.)

On March 18, 2014, OPD issued a letter indicating that it had completed its investigation into the 2013 Internal Affairs Complaint and made the following investigative findings on Plaintiffs' allegations:

> Performance of Duty – The complainants alleged that there was a systematic failure on the part of the Oakland Police Department during the investigation of the murder of Waajid Bey and the attempted murder of John Bey as it relates to the follow up criminal investigation.  The investigation disclosed sufficient evidence to determine that the alleged conduct did occur.  A finding of 'Sustained' has been determined.  This finding is applied to the Oakland Police Department as the individual Subject Officers and their immediate supervisor are no longer employed by the O.P.D.

(*Id.* at 62.)  Notwithstanding that letter, Plaintiffs allege that the investigation was insufficient and the letter making those findings misleading and fraudulent for a number of reasons.

The Internal Affairs Division initially assigned the 2013 Internal Affairs Complaint to intake Officer My Nguyen.  (*Id.* at 5.)  Officer Nguyen told Plaintiffs that "everyone" was watching the investigation into the 2013 Internal Affairs Complaint, including Frazier, his successor Warshaw, and OPD chain of command (including Officers Cunningham, Downing, and Whent, among others).  (*Id.* at 6.)  Plaintiffs complained to Officer Nguyen that there were too many conflicts of interest for the Internal Affairs Division to investigate the 2013 Internal Affairs Complaint itself and requested an independent investigation, like the ones that had been initiated for complaints related to the Occupy Oakland Internal Affairs complaints.  (*Id.* at 6.)  Plaintiffs met with Officer Nguyen in July 2013 to discuss their complaint and provide evidence that Officers Whent, Downing, Joyner, and Longmire had been concealing their policy violations and religious and racial discrimination, including evidence that Officers Whent and Downing failed to investigate Plaintiffs' 2007 Internal Affairs Complaint in order to conceal other officers' connections to the murders of Robeson, Wills, and Bailey.  (*Id.* at 7, 9.)  Plaintiffs told Officer Nguyen that, in exchange for concealing the officers' connection to those murders, Officers Whent

United States District Court
Northern District of California

1    and Downing were promoted, and OPD regularly promotes officers who conceal other officers'

2    misconduct.  (*Id.*)

3        Ultimately, the Internal Affairs Division assigned Officer William Griffith to investigate

4    the 2013 Internal Affairs Complaint.  (*Id.* at 8.)  In November 2013 Officer Griffith met with

5    Plaintiffs and told them that "Waajid Bey's murder case was connected to the murders of civilian

6    community members [Robeson] and [Wills] through the Gun Walked AK47 murder weapon."

7    (*Id.*)  In January 2014 the court overseeing the *Allen* case replaced Frazier with Robert Warshaw

8    as OPD's compliance director.  (*Id.* at 5.)  Once Warshaw assumed his duties, Officer Griffith

9    stopped meeting with Plaintiffs.  (*Id.* at 8.)  Plaintiffs allege that Warshaw and Officer Griffith

10   never completed the investigation and never made any findings, and instead purposefully omitted

11   evidence of Officers Joyner, Longmire, Whent, and Downing's corruption, as evidenced by the

12   fact that the resolution letter neither named nor included specific findings about the individual

13   officers about whom Plaintiffs had complained to Officers Nguyen and Griffith.[6]  (*Id.* at 62.)

14   OPD's failure to make a specific findings about Officers Whent, Downing, Longmire, and Joyner

15   violates the Negotiated Settlement Agreement that governed OPD following the *Allen* case.  (*Id.* at

16   16.)

17       Moreover, while the 2014 resolution letter indicated that the subject officers no longer

18   worked for OPD, in April 2015 Assistant Chief Paul Figueroa informed Plaintiffs that Officer

19   Joyner—who supervised Officers Longmire, Brock, and Crutchfield in 2007—"was 'omitted'

20   from [the 2014 resolution letter about the 2013 Internal Affairs Complaint] and should have been

21   included as 'sustained.'"  (*Id.* at 33.)

22       OPD's investigation into the 2013 Internal Affairs Complaint was also improper because

23   of a conflict of interest: Plaintiffs complained of Officer Whent's conduct, but Officer Whent

24   appointed the Internal Affairs Division investigating officer, Oliver Cunningham.  (*Id.* at 21.)

25   Officer Cunningham admitted to speaking with Officer Whent about the 2013 Internal Affairs

26

27   ───────────────────

28   [6] Plaintiffs appear to allege that the resolution letter did make specific findings about Officers
     Crutchfield and Brock, whom Plaintiffs had complained about in the 2007 Internal Affairs
     Complaint.  (*See id.* at 18.)

Complaint, and the two agreed to conceal evidence of Officer Whent's violations in connection with the 2007 Internal Affairs Complaint investigation.  (*Id.*)  In addition, Warshaw admitted to Plaintiffs that he met with Officers Whent, Downing, and Figueroa to discuss Plaintiffs' discontent with the status of the 2013 Internal Affairs Complaint investigation.  (*Id.* at 24.)

Plaintiffs' 2013 Internal Affairs Complaint was "a more complex investigation than the [Internal Affairs Division] investigations of similarly situated non Black Muslim initiated 'Occupy' related allegations of misconduct against defendant OPD by non Black Muslim complainants."  (*Id.* at 13.)  Frazier supervised the Occupy-related investigations from 2012 to 2013, which were conducted in compliance with OPD's policies, including production of detailed reports on itemized misconduct allegations compared to the incorrect, one-page summary document that Plaintiffs received, which lacked specific findings on Plaintiffs' complaints about Officers Whent, Downing, Joyner, and Longmire.  (*Id.* at 13-14, 16.)  OPD omitted such findings from its decision to conceal OPD's policy of discrimination against Plaintiffs and evidence of misconduct that Officers Whent, Downing, Joyner, and Longmire committed against Plaintiffs. (*Id.* at 14, 17.)

Officers including Longmire, Joyner, Cunningham, Outlaw, Downing, Figueroa, and Whent conspired to conceal this pattern of discrimination.  (*Id.* at 14, 17.)  They "conferred regularly and communicated repeatedly via meetings, emails, and phone" about Plaintiffs' 2013 Internal Affairs Complaint from July 2013 through March 2014.  (*Id.* at 14.)

The City of Oakland has repeatedly denied Plaintiffs' request for an independent investigation into their claims despite the conflict of interest that bars OPD's Internal Affairs Division from impartially investigating its own mishandling of Plaintiffs' 2007 Internal Affairs Complaint.  (*Id.* at 34.)  The City of Oakland has provided independent investigations of Internal Affairs complaints when "predominantly Caucasian persons[,]" like the Occupy Oakland complainants, have requested them.  (*Id.* at 35.)

### B.      Procedural History

Plaintiffs initiated this action on April 9, 2014.  (Dkt. No. 1.)  After reviewing the first three iterations of the pleadings pursuant to 28 U.S.C. § 1915, the Court concluded that the Second

United States District Court
Northern District of California

United States District Court
Northern District of California

Amended Complaint ("SAC") allegations were sufficient to survive Section 1915 review and proceed to service without prejudice to Defendant moving to dismiss on any ground.  (Dkt. No. 16 at 8.)  The Court then dismissed the SAC following Defendant's motion for judgment on the pleadings.  *Bey v. City of Oakland*, No. 14-v-01626, 2015 WL 8752762, at *15 (N.D. Cal. Dec. 15, 2015).  In that Order, the Court dismissed Plaintiffs' claims related to OPD's conduct regarding the 2004, 2005, and 2007 investigations as time-barred, and concluded that all counts of the SAC, to the extent that they were premised on OPD's conduct regarding the 2013 Internal Affairs Complaint investigation, otherwise failed to state a claim.  *Id.*

Plaintiffs then filed the 75-page TAC, which alleges nine causes of action, including a newly-alleged claim under 42 U.S.C. § 1986 and ten newly-added defendants, all individual officers with the Oakland Police Department.  (Dkt. No. 60.)  Counts One, Two, Four, Five, Seven, and Eight allege that the OPD, individual officers (including Officers Longmire, Joyner, Cunningham, Outlaw, Downing, Figueroa, and Whent), and compliance director Warshaw gave short shrift to Plaintiffs' Internal Affairs Division complaints due to discrimination based on race and religion in violation of Plaintiffs' right to equal protection under the law.

In Count One, Plaintiffs contend that OPD discriminated against them by failing to comply with its own Manual of Rules when it came to the 2007 Internal Affairs Complaint investigation, inasmuch as OPD failed to investigate Officers Brock and Crutchfield and failed to provide Plaintiffs with a "finding" of failure to investigate against those two officers and their supervisor, Officer Joyner.  In Counts Two and Four, Plaintiffs contend that OPD discriminated against them by failing to comply with its own policy by failing to make findings to about the specific officers complained of in Plaintiffs' 2013 Internal Affairs Compliant.  Count Five faults OPD and the individual officers for concealing evidence and making a false statement in the letter resolving the 2013 Internal Affairs Complaint: while the letter represented that the officers associated with the 2007 misconduct no longer worked at OPD, the letter omitted known misconduct by current OPD Officers Whent, Downing, and Joyner.  In Count Seven, Plaintiffs allege that the officers responsible for the 2013 Internal Affairs Complaint investigation should have recused themselves, and in fact the entire Internal Affairs Division should have recused itself and instead permitted an

independent investigation, and in failing to do violated its own policy against "conflict of interest tainted investigations" and thus violated Plaintiffs' civil rights.  Count Eight faults OPD for failing to provide Plaintiffs with transcripts of interviews of current OPD officer-employees taken during the course of the 2013 Internal Affairs Complaint investigation in violation of OPD policy and Plaintiffs' civil rights.  The gravamen of the Section 1983 claims regarding the 2013 Internal Affairs Complaint is that OPD adequately investigated and resolved consistent with its own policy Occupy Oakland-related allegations of misconduct filed by non-Black Muslims but failed to do so for Plaintiffs' complaints because they are Black Muslims.

Two counts allege that OPD and the individual officers conspired to violate Plaintiffs' civil rights in violation of 42 U.S.C. § 1985.  In Count Three, Plaintiffs allege that OPD's failure to resolve the 2013 Internal Affairs Complaint consistent with OPD policy by making specific findings about the officers and their concealment of the evidence that would have supported those findings was part of a conspiracy to give "'different' aka deliberate indifferent treatment" to Plaintiffs as Black Muslims.  In the sixth count, Plaintiffs contend that OPD's admission of systemic failures in the letter resolving the 2013 Internal Affairs Complaint demonstrates that OPD knew since 2007 of its unfair treatment of Black Muslims but conspired to conceal that information until the 2014 admission.

Finally, the ninth count alleges that the City of Oakland and compliance director Warshaw are liable for neglecting to prevent OPD and the individual officers from violating Plaintiffs' civil rights, in violation of 42 U.S.C. § 1986.

Plaintiffs seek (1) an independent investigation of the officers connected to their 2007 and 2013 Internal Affairs Complaints as well as the murder of Chauncey Bailey; (2) immediate removal of OPD's Chief and Deputy Chief of Police; (3) immediate placement of OPD into a federal receivership to be overseen and managed by the DOJ Civil Rights Division; (4) an apology and admission regarding OPD's use of improper "COINTELPRO" tactics, purposeful fomentation of black on black murder and other violence, aiding and abetting Yusuf Bey 4th, and defaming Black Muslims and the Bey family; and (5) compensation for, among other things, lasting mental, physical, emotional, character, political, and economic harm resulting from the pattern and

1    practice of racial and religious discrimination.

2    　　Because the Court never authorized Plaintiffs to add a new claim or new parties, Plaintiffs

3    did not seek leave to amend, and there was no basis for Plaintiffs to substitute the individual

4    officers in for previously-named Doe defendants, the Court sua sponte dismissed the Section 1986

5    claim and all of the new individual defendants without leave to amend.  (Dkt. No. 63.)  The Court

6    directed Defendant to respond to the TAC "as if it did not include such allegations."  (*Id.* at 2.)

7    Defendant's motion to dismiss followed.

8    **DISCUSSION**

9    　　As the Court already dismissed claims against individual defendants and the Section 1986

10   claim, the only claims that remain are Section 1983 and 1985 claims against the City.

11   **I.    Whether the Statute of Limitations Bars Count I**

12   　　Plaintiffs' first cause of action alleges a Section 1983 violation based on the insufficient

13   investigation of the 2007 Internal Affairs Complaint.  (Dkt. No. 60 at 37-38.)  Specifically,

14   Plaintiffs allege that Defendant violated their civil rights when OPD failed to make particular

15   findings with regard to Plaintiffs' complaints about Officers Brock and Crutchfield—allegations

16   that were later sustained when OPD issued a decision on Plaintiffs' 2013 Internal Affairs

17   complaint—due to Plaintiffs' status as Black Muslims.[7]  (*See* Dkt. No. 60 at 37.)  Defendant urges

18   the Court to dismiss this claim as barred by the statute of limitations.

19   　　A.    *When Plaintiffs' Claim Accrued*

20   　　As explained in the Court's Order reviewing the SAC, the statute of limitations for Section

21   1983 claims is two years.  *See Bey*, 2015 WL 8752762, at *5 (citing *Canatella v. Van de Kamp*,

22   486 F.3d 1128, 1132 (9th Cir. 2007)).  "[A] claim accrues when the plaintiff knows or has reason

23   to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991

24   (9th Cir. 1999) (citation omitted).  A plaintiff need not know the full extent of his injuries in order

25   _____

26   [7] In their opposition, Plaintiffs seem to suggest that Count One also challenges the 2004 and 2005
     initial OPD Criminal Investigation Division investigations into Waajid Bey's murder and John

27   Muhammed Bey's attempted murder. (Dkt. No. 69 at 8-9.)  Not so.  The claim does not complain
     of, or even mention, the Criminal Investigation Division investigation, and instead focuses

28   exclusively on OPD's Internal Affairs Division's failure to make specific findings about the
     allegations against Officers Brock and Crutchfield.  (*See* Dkt. No. 60 at 37-38.)

United States District Court
Northern District of California

for the claim to accrue.  *See Wallace v. Kato*, 549 U.S. 384, 390-91 (2007); *see, e.g.*, *Ward v. Ives*, No. 2:11-cv-1657-GEB-EFB, 2014 WL 4417764, at *7 (E.D. Cal. Sept. 4, 2014).

Just as the Court concluded in reviewing the SAC, Plaintiffs' claim of discriminatory conduct in connection with the 2007 Internal Affairs Complaint accrued in September 2007 when Plaintiffs received notice that OPD had completed its internal investigation into that complaint; the letter stated that the investigation was closed and did not include any specific findings about officers' misconduct.  Thus the statute of limitations on any claim arising out of that complaint expired in September 2009.  (*See* Dkt. No. 65 at 11-12; Dkt. No. 60 at 63.)  *See Bey*, 2015 WL 8752862, at *6.  Now in the TAC, Plaintiffs again concede that they did not pursue until November 2011 any administrative or judicial remedies on this claim after receiving the September 2007 letter informing them that the investigation had been completed.  (See Dkt. No. 60 at 4.)  Because Plaintiffs did not commence this action until April 2014, the claim is time-barred.  (*See id.*)

B.      *Whether Grounds for Extending the Limitations Period Exist*

Plaintiffs argue that the Court should nevertheless permit them to bring their claim arising out of the 2007 Internal Affairs Complaint investigation because equitable tolling should extend the limitations period and equitable estoppel should preclude Defendant from asserting a statute of limitations defense.

1.      Equitable Tolling

Equitable tolling focuses on "whether there was excusable delay by the plaintiff[.]" *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  The purpose of the equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court."  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc) (quotation marks and citation omitted).  California courts therefore apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."  *Wade v. Ratella*, 407 F. Supp. 2d 1196, 1204 (S.D. Cal. 2005) (quotation marks and citation omitted).

In deciding whether to equitably toll a statute of limitations for a cause of action filed

United States District Court
Northern District of California

United States District Court
Northern District of California

1  under Section 1983, the court applies the forum state's tolling doctrines.  *See Trimble v. City of*

2  *Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995); *see also Pesnell v. Arsenault*, 543 F.3d 1038, 1043

3  (9th Cir. 2008).  Under California's equitable tolling doctrine, the statute of limitations is tolled

4  when an individual has several formal legal remedies, including administrative remedies, and

5  reasonably and in good faith pursues one.  *Jones v. Tracy Sch. Dist.*, 27 Cal.3d 99, 108 (1980).

6  Whether such proceedings equitably toll the statute of limitations requires courts to consider three

7  elements: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the

8  defendant in gathering evidence for the second claim; and (3) good faith and reasonable conduct

9  by the plaintiff.  *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988) (citation

10 omitted).  At the pleadings stage, the plaintiff bears the burden of establishing entitlement to

11 equitable tolling.  *See Limon-Rodriguez v. U.S. Dep't of Homeland Sec.*, No. 12-cv-833-IEG

12 (RBB), 2012 WL 1416274, at *4 (S.D. Cal. Apr. 24, 2012) (citing *V.C. v. Los Angeles Unified*

13 *Sch. Dist.*, 139 Cal. App. 4th 499, 417-18 (2006)).

14      In reviewing the SAC, the Court noted that Plaintiffs labeled a section of their opposition

15 "equitable tolling," but instead argued for equitable estoppel, so the Court did not consider

16 whether tolling was appropriate.  *See Bey*, 2015 WL 8752762, at *7.  Here, the section entitled

17 "equitable tolling" in Plaintiffs' opposition likewise appears to focus not on Plaintiffs' conduct in

18 pursuing claims elsewhere, but on Defendant's fraudulent concealment, which again sounds in

19 equitable estoppel not tolling.  Though the Court is not obligated to consider arguments that

20 plaintiffs did not make, even when they are proceeding pro se, *see Nev. Dep't of Corrs. v. Greene*,

21 648 F.3d 1014, 1020 (9th Cir. 2011), Defendant has construed Plaintiffs' argument to be a request

22 to equitably toll the periods from 2011 to 2013, when Plaintiffs pursued their newly-alleged

23 Citizens Complaint Review Board complaint, and from 2013 to 2014, when they sought help from

24 the Federal Compliance Director instead of initiating this action.  Plaintiffs do not make this

25 argument, nor do they cite any cases that support tolling under these circumstances.  Defendant

26 assumed for the purposes of its argument that Plaintiffs are entitled to tolling for these time

27 periods.  The Court declines to make this assumption.

28      Plaintiffs are not entitled to toll the 2011-2013 time period.  The TAC alleges that the

emphasis of the 2011 Citizens Complaint Review Board complaint was that OPD concealed the case files from the initial 2004 and 2005 investigations into Waajid Bey's murder and John Bey's attempted murder and deceived Plaintiffs regarding the status of those underlying investigations. (Dkt. No. 60 at 4.)  But the harm alleged in the TAC's Count One is not concealing case files from the 2004 and 2005 investigations; instead, it challenges the findings of the 2007 Internal Affairs Complaint investigation itself.  As a result, Plaintiffs' pursuit of the 2011 Citizens Complaint Review Board complaint did not provide notice to Defendant of the subject of the 2007 Internal Affairs Complaint, as equitable tolling requires.  *See Bacon*, 843 F.2d at 374.  Applying equitable tolling would also prejudice Defendant, as it would permit Plaintiffs to delay filing one claim so long as they pursue some other claim administratively.  This is not the purpose of equitable tolling.

Plaintiffs are, however, entitled to equitable tolling of the period from 2013 to 2014, when the federal compliance director instructed OPD to re-open Plaintiffs' 2007 claims in the new 2013 Internal Affairs Complaint.  During this time, Plaintiffs pursued their 2007 claims and expected that the OPD, now under federal supervision, would re-investigate and make findings sustaining their allegations, including the particular allegations about Officers Brock and Crutchfield. Plaintiffs did not realize that this investigation, too, was insufficient until they received the resolution letter in March 2014.  They initiated this action shortly thereafter.  Thus, Plaintiffs have met their burden at the pleading stage of showing that they are entitled to equitably toll the time from 2013 to 2014.

### 2. Equitable Estoppel

Even so, Plaintiffs still must account for the delay between September 2009, when they received notice that OPD had completed its investigation into their 2007 Internal Affairs complaint, and 2013, when OPD re-opened Plaintiffs' administrative complaint.  This lapse alone is more than the two-year limitations period.  Plaintiffs contend that equitable estoppel prevents Defendant from arguing that their claims are time-barred due to this lapse of time.  Equitable estoppel "focuses primarily on the actions taken by the *defendant* to prevent a plaintiff from filing suit[.]" *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008)

United States District Court
Northern District of California

United States District Court
Northern District of California

(citation omitted) (emphasis in original).  "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party should not be allowed to benefit from its own wrongdoing." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (internal quotation marks and citation omitted).  The doctrine "focuses primarily on the actions taken by the *defendant* to prevent a plaintiff from filing suit." *Lukovsky*, 535 F.3d at 1051 (emphasis in original) (quotation marks and citation omitted).  The plaintiff carries the burden of pleading and proving the following elements of equitable estoppel: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991); *see also Lukovsky*, 535 F.3d at 1051-52 (noting that the requirements under California law are the same).  As for the third element, "a plaintiff can know, or suspect, that she has a cause of action and still be 'ignorant of the true facts' of the case." *Amaro*, 653 F.3d at 813.  Equitable estoppel bars a statute of limitations defense "when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990).

When a party seeks estoppel against the government, "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Id.*  Put another way, a plaintiff asserting equitable estoppel "must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky*, 535 F.3d at 1051-52 (emphasis in original) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)).

Plaintiffs contend that they are entitled to equitable estoppel due to Defendant's fraudulent concealment of the insufficient nature of OPD's investigation into Plaintiffs' 2007 Internal Affairs Complaint.  Although the TAC and opposition are both difficult to follow, Plaintiffs appear to argue that (1) OPD had knowledge of its own discrimination and that it covered up its own wrongdoing by failing to make findings of discrimination in the letter disposing of Plaintiffs' 2007 Internal Affairs Complaint in order to conceal the truth; (2) OPD issued that letter to mislead

United States District Court
Northern District of California

Plaintiffs by inducing them to believe that they had investigated and made a finding of discrimination; (3) Plaintiffs did not know there was actual discrimination or cover-ups until they received documents about the 2008 and 2009 investigations in the fall of 2011; and (4) as a result, they detrimentally relied on OPD's cover up by not bringing a federal action. *See Bolt*, 944 F.2d at 609; *Lukovsky*, 535 F.3d at 1051. But, just as with the SAC, this reliance is not adequately alleged in the TAC. First, Plaintiffs have long alleged that they filed the 2007 Internal Affairs Complaint precisely because OPD's investigations into the 2008 and 2009 murder and attempted murder were insufficient due to discrimination against Black Muslims. *See Bey*, 2015 WL 8752762, at *8. In other words, just as the SAC, the TAC alleges that "Plaintiffs were convinced they had a discrimination claim as early as 2007, but waited to file suit until [2014] when OPD admitted some wrongdoing related to the earlier investigations." *Bey*, 2015 WL 8752762, at *8. And once again, "the resolution of the 2013 investigation was not a smoking gun that changed the Plaintiffs' knowledge of their case." *Id.* Instead, if anything, it simply provided further support for their already-existing suspicions that OPD was not giving their 2007 claims enough attention.

Plaintiffs' equitable estoppel claim is that Defendant concealed evidence of their discriminatory tactics, so Plaintiffs did not discover the true scope of the problems with the 2008 and 2009 murder and attempted murder investigations until 2011. (*Id.* at 38.) They contend that the letter closing their 2007 Internal Affairs investigation should have revealed that OPD conducted a 9-year investigation into Your Black Muslim Bakery; labeled Plaintiffs and other Bakery associates as domestic terrorists, permitted a policy of hatred towards Plaintiffs and handled them differently, should have made specific findings of policy violations against Officers Brock, Crutchfield, and Joyner, and should have revealed that OPD concealed relevant evidence in the 2007 Internal Affairs Complaint investigation and the murder investigations into Waajid Bey, Chauncey Bailey, Odell Robeson, and Michael Wills to conceal OPD's "gun walking" tactic. (*Id.* at 31.) But Plaintiffs do not explain how any of this information would have made the racial and religious discrimination claim alleged in Count One any more apparent than it was in 2007 when Plaintiffs filed the 2007 Internal Affairs Complaint asserting as much. Indeed, in earlier iterations of the pleadings, they alleged that they filed the 2007 Internal Affairs Complaint precisely because

United States District Court
Northern District of California

they believed the earlier murder investigations regarding Waajid Bey and John Mohammed Bey were insufficient because of their Black Muslim status. Plaintiffs have not established that the absence of all of these facts from OPD's 2007 letter closing their Internal Affairs investigation hid racial and religious discrimination from them. Similarly, while Plaintiffs fault the 2007 Internal Affairs Complaint investigation result letter for failing to make specific findings as to Officers Brock, Crutchfield, and others in the chain of command, it is apparent from the face of the letter that no such findings were made. (*See* Dkt. No. 60 at 63.) Put another way, Plaintiffs were on notice of the insufficiency of the 2007 Internal Affairs Complaint investigation when they received the letter indicating that the investigation was completed and no findings had been made. Plaintiffs have not identified any alleged facts later discovered that suggest otherwise.

Plaintiffs also hang their equitable estoppel hats on some complicated and not clearly alleged conspiracy arguments. They contend that Defendant admitted to them that in 2007 OPD was "aware that [the] Waajid Bey and John Bay cases are directly related to the murder of Chauncey Bailey[,]" which "led plaintiffs to reasonably believe that they were represented in [the] [2008 and 2009] investigations"—presumably the Robeson, Wills, and Bailey murder investigations—but Plaintiffs did not learn until 2011, when OPD released a State DOJ investigation report, that OPD was actually working with Yusuf Bey contrary to Plaintiffs' interests, instead of in support of them. (*See* Dkt. 69 ad 5-7.) As a threshold matter, Plaintiffs' argument relies on allegations that do not appear in the TAC: they argue that OPD's release of the California State DOJ report investigation report from 2009 revealed evidence that OPD was aiding Yusuf Bey, who was a threat to Plaintiffs. The Court has combed the TAC for this allegation, but finds nothing to support it; the Court does not consider allegations made for the first time in an opposition to a motion to dismiss. *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted).

Even if the Court were to consider this allegation, it does not clear a path to equitable estoppel. The Court assumes—though it is never clearly stated—that the 2008 and 2009 investigations Plaintiffs refer to in this argument are OPD's investigation of the Robeson, Wills, and Chauncey Bailey murders. But Plaintiffs have failed to plausibly establish how they had any

18

1   interest in those investigations, let alone how learning about the status of those investigations

2   made them realize they had a more compelling claim of discrimination against Black Muslims

3   regarding their 2007 Internal Affairs Complaint, which alleged discriminatory insufficient

4   investigation in the first instance.  Indeed, Count One is not even related to the Robeson, Wills,

5   and Bailey murder investigations; the claim in Count One is that OPD violated Plaintiffs' rights by

6   failing to make findings about Officers Brock, Crutchfield, and Joyner with respect to their

7   investigations into the crimes against Waajid Bey and John Muhammed Bey.  (*See* Dkt. No. 60 at

8   37.)

9           Plaintiffs again rely on *Estate of Amaro v. City of Oakland*, 653 F.3d 808 (2011), where

10  the Ninth Circuit held that "the doctrine of equitable estoppel [applies] where a plaintiff believes

11  she has a 42 U.S.C. § 1983 claim but is dissuaded from bringing the claim by affirmative

12  misrepresentations and stonewalling by the police." *Id.* at 815.  In *Amaro*, the plaintiff was a

13  mother whose son died following his arrest and reported beating by the police.  *Id.* at 810-12.

14  OPD made a number of affirmative misrepresentations about the underlying incidents, which led

15  the plaintiff to believe she did not have a claim when she really did.  *See id.* at 812-15.

16  Specifically, the police lied to the plaintiff about the cause of her son's death; denied the plaintiff's

17  request for police records; issued a report following an internal investigation that purposefully

18  omitted important information, including that the police had beaten the decedent, that the arresting

19  officer had forged supervising officer's signature, and that the officers had been derelict in not

20  responding to the decedent's requests for medical attention; and refused to give a copy of that

21  report to the plaintiff.  *Id.* at 812.  As a result, all five attorneys the plaintiff met with regarding a

22  possible wrongful death case declined to take her case.  *Id.*  The plaintiff was not able to secure

23  counsel for the Section 1983 action that followed until eight years later, when news reports of an

24  FBI investigation revealed information about the incident involving the plaintiff's son.  *Id.*

25          The TAC allegations do not parallel the facts of *Amaro* and do not support equitably

26  tolling the statute of limitations for Count One.  At bottom, Plaintiffs have not identified how OPD

27  concealed or covered up evidence of the misconduct alleged in that claim—that is, its failure to

28  make findings against Officers Brock, Crutchfield, and Joyner—or misled Plaintiffs to believe

United States District Court
Northern District of California

such findings had been made.  The letter resolving the 2007 Internal Affairs Complaint put Plaintiffs on notice of that information.  And they do not identify other information they learned later that, like *Amaro*, finally gave them the ammunition they needed to file that claim in federal court.  In short, Plaintiffs have not alleged facts that allow the Court to draw the reasonable inference that equitable estoppel applies.  *See O'Brien v. Welty*, --- F.3d ----. No. 13-16279, 2016 WL 1382240, *11 (9th Cir. April 7, 2016).  Accordingly, Count One, a claim of discriminatory misconduct regarding OPD's investigation of the 2007 Internal Affairs Complaint, is time-barred and must be dismissed.  These factual allegations may still serve as relevant evidence regarding any timely Section 1983 and 1985 claims.  *See Pouncil v. Tilton*, 704 F.3d 568, 580 (9th Cir. 2012).

**B.      Sufficiency of the Remaining Claims**

      1.      Section 1983 Claims

To state a claim under Section 1983, a complaint "must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To adequately plead these elements, the complaint must identify what constitutional or other federal right each defendant violated, providing sufficient facts to plausibly support each purported violation." *See Burnell v. Marin Humane Soc'y*, No. 14-cv-05635-JSC, 2015 WL 4089844, at *2 (N.D. Cal. July 6, 2015) (citations omitted).

Here, Plaintiffs' Section 1983 claims allege violations of their right to equal protection under the law based on religious and racial discrimination as Black Muslims.  To state a Section 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acting under the color of state law "acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1196 (9th Cir. 2005) (citation omitted).  To do so, a plaintiff must either plead intentional unlawful discrimination or allege facts that are susceptible to an inference of discriminatory intent. *Monterio v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).  In addition, the "threshold allegation" of an Equal Protection claim is that "the plaintiff was similarly situated to

20

others who received different treatment." *Chaffee v. Chiu*, No. C-11-05118-YGR, 2012 WL 1110012, at *6 (N.D. Cal. Apr. 2, 2012) (quotation marks and citation omitted); *see also Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014) (noting that the plaintiff must plausibly allege that he "was treated differently from persons similarly situated"); *Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2014 WL 4063006, at *9 (N.D. Cal. Aug. 14, 20124) (noting that, to state an equal protection discrimination claim, the plaintiff "must allege facts showing that there were similarly-situated individuals not in his protected class who were treated more favorably") (citation omitted).  Conclusory allegations of discrimination are not enough.  *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2010) (noting that an allegation of impermissible motive was conclusory and therefore not entitled to an assumption of truth).

In addition, the remaining Section 1983 claims in the TAC are pleaded against the City of Oakland.  "Municipalities are 'persons' under [Section 1983] and thus may be liable for causing a constitutional deprivation."  *Long v. Cnty. of Los Angeles*, 442 F.3d 178, 1185 (9th Cir. 2005) (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).  However, "a municipality may not be sued under [Section] 1983 solely because an injury was inflicted by its employees or agents."  *Id.*  Instead, municipal liability requires that "an action pursuant to official municipal policy of some nature caused a constitutional tort."  *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1148 (N.D. Cal. 2014) (citing *Monell*, 436 U.S. at 691); *see also Long*, 442 F.3d at 1185 ("[I]t is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible.").  Thus, to state a claim for municipal liability under Section 1983 for a violation of constitutional rights, a plaintiff must allege facts showing (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("[P]laintiffs must establish that the local

government had a deliberate policy, custom, or practice that was the moving force behind the

constitutional violation they suffered.") (citation omitted).  There can be no municipal liability

without an underlying constitutional violation.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

        a.    *Count Two*

      A plaintiff can state a claim for Section 1983 liability by alleging that the police

department's failure to investigate citizens' complaints amounts to deliberate indifference to the

need for police action.  *See, e.g.*, *Lacy v. Cnty. of San Diego*, No. 12-CV-624, 2012 WL 4111507,

at *3-4 (S.D. Cal. Sept. 18, 2012).  A Section 1983 claim may also lie based on allegations that a

police department administered its internal investigation procedures in a manner motivated by

intentional discrimination against a racial or religious group.  *See Elliot-Park v. Manglona*, 592

F.3d 1003, 1007 (9th Cir. 2010).

      Plaintiffs have adequately pleaded Count Two, which is a Section 1983 claim against the

City for racial and religious discrimination by failing to resolve Plaintiffs' 2013 Internal Affairs

Complaint as mandated by OPD policy and procedure.[8]  Specifically, Plaintiffs allege that the City

failed to make any findings on any of Plaintiffs' factual claims against officers still employed at

OPD.  (Dkt. No. 60 at 39.)  The Court dismissed this claim from the SAC because Plaintiffs had

failed to include any allegations that OPD treated similarly situated individuals differently that

would give rise to an inference of discrimination.  *See Bey*, 2015 WL 8752762, at *11.

---

[8] Count Two and all of the other Section 1983 claims specifically allege that OPD discriminated
against Plaintiffs due to their status as Black Muslims.  (*See, e.g.*, Dkt. No.60 at 41, 45, 46, 52,
55.)  In their opposition, Plaintiffs argue that the TAC also states an Equal Protection claim
against OPD for giving Plaintiffs different treatment as a "class of two"—a variant of the "class of
one" theory first recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per
curiam).  (*See* Dkt. No. 69 at 18-19.)  "[T]he plaintiff in a 'class of one' case does not allege that
the defendants discriminate against a *group* with whom she shares characteristics, but rather that
the defendants simply harbor animus against her *in particular* and therefore treated her
arbitrarily."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (citation omitted).
But where a complaint emphasizes that a defendant treated the plaintiff differently based on a
classification, a class of one theory does not lie.  *See, e.g.*, *Lazy Y Ranch*, 546 F.3d at 592 ("The
problem with this argument, however, is that [plaintiff] does not rely on a class of one theory.
[The plaintiff] repeatedly alleges that Defendants treated it differently based on its perceived
association [with certain groups].  In other words, [the plaintiff's] claims are not premised on
'unique treatment' but on a classification[.]'").  So too here.  Plaintiffs repeatedly allege that OPD
treated them differently because of their animus against Black Muslims—a classification theory,
not a class of one theory.

United States District Court
Northern District of California

1    The TAC has cured this defect.  Plaintiffs allege that OPD followed its policy by making

2 factual findings using the preponderance of the evidence standard against current officers accused

3 of misconduct in Internal Affairs complaints that non-Black Muslim members of the Occupy

4 Oakland movement filed.  (Dkt. No. 60 at 39-41.)  Plaintiffs have therefore alleged that OPD

5 treated similarly-situated individuals who were not part of Plaintiffs' protected class more

6 favorably and provided a more fulsome level of service to Internal Affairs complainants who were

7 not Black Muslims.[9]  *See Elliot-Park*, 592 F.3d at 1007.

8    Defendant's arguments that the Occupy Oakland complainants are not similarly situated

9 are unpersuasive at this stage of litigation.  First, Defendant implies that the Occupy Oakland-

10 related Internal Affairs investigations were not all filed by individuals outside of Plaintiffs'

11 protected class.  (See Dkt. No. 65 at 14.)  But the TAC alleges that the Occupy Oakland

12 complainants were not Black Muslims, and the Court accepts this allegation as true.[10]  The racial

13 and religious identities of the Occupy Oakland complainants therefore does not defeat their status

14 as similarly situated to Plaintiffs.

15    Next, Defendant contends that the Occupy Oakland Internal Affairs investigations are not

16 similarly situated to Plaintiffs' investigations because the former were subject to a court order

17 compelling Defendant to comply with all deadlines and internal policies and procedures for all

18 outstanding Internal Affairs investigations relating to the Occupy Oakland protests and Plaintiffs

19 were not subject to any such court order and because the factual circumstances underlying the two

20 sets of internal investigations were different.  (Dkt. No. 65 at 13.)  Whether court ordered or not,

21

22 _____

[9] Plaintiffs allege for the first time in their opposition that reports from the federal compliance
23 monitor for the first quarter of 2014 indicate that OPD was in 97% compliance with the
requirement to make particular findings for each allegation in an Internal Affairs complaint, which
24 goes to show that Plaintiffs' 2013 Internal Affairs Complaint was treated differently.  (Dkt. No. 69
at 17.)  Plaintiffs do not allege these facts in the TAC, and the Court will not consider facts alleged
25 for the first time in an opposition to a motion to dismiss.  *See Broam*, 320 F.3d at 1026 (citation
omitted).

26
[10] In their opposition, Plaintiffs allege for the first time that the Occupy complainants were
27 "predominantly Caucasian identified" and that the compliance director promised Plaintiffs that
they would "receive a fair transparent investigation and reports, equal to 'Occupy[.]'" (Dkt. No. 69
28 at 11, 14.)  The Court does not consider these new allegations.  *See Broam*, 320 F.3d at 1026
(citation omitted).

the TAC alleges that OPD internal policy mandated specific findings.  Moreover, Defendant's attempt to pick and choose extra-pleading materials—albeit materials subject to judicial notice—to distinguish Plaintiffs' alleged comparator is more appropriate at the summary judgment stage after the parties have had the benefit of discovery.  At that point, the parties will have access to the full universe of documents that shed light on the Occupy Oakland investigations, and the Court will be better positioned to determine whether Plaintiffs and the Occupy Oakland complainants who both brought allegations of officer misconduct are in fact similarly situated.

The cases on which Defendant relies do not change the Court's conclusion.  First, Defendant cites the Seventh Circuit's statement in *Purze v. Village of Winthrop Harbor*, 286 F.3d 452 (7th Cir. 2002), that to be considered similarly situated, plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects."  *Id.* at 455.  Defendant argues that Plaintiffs' and the Occupy Oakland complainants' investigations are not similarly situated because the differences described above—the court order and the factual circumstances—make clear that they are not identical.  But *Purze* was a summary judgment case, not a pleadings case.  Moreover, *Purze* involved a "class of one" Equal Protection theory, not a classification theory as here, and "class of one" discrimination involves more strict enforcement of the similarly-situated requirement.  *See Warkentine v. Soria*, --- F. Supp. 3d ----, No. 1:13-cv-01550-MJS, 2016 WL 259108, at *18 (E.D. Cal. Jan. 21, 2016) (citing *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 926 (W.D. Mich 2009)).  Put simply, *Purze* does not compel the conclusion that a plaintiff must allege that two sets of internal affairs investigations into officer misconduct must complain of identical issues and be subject to identical constraints in order to be similarly situated for the purposes of surviving a motion to dismiss.

Defendant's reliance on *Lam v. City & County of San Francisco*, 868 F. Supp. 2d 928, 944 (N.D. Cal. 2012), fares no better.  Defendant cites *Lam* for the proposition that different factual underpinnings cannot give rise to similarly situated Internal Affairs complaints.  But like *Purze*, *Lam* was a summary judgment case and thus does not address pleading standards.  There, an employee brought a Title VII claim alleging disparate treatment against his employer based on his suspension.  The court concluded that the plaintiff's proffered comparators—non-Chinese

employees who had not been suspended—were not similarly situated because the incidents, which spanned nearly two decades, were "far too isolated and random" and "none appear to deal with facts similar to those alleged by plaintiff here." *Id.* at 944. On the one hand, unlike *Lam*, here the TAC alleges that OPD reviewed and made findings on the Occupy Oakland investigations while Plaintiffs' 2013 Internal Affairs Complaint was pending. On the other hand, like *Lam*, the TAC is silent as to the subject of misconduct alleged in the Occupy Oakland complaints, and the judicially noticeable documents suggest that they were about demonstrations, not murder investigations. But *Lam* does not require a plaintiff to *plead* identical underlying factual scenarios. If anything, Defendant's reliance on *Lam* further demonstrates that whether Plaintiffs and the Occupy Oakland complainants are similarly situated is a question better reserved for determination on summary judgment.

At bottom, Plaintiffs have identified Occupy Oakland complainants as individuals to whom they can be compared. Their Equal Protection claim is predicated on the assertion that they were treated differently than the Occupy Oakland complainants (*i.e.*, they were not given specific findings) even though they engaged in the same behavior (*i.e.*, reporting particular officers' misconduct in Internal Affairs complaints). Defendant has not cited any controlling authority holding that Plaintiffs' allegations are insufficient to survive a motion to dismiss. *See, e.g.*, *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 942 (N.D. Cal. 2014) (declining to dismiss plaintiff's Equal Protection claim where the complaint identified a comparator and alleged that the plaintiff engaged in the same conduct as the comparator). Plaintiffs have therefore stated a claim for an Equal Protection violation based on OPD's failure to make specific findings about the officers Plaintiffs complained of in the 2013 Internal Affairs Complaint.

Because Defendant argues that Count Two fails as a matter of law because Plaintiffs have failed to allege that a group of similarly situated persons received more favorable treatment, they contend that the TAC fails to adequately alleges a basis for *Monell* liability against the City because there is no underlying constitutional violation. (*See* Dkt. No. 65 at 16.) Not so. The TAC adequately alleges all elements of a municipal liability claim. *See Plumeau*, 130 F.3d at 438; *Hernandez*, 666 F.3d at 636. First, as discussed above, the TAC sufficiently pleads that Plaintiffs

United States District Court
Northern District of California

possessed a right to Equal Protection of which they were deprived. Thus, the constitutional

violation predicate element is sufficiently pled. *See Doe v. Maher*, 795 F.2d 787, 790 (9th Cir.

1987) (noting that an "independent constitutional basis is necessary for a valid cause of action

under section 1983") (citations omitted). Defendant does not address the other elements, but

Plaintiffs have plausibly alleged each of them. The TAC adequately alleges that OPD, through its

chain of command, supported an established custom of hatred and discrimination against Black

Muslims, which is sufficient to allege a "policy" for the purposes of a *Monell* claim. *See*

*Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-40 (9th Cir. 2010); *see also Hernandez*,

666 F.3d at 637 (noting that the plaintiffs must identify the policy or practice in the complaint to

state a plausible *Monell* claim). Lastly, the TAC plausibly establishes that this policy of providing

lesser treatment to Black Muslims is the moving force behind their Equal Protection violation.

Accordingly, Plaintiffs have stated a claim against the City of Oakland, and the Court declines to

dismiss Count Two.

b.    *Counts Four, Five, Seven, and Eight*

Counts Four, Five, Seven, and Eight appear to be derivative of Count Two: they all allege

that certain aspects of OPD's investigation and resolution of Plaintiffs' 2013 Internal Affairs

Complaint were insufficient, which they argue is discriminatory based on Plaintiffs' status as

Black Muslims when compared to OPD's treatment of internal affairs complaints about officer

misconduct filed by non-Black Muslim Occupy Oakland complainants.

Just like Count Two, Count Four alleges that OPD's failure to make findings on specific

OPD officers violates Plaintiffs' civil rights. (*See* Dkt. No. 60 at 44.) The only difference appears

to be that in Count Four Plaintiffs allege that OPD's treatment of Plaintiffs' 2013 Internal Affairs

Complaint "is the latest in a long line of defendant['s] failure to investigate plaintiff[s's]

complaints]." (*Id.*) Notwithstanding that language, the alleged violation is the same: that OPD

failed to make findings about particular officers' alleged misconduct in response to Plaintiffs'

2013 Internal Affairs Complaint, but they did so for the non-Black Muslim Occupy Oakland

complainants. (*See id.*) It is well established that district courts have the power to dismiss

duplicative claims. *See M.M. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012); *see, e.g.*,

1    *Estate of Hatfield v. Cnty. of Lake*, No. C 11-2396 PJH, 2012 WL 1949327, at *5-6 (N.D. Cal.

2    May 29, 2012).  Although Counts Two and Four have slightly different language, at their core

3    both allege the same constitutional violation.  Accordingly, the Court will dismiss Count Four as

4    duplicative of Count Two.

5            Defendant attacks the remaining claims—Counts Five, Seven, and Eight—on the same

6    grounds it uses to challenge Count Two: because the Occupy Oakland-related investigations are

7    not similarly situated to Plaintiffs.  (Dkt. No. 64 at 14-15.)  For the same reasons discussed above,

8    the TAC sufficiently alleges that the Occupy Oakland-related Internal Affairs investigations

9    complaining of officer misconduct are similarly situated to survive a motion to dismiss.  It may

10   well be that, after the parties exchange fulsome discovery, the two sets of investigations are *not*

11   similarly situated—if, as Defendant argues, their factual and procedural differences outweigh their

12   commonality.  But this is a question best reserved for a later stage of litigation.  As with Count

13   Two, Defendant makes no further argument in favor of dismissal of these remaining Section 1983

14   claims.  Accordingly, for the same reasons as Count Two, the Court declines to dismiss Counts

15   Five, Seven, and Eight.

16           2.    Section 1985 Claims

17           Counts Three and Six of the TAC allege that the City of Oakland is liable for conspiracy to

18   violate Plaintiffs' civil rights pursuant to 42 U.S.C. § 1985.  As the Court explained in its Order

19   dismissing the SAC's Section 1985 claims, Section 1985 "is not a stand-alone substantive right";

20   it "creates no independent cause of action and provides remedial relief only after a violation of a

21   specifically defined and designated federal right is first established."  *Bey*, 2015 WL 8752762, at

22   *13 (quotation marks and citation omitted).  The Court thus dismissed the SAC's Section 1985

23   claims because the SAC did not allege facts sufficient to state a plausible claim that Defendant

24   violated any constitutional right of Plaintiffs.  *Id.* (citation omitted).  Defendant argues that the

25   same is true here: that because Plaintiffs "lack a viable 42 U.S.C. § 1983 claim, their section 1985

26   claim cannot stand."  (Dkt. No. 65 at 15.)  But, for the reasons described above, Plaintiffs have

27   stated viable Section 1983 claims.

28           In its Order reviewing the SAC, the Court noted that Plaintiffs' Section 1985 claim also

United States District Court
Northern District of California

27

failed because Plaintiffs did not allege facts sufficient to plausibly establish conspiracy. *Bey*, 2015 WL 8752762, at *13. Specifically, the Court noted that "aside from the broad allegation that OPD had a policy and practice of discriminating against Black Muslims, Plaintiffs' conspiracy claims do not include facts demonstrating that OPD and any individual officers entered any such agreement, what each participant's role was, whether each participant had knowledge of the plan to violate Plaintiffs' rights and how they did so." *Id.* The TAC includes more conspiracy allegations than did the SAC: it describes the names of OPD officers involved, their methods of communications, and general dates of their meetings and calls. (*See, e.g.*, Dkt. No. 60 at 14, 17, 21.) Without deciding whether such allegations are sufficient to state a claim of conspiracy, given Defendant's failure to challenge the conspiracy allegations or offer any argument on this issue, the Court declines to dismiss the Section 1985 claims on this basis. Accordingly, the Court declines to dismiss Plaintiffs' Section 1985 conspiracy claims.

## CONCLUSION

For the reasons described above, the Court GRANTS IN PART Defendant's motion to dismiss. The Court dismisses Counts One and Four. As Plaintiffs have had multiple opportunities to amend their claims, this dismissal is without leave to amend. The Court declines to dismiss the remaining claims. Defendant shall answer Plaintiffs' TAC, solely as to the surviving claims against the sole remaining Defendant, within 14 days. *See* Fed. R. Civ. P. 12(a)(4). The parties shall appear for a case management conference on **May 26, 2016 at 1:30 p.m.** and submit a joint case management conference statement one week in advance of the conference.

This Order disposes of Docket No. 65.

**IT IS SO ORDERED.**

Dated: April 26, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge