CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **ALI SALEEM BEY and JOHN MUHAMMAD BEY,**<br><br>             **Plaintiffs,**<br><br>     **vs.**<br><br>**CITY OF OAKLAND, et al.,**<br><br>             **Defendants** | **Case No.: 14-cv-01626-JSC**<br><br>**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR;MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF  PURSUANT TO ORDERS** *IN ALLEN V. OAKLAND, CASE NO. C00-4599*<br><br>**Hearing Date: March 30, 2018**<br>**Time: 10:00 a.m.**<br>**Courtroom: F**<br>**Place:  15th Floor**<br>**        450 Golden Gate Ave.**<br>**        San Francisco, CA**<br><br>**Judge:  The Hon. Jacqueline S. Corley** |

**Table of Contents**

A. INTRODUCTION ................................................................................................ 1

B. STATEMENT OF FACTS.................................................................................... 3

   OPD Closed Investigation into Attempted Murder on John Bey in 63 Days ............................ 7

   History of Internal Affairs Division (IAD) Complaints and Failure of Investigations................ 8

   Current Status of Lack of Investigation ................................................................. 14

   Evidence of OPD Animus Against Black Muslims ................................................. 19

   Pattern and Practice........................................................................................ 21

COURT-APPOINTED SWANSON REPORT CONCLUSIONS IN THE ABUSLIN FAILURE
TO INVESTIGATE CASE................................................................................... 26

PLAINTIFFS' EFFORTS TO OBTAIN AN INDEPENDENT INVESTIGATOR.................... 28

   PLAINTIFFS ATTENDED CITY MEETINGS ...................................................... 28

     1.   Oakland City Council member Desley Brooks ............................................. 28

     2.   Oakland City Council President Lynette McElhaney ...................................... 30

     3.   Oakland City Council member Rebecca Kaplan............................................ 30

     4.   Oakland City Council President Lynette McElhaney ...................................... 31

   PLAINTIFFS HAD MEETINGS WITH ASSISTANT CHIEF FIGUEROA.......................... 31

   PLAINTIFFS CONSULTED WITH THE CITY ATTORNEY ................................. 32

C. APPLICABLE LAW.......................................................................................... 32

D. CONCLUSION................................................................................................ 34

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT
INVESTIGATOR**        **14-cv-1626- JSC**

**Cases**

*Allen v. City of Oakland* ............................................................... *passim*

*Brown v. Plata* ............................................................................ 33

*Dixon v. Barry* ........................................................................... 33

*Lewis v. Kugler* .......................................................................... 33

*Plata v. Schwarzenegger* ............................................................. 33

*Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.* .................. 33, 34

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                          **14-cv-1626- JSC**

## A. INTRODUCTION

Plaintiffs are moving for the appointment of a **Special Court-Appointed Independent Investigator** because less drastic means have failed to bring the City into compliance with reforms mandated by the Negotiated Settlement Agreement ("NSA")[1] mandating prompt investigation of IAD complaints. The NSA provides: "Fairness to complainants, members/employees and the public requires that internal investigations be completed in a timely fashion.[2] Plaintiffs have been attempting to get a fair and impartial investigation of their IAD Complaints for Eleven (11) years, since 2007, and to date the Defendant City of Oakland has failed to provide the requested investigation. The City has engaged in a pattern and practice of failing to investigate IAD complaints, including Plaintiffs' IAD complaints due to deliberate indifference to the civil rights violations, negligence, and inadequate training of officers to conduct IAD investigations. These failures are creating violations of the NSA mandating, in pertinent part, the following:

> 3. In each complaint investigation, OPD shall consider all relevant evidence, including circumstantial, direct and physical evidence, and make credibility determinations, if feasible. OPD shall make efforts to resolve, by reference to physical evidence, and/or use of follow-up interviews and other objective indicators, inconsistent statements among witnesses.
> 4. OPD shall develop provisions for the permanent retention of all notes, generated and/or received by OPD personnel in the case file.
> 5. OPD shall resolve each allegation in a complaint investigation using the "preponderance of the evidence" standard. Each allegation shall be resolved by making one of the following dispositions: Unfounded, Sustained, Exonerated, Not Sustained, or Administrative Closure…."

---

[1] All Exhibits referred to herein are attached to the Declaration of Plaintiff John Bey.

[2] Plaintiffs Request this Court take Judicial Notice of the NSA, negotiated and order in *Allen v. City of Oakland*, No. 3:00-cv-04599-TEH, specifically to Section III. INTERNAL AFFAIRS DIVISION (IAD) TASK 2 (Section III) B. Timeliness Standards and Compliance with IAD Investigations

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR                                                                14-cv-1626- JSC**

The Department shall use the following criteria for determining the appropriate disposition:

    a. Unfounded: The investigation disclosed sufficient evidence to determine that the alleged conduct did not occur. This finding shall also apply when individuals named in the complaint were not involved in the alleged act.

    b. Sustained: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur and was in violation of law and/or Oakland Police Department rules, regulations, or policies.

    c. Exonerated: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur, but was in accord with law and with all Oakland Police Department rules, regulations, or policies.

    d. Not Sustained: The investigation did not disclose sufficient evidence to determine whether or not the alleged conduct occurred.

    e. Administrative Closure: The investigation indicates a service complaint, not involving an MOR violation, was resolved without conducting an internal investigation; OR

    f. To conclude an internal investigation when it has been determined that the investigation cannot proceed to a normal investigative conclusion due to circumstances to include but not limited to the following:

        1) Complainant wishes to withdraw the complaint and the IAD Commander has determined there is no further reason to continue the investigation and to ensure Departmental policy and procedure has been followed;

        2) Complaint lacks specificity and complainant refuses or is unable to provide further clarification necessary to investigate the complaint;

        3) Subject not employed by OPD at the time of the incident; or

        4) If the subject is no longer employed by OPD, the IAD Commander shall determine whether an internal investigation shall be conducted.

        5) Complainant fails to articulate an act or failure to act, that, if true, would be an MOR violation; or

        6) Complaints limited to California Vehicle Code citations and resulting tows, where there is no allegation of misconduct, shall be referred to the appropriate competent authorities (i.e. Traffic Court and Tow Hearing Officer).

    g. Administrative Closures shall be approved by the IAD Commander and entered in the IAD Complaint Database. TASK 5 E. Complaint Procedures for IAD. (Exhibit 15)

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**        **14-cv-1626- JSC**

Defendant City honored the request for an independent special investigation for the mostly European-American protestors in the "Occupy Oakland" complaints,[3] but has repeatedly denied the multiple requests by Plaintiffs, "businessmen, family men and community leaders in the Oakland Black and Muslim community." (Dkt. No. 60 at 3.) This Court, in its Order dated April 26, 2016 found:

> **"...Plaintiffs have sufficiently alleged that the Occupy Oakland internal affairs complainants were similarly situated to Plaintiffs but that OPD nonetheless unconstitutionally treated Plaintiffs' complaints differently."**
> (Exhibit 3 Court Order dated April 26, 2016)

After appealing to the entire managing government agencies for Defendant City, including the OPD, the City of Attorney, the City Council, and the Mayor of Oakland in a desperate efforts to get and independent investigation of their IAD complaints, and the underlying crimes involving the murder of  Waajid Bey—a close associate of Plaintiffs and fellow member of the Black Muslim community—and the attempted murder on Plaintiff John M. Bey, Plaintiffs as a last resort appeal to this Court for the appointment of a Special Independent Investigator, invoking the equitable power to this Court because money damages are inadequate as a remedy.

## B. STATEMENT OF FACTS

It was just before daybreak at approximately 6:30 in the morning on this summer day, June 17, 2005. John had just finished tying his black tie around the collar of his white shirt and was about to head off to work as the Assistant Director of Security at the Marriott Hotel in Downtown Oakland. John kissed his wife Cindy goodbye and walked quietly out the door,

---

[3] See Defendant City Of Oakland's Request For Judicial Notice In Support Of Motion To Dismiss Third Amended Complaint Pursuant To Fed. R. Civ. P. 12(B)(6), )Dkt 66-67, Exhibits A-D

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR                                         14-cv-1626- JSC**

mindful not to awaken their three young daughters, Akayla 12, Atiah 6, and Kiarah 3, and his mother and cousin, all of whom were still fast asleep.

John walked to his car. It was still a little dark at this time of the morning. John's house was backed up against a ravine, so there was an open space and a lot of trees in that area of Montclair. As John was walking, he recalled that the night before he squeezed his car into a tight space because there wasn't a lot of parking on the street. Usually he liked to leave space in case he needed to get out of a parking space quickly as a safety and security measure, based on the recent murder of close friend and fellow businessman, Waajid Bey.

John opened the driver's door of his Charcoal Grey Jeep Cherokee, sat down behind the wheel, and placed his cell phone and other items into the center console as part of his routine. He inserted the key into the ignition, when simultaneously he heard a "pop". He thought he had experienced an electric shock from the ignition. Then he saw a small explosion of the padding in his driver's door with a "Whoosh" sound followed by feeling a sting in his leg, but did not realize he had been shot. (Exhibit 11 John Bey Crime Scene Photos).

John thought the sound was strange, and that it sounded like a gunshot. He looked across the ravine to see if anyone was there, shooting. He didn't see anybody. Then, in short succession, he heard another shot, shattering his driver side window but the window didn't break apart, it shattered as if it had been hit with a hammer. And then he heard a third shot. This time the glass broke, shattering completely.  John quickly ducked, pushed the door open, jumped out of the car and ran away from where the shots were now coming fast and furious.

As John was running away from his house, he looked back when he was about 20 yards away from the house and saw several young men, now standing in the street. They started to run toward him. John took off running again. There were three or four young guys; John clearly saw

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                        **14-cv-1626- JSC**

three. Even though it was twilight, he saw that they were wearing stocking masks. They looked kind of skinny, young, one a little short, another a little tall; just kind of an assortment.  John heard a car, looked behind him again and saw the deep green Nissan Pathfinder he had run past before going down the hill and the car was gaining on him. John still hadn't realized he had been shot. He yelled for the neighbors, "Wake up, they're shooting!!"

At this point John began to think more clearly. He realized and said to himself: "These are people I know. They are in their late teens to twenties. They fit the age group of the young hoodlums that are jealous of us and were embroiled in a pretty serious conflict at Your Black Muslim Bakery." John also flashed on the thought: "They already did this to one guy. They already did this to Waajid. They've been angry since Saleem and I called them out on their involvement in Waajid's murder. I know this group has killed Waajid, and I now understand that they are stupid enough to kill me, too. I've been dealing with Andre from OPD and the FBI, so if I survive this, they will know exactly who was involved and we can get them removed from the bakery and the family can move back in."

All these thoughts were running through his mind as he arrived at the fork in the road at Westwood Way and Indian Way. In a split second John knew to turn run to his right because if he had gone to the left down Aspinwall Street, it's a longer street to run, and it is downhill. He realized quickly: "They will catch me in no time." Taking the right turn put him back into the woods where he would be able to double back around the houses or go down to the next block, which is Woodhaven. John knew they couldn't figure out how he could have gotten so far away.

John knew that if he could get to the woods he would be safe. At that point John started to feel a difference in his leg, finally realizing that he had been shot. He fell to the ground, scraping his left elbow and knee. Scrambling to stand up and fearing they would see him and

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                     **14-cv-1626- JSC**

shot him, he jumped into some blackberry bushes to hide. His belt got caught on some kind of hook in the fence. Feeling the sting from the thorns on the blackberry bushes, his heart was pounding as he struggled to get free, with mounting anxiety that the shooters are gaining on him.

He rolled over in the blackberry bushes, getting stickers all over his body, but he finally got his belt free from the fence. John started ducking and looking back to see if the vehicle was close. He didn't immediately see it. An old white man came into his backyard and asks John if he could help. John told him to just get away, go inside his house and call the police. "That will help me more", John told him. John started banging on the window of the house next door while crouching behind the house and ducking in the bushes. He saw an old white lady inside her house through her glass pane door and yelled for her call the police. John knew he scared her a great deal because he was bloody and look frantic, aside from the fact that he was in her yard. John was lying low, looking to see where his attackers were; and then looking to see if they had followed his to the yard where he was hiding, in case he had to run to the next street, Woodhaven Way.

John kept yelling at the old white lady to "call the police", assuring her that he did not want to break into her house. She disappeared within the house but must have called because shortly thereafter police and ambulance arrived. They administered initial care and transported John to Highland Hospital.

At the hospital, John gave all the details of the incident to the officers, including the names of those he thought were responsible, including those he suspected were involved in the killing of Waajid Bey. John again asked OPD for protection for him and his family.

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                        **14-cv-1626- JSC**

### OPD Closed Investigation into Attempted Murder on John Bey in 63 Days

On August 19, 2005, 63 days after the attempted murder, and unbeknownst to John or Co-Plaintiff Mr. Saleem Bey, OPD Criminal Investigation Division ("CID") closed the investigation of the attempted murder on John and closed his case file. John did not learn that OPD had closed the investigation of the attempted murder on him until 2011 when he filed for in a request for records pursuant to The Freedom of Information Act ("FOIA"). However, OPD falsely continued to represent to John and Saleem that John's case was still being investigated all the way through the completion of the State DOJ investigation in 2009. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED (Exhibit 12 BEY 004504)

At the scene of the attempted murder of John on June 17, 2005, a September 5, 2016 OPD internal "Record Trac Request #17204" states under Response: **"The evidence from the crime scene was determined to be the following caliber: 38 caliber class bullets, 30 Carbine caliber casings and 12 guage shot shell"**.  The suspects left the scene in a dark colored newer Nissan Pathfinder with paper plates. [ Emphasis Added] **(Exhibit 24  BEY 000303)**

REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED [Emphasis Added] [Exhibit 12 BEY 004419] REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                        **14-cv-1626- JSC**

1   REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

2   REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

3   REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

4   REDACTED         REDACTED         REDACTED         [ Emphasis Added] (Exhibit 12 BEY

5   004513)

6

7   REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

8   REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

9   REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

10  REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

11  REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

12  REDACTED

13

14  REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

15  REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

16  REDACTED         REDACTED         (Exhibit 12 BEY 004504)     REDACTED

17  REDACTED         REDACTED         REDACTED         REDACTED         REDACTED

18  REDACTED         REDACTED         ”.  [Exhibit 12 BEY 004419]

19

20  **History of Internal Affairs Division (IAD) Complaints and Failure of Investigations**

21  On July13, 2007, Plaintiff Saleem Bey filed         REDACTED

22  REDACTED         REDACTED         REDACTED         REDACTED

23  REDACTED         REDACTED         (Exhibit 4 BEY 004482)

24

25  REDACTED         REDACTED         REDACTED         REDACTED

26  REDACTED         REDACTED         REDACTED         REDACTED

27  REDACTED         REDACTED         REDACTED         REDACTED

28

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                    **14-cv-1626- JSC**

REDACTED   (Exhibit 13 BEY 003278-3293)   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

-Exhibit 13 BEY 003284)

REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

REDACTED   REDACTED   REDACTED REDACTED   REDACTED   REDACTED   REDACTED REDACTED   REDACTED REDACTED   REDACTED REDA

REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

REDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTEDREDACTED

(Exhibit 13 BEY 003284).

Defendant's production of Discovery in 2017 also reveals that OPD Crutchfield and OPD Longmire recorded John name and the name of Ali Saleem Bey in various documents pertaining to the Bailey murder, but failed to investigate the attempted murder on John from August 18, 2005 until today. This is evidence of the pattern and practice to treat Plaintiffs differently. Plaintiffs' case was not included in the 2009 DOJ investigation as evidenced by the March 18, 2014 admission by the OPD: "…The complainants alleged that there was a systematic failure on the part of the Oakland Police Department during the investigation of the murder of Waajid Bey and the attempted murder of John Bey as it relates to the follow-up criminal investigation. The investigation disclosed sufficient evidence to determine that the alleged conduct did occur. A finding of 'Sustained' has been determined." (Exhibit 2)

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                    **14-cv-1626- JSC**

1   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

2   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

3   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

4   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

5   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

6   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

7

8   REDACTED          [Emphasis Added] (Exhibit 12 BEY 004416)    REDACTED

9   REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

10  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

11  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

12  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

13  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

14  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

15  REDACTED          REDACTED

16  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

17  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

18

19  REDACTED          REDACTED          REDACTED          REDACTED          REDACTED

20  REDACTED          . [Emphasis Added] OPD'S finding of a Manuel of Rules

21  violation 314.39-2 should have been SUSTAINED in our first IAD complaint 07-0538 because

22  none of the facts changed since our initial complaint.   (Exhibit 12 BEY 004420)

23  REDACTED          REDACTED          REDACTED          REDACTED

24  REDACTED          REDACTED          REDACTED          REDACTED

25  REDACTED          REDACTED          REDACTED          REDACTED

26  REDACTED          REDACTED          REDACTED          REDACTED

27  REDACTED          REDACTED          REDACTED          REDACTED

28

10

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                    **14-cv-1626- JSC**

REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED

Plaintiffs' case remained uninvestigated after IAD Figueroa closed the 2011 complaint. (Exhibit 5 BEY 004462, 004463)

On July 22, 2013, Plaintiffs spoke with Richard Cashdollar, assistant to Compliance Director Thomas Frazier, and lodged a verbal complaint against OPD for not investigating the crimes against John and Waajid Bey and for refusing to investigate REDACTED

REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        (Exhibit 12 BEY 004430)   REDACTED

REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED

(Exhibit 5 BEY 004462,004463) On April 3, 2015 Assistant Chief Figueroa admitted in a meeting with Plaintiffs that OPD Ersie Joyner should have been found sustained for IAD No. 13-1062. (Audio Recording of AC Figueroa, Exhibit 14)

During the investigation of IAD 13-1062, Plaintiffs met with the assigned OPD IAD investigator Sgt. William Griffin, REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED        REDACTED

REDACTED        REDACTED        REDACTED        REDACTED        REDACTED   (Exhibit 12 BEY 004418)

11

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     (Exhibit 12 BEY 004418)

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     (Exhibit 12 BEY

004422)     REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     (Exhibit 12 BEY 004439) Shortly thereafter, Plaintiffs followed up with OPD Griffin and

stopped by the on 16th Street IAD headquarters in an attempt to ascertain the progress. Griffin,

as he had in our first face to face meeting, instructed Plaintiffs to meet with him outside the IAD

offices on the street. In meetings with OPD Officer Nguyen and also with IAD Capt.

Cunningham, Plaintiffs met inside the building. By the outside meeting we presumed Griffin did

not feel comfortable meeting inside the building where other officers could hear or where there

was the potential for being recorded. Plaintiffs sat on a bench outside and approximately 50 feet

away from the offices and he began to explain the difficulty of the case due to the amount of

records, etc. He did state that there was evidence of "gun walking," the law enforcement practice

of not arresting violent criminals with guns so that they could track the carnage violent criminals

perpetrate on their communities. The policy had lost favor because of the innocent people

murdered by known violent murderers in their communities. The reference to "gun walking" in

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                    **14-cv-1626- JSC**

Plaintiffs' case was the weapon or weapons used in the attempted murder, Waajid's murder, Cameron Cooks car being shot, a car-jacking while making terrorist threats, the vandalism of two liquor stores, and the murder of Chauncey Bailey and the numerous weapons confiscated in the August 3, 2007 pre-dawn raid on YBMB.

On March 18, 2014, Plaintiffs were called to meet with Deputy Chief ("DC") Danielle Outlaw and IAD Captain Oliver Cunningham at the IAD offices in the Oakland Police Department. During this meeting, REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   (Exhibit 12 BEY 004420)

Plaintiffs immediately relayed to Captain Cunningham and DC Outlaw that recently, on November 12, 2013, Plaintiffs had met with Ex-OPD Bruce Brock at the Alameda County District Attorney's office located at 1225 Fallon Street in Oakland regarding the investigative files of the attempted murder. REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   Both DC Outlaw and Captain Cunningham expressed surprise upon hearing this information. (Exhibit 12 BEY 004439)

During the March 18, 2014 meeting, Captain Cunningham and DC Outlaw gave Plaintiffs a letter, (EXHIBIT 2) indicating that OPD had completed its investigation into the 2013 Internal Affairs Complaint and had made the following investigative findings on our allegations:

"Performance of Duty - The complainants alleged that there was a systematic failure on the part of the Oakland Police Department during the investigation of the murder of Waajid Bey and the attempted murder of John Bey as it relates to the follow- up criminal investigation. The investigation disclosed sufficient evidence to determine that the alleged conduct did occur. A finding of 'Sustained' has been determined. This

finding is applied to the Oakland Police Department as the individual Subject Officers and their immediate supervisor are no longer employed by the O.P.D. "(Exhibit 2)

Plaintiffs know based on personal knowledge that the supervisors against whom they filed complaints were still employed at the time of the March 18, 2014 meeting and letter closing their 13-1062 IAD Complaint. Those supervisors are as follows: Chief of Police Sean Whent, Deputy Chief David Downing, Captain Ersie Joyner, and Sgt. Derwin Longmire.

### Current Status of Lack of Investigation

Defendant City has self-identified many deficiencies pertaining to the lack of investigation of Plaintiffs case, including OPD'S admission that "A finding of 'Sustained' has been determined" in the incomplete and none-investigation of Plaintiffs' IAD No. 13-1062. Instead of Defendant leadership, including the Mayor, City Administrator, City Attorney, Chief of Police, Council members, acting on these admittedly known deficiencies, Plaintiffs have received continuous lack of action and deliberate indifference to our ongoing admittedly valid complaints.

The current City of Oakland Police Chief Anne Kirkpatrick and City Attorney Ms. Bliss [Attorney of record Bey v Oakland] are quoted as telling Judge Henderson, "The City of Oakland is committed to investigating the identified failures in the Swanson Report." Defendant Quotes Reported July 12th, 2017 San Jose Mercury News:

"Kim Bliss of the Oakland City Attorney's Office told Henderson on Monday that the city is committed to investigating the identified failures. Police Chief Anne Kirkpatrick, who joined the department in January 2017, echoed that commitment at the hearing. "I appreciate that Mr. Swanson and Ms. Barron did say that all of these failings are repairable," the chief said. "I am not only committed to repairing the errors of the sex scandal but I am committed to compliance and most importantly I'm committed to a sustainable future."

In violation of the Order in *Allen v. Oakland,* Case NO. C00-4599, the Negotiated Settlement Agreement ("NSA") Federal Consent Decree, OPD lost the files of the underlying

14

criminal investigations of the murder of Waajid Bey and the attempted murder on John, and failed to investigate these serious crimes. This Court stated in *Allen v Oakland* PATTERN AND PRATICE ORDER, page 10. Task 4: **"OPD shall develop provisions for the permanent retention of all notes, generated and/or received by OPD personnel in the case file."** (Exhibit 15 pg 10)[Emphasis added]

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED
REDACTED   REDACTED   REDACTED   REDACTED   REDACTED
REDACTED   REDACTED   REDACTED   REDACTED   REDACTED
REDACTED   REDACTED   REDACTED   REDACTED   REDACTED
REDACTED   REDACTED   REDACTED   REDACTED   REDACTED
REDACTED   REDACTED   REDACTED   REDACTED   (Exhibit 12
BEY 004420)

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   (Exhibit 12 BEY 004439)

On January 20, 2015, OPD Cunningham admitted to the Oakland City Council Members, regarding Plaintiffs complain of a lack of investigation that "…THE SYSTEMIC FAILURE THAT WAS MENTIONED BY ONE TO HAVE BAY BROTHERS WAS THERE WAS NO PROCESS IN PLACE…" OPD had located the missing investigation files, which were in the possession of Ex OPD Brock. OPD Captain Cunningham publicly testified on January 20, 2015 as follows:

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**          **14-cv-1626- JSC**

22:57:11

GENERALLY SPEAKING WITHOUT
GETTING INTO THE DETAILS OF
THEIR ACTUAL CASE, THE SYSTEMIC
FAILURE THAT WAS MENTIONED BY
ONE TO HAVE BAY BROTHERS WAS
THERE WAS NO PROCESS IN PLACE,
NO TRACKING SYSTEM IN PLACE TO
ENSURE THAT WHEN A PARTICULAR
INVESTIGATOR WHO WAS ASSIGNED A
CASE AT THE TIME, WHEN THEY'RE
DONE WITH THAT CASE, IT GOES ON
FILE INTO OUR STORAGE FACILITY,
AND IN THIS PARTICULAR CASE,
WHAT WE FOUND IN MORE THAN ONE
INSTANCE, I WOULD NOT SAY
NUMEROUS, BUT IN MORE THAN ONE
INSTANCE WHERE WE HAD RETIRED
INVESTIGATORS, VERY GOOD
INVESTIGATORS THAT WERE
PASSIONATE ABOUT THEIR
PARTICULAR CASE AND WHEN THEY
WENT TO THE DISTRICT ATTORNEY'S
OFFICE TO BECOME INSPECTORS AND
WHICH INVESTIGATORS AND
DISTRICT ATTORNEY INSPECTORS
WORK HAND IN HAND ON OUR CASES,
HE CARRIED THE CASES WITH THEM
OVER THE DISTRICT ATTORNEY'S
OFFICE TO CONTINUE WORKING
ON IT.  (Exhibit Video 14.4)

OPD Cunningham's statement to the Oakland City council that "… WE HAD …VERY

GOOD INVESTIGATORS THAT WERE PASSIONATE ABOUT THEIR PARTICULAR

CASE…." is contradicted by the facts proving that REDACTED      REDACTED

REDACTED      REDACTED      REDACTED      REDACTED

REDACTED      In OPD Longmire's DOJ testimony, Sgt. Longmire stated REDACTED

REDACTED      REDACTED      REDACTED      REDACTED

REDACTED      REDACTED      REDACTED      REDACTED

16

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT
INVESTIGATOR**                                                      **14-cv-1626- JSC**

REDACTED        REDACTED        REDACTED        REDACTED

REDACTED                . (Exhibit 16 BEY 003140)[Emphasis added]

On February 6, 2015, Plaintiffs met with AC Figueroa and Sgt. Holly Joshi regarding the incomplete investigation of Plaintiffs' IAD Complaint 13-1062. OPD Joshi made the statement that the March 18, 2014 Resolution Letter was incomplete. Figueroa told Plaintiffs that the letter was incorrect and he requested two months additional time in order to release a corrected letter. Plaintiffs agreed to the request for additional time.

About a week before the two month deadline, Figueroa told John in a telephone call that he would not have the letter, but did agree to meet with Plaintiffs. On April 3, 2015, Plaintiffs met with AC Figueroa and Lt. Roland Holmgren at the OPD Executive Offices. Lt. Holmgren agreed that an independent investigation of all the underlying cases was the best course of action. AC Figueroa revealed that in any subsequent letter, Capt. Ersie Joyner deserved to be named as being sustained in IAD No. 13-1062, but that he was still investigating who all the involved parties were. (Exhibit Audio 14.1, 14.2)

During the April 28, 2015 Public Safety Meeting before the Oakland City Council, Chief Figueroa admitted that the IAD13-1062 investigation is incomplete:

**23:20:46**

I'VE BEEN MEETING WITH THE BAYS
AND WE ARE INVESTIGATING THE
CASES THAT THEY HAVE TALKED
ABOUT.
THERE'S NO QUESTION THAT AS
THIS WERE NOTIFIED IF AND THE
LETTER TOLD THEM THAT THERE
WERE SOME SIGNIFICANT FAILURES
WITHIN THE DEPARTMENT THAT WERE
DISCOVERED IN THE INVESTIGATION
AND THEY RECEIVED A LETTER ON.
WE ARE LOOKING AT THE CASE AND

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                    **14-cv-1626- JSC**

I HAVE GIVEN THEM ONE LETTER
ALREADY STATING THAT WE WOULD
AS A DEPARTMENT MAKE ANY AND
ALL FILES AVAILABLE TO ANY
JURISDICTION WHO'S AUTHORIZED
TO DO AN INVESTIGATION AND I
HAVE GIVEN HIM THAT LETTER.
* * * * *
**23:21:41**
… I TOTALLY
UNDERSTAND THEIR REASON FOR
WANTING AN OUTSIDE
INVESTIGATION, I TOTALLY GET IT
AND I AM NOT AT A POINT WHERE I
AM CALLING FOR AN INDEPENDENT
INVESTIGATION.
WE ARE STILL LOOKING AT THE
CASE AS IT STANDS RIGHT NOW.
I COMPLETELY UNDERSTAND WHAT
THEIR CONCERNS ARE AS I'VE
EXPRESSED THAT AND WE'LL MAKE
OURSELVES AND ANY AND ALL
INFORMATION WE HAVE ON THE CASE
AVAILABLE TO ANY IDENTIFIED
GROUP THAT MAY OR MAY NOT DO AN
OUTSIDE INVESTIGATION.
I AM NOT COMFORTABLE ISSUING AN
ADDITIONAL LETTER UNTIL WE'VE
GONE THROUGH ALL THE EVIDENCE
IN THE CASE TO MAKE SURE
WE'VE COVERED EVERYTHING
BECAUSE I DON'T WANT TO COME
BACK AND GIVE THEM ANOTHER
LETTER, I HAVE BEEN MEETING WITH
THEM TO GIVE THEM UPDATES.
THEY'VE CALLED ME AND I'M HAPPY
TO CONTINUE TO MEET TO GIVE YOU
THE PROGRESS, I'M NOT AT A
POINT TO ISSUE A FINAL LETTER
SAYING THIS IS WHAT WE FOUND
AND MOVING FORWARD. (Exhibit 14.5:Video 4/ 28/15).

OPD has not contacted Plaintiffs in over two years, nor conducted any further

investigation to date of IAD no. 13-1062, contrary to Chief Figueroa's above public testimony.

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT
INVESTIGATOR**                                                                 **14-cv-1626- JSC**

This is video evidence of "Untruthfulness", a Class 1 MOR [Manual Of Rules] violation. (Exhibit 14.5:Video 4/ 28/15).

The OPD's Responses to Discovery Request reveal, that REDACTED , REDACTED REDACTED REDACTED REDACTED without investigation and without notifying Plaintiffs of his responsibility to investigate as per the *ALLEN* ORDER. (Exhibit 5 BEY 004463)

### Evidence of OPD Animus Against Black Muslims

The repeated failure from 2005  to present—13 years--to investigate Plaintiffs' cases is evidence of the continued OPD animus against Plaintiffs as Black Muslims. OPD animus against Black Muslims surfaced during the investigation of the murder of Chauncey Bailey.  Following the murder of Chauncey Bailey on August 2, 2007, and at the request of then Mayor Dellums' office, the State of California Department of Justice ("DOJ") initiated an investigation into OPD___ Grant's complaint against Sergeant Derwin Longmire in reference to the handling of the Chauncey Bailey homicide investigation. The DOJ investigation also focused on Longmire's relationship with Yusuf Bey 4th, and allegations that Longmire compromised criminal cases. The DOJ investigation reports states: REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED (Exhibit 1 Bey 004569)

A review of the records of the DOJ investigation, produced during the 2017 Defendant's Discovery Responses, shows the entire scope of the nine (9) day DOJ investigation of OPD Longmire consisted of  requesting documents from OPD and interviewing numerous OPD employees. The City's 2017 Discovery responses revealed that neither the attempted murder case, nor IAD complaint no. 07-0538 were included in the DOJ investigation. The absence of any reference of investigation Plaintiffs' case in the State DOJ investigation report is

19

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR** 14-cv-1626- JSC

corroborated by the fact Plaintiffs case remained in a concealed MOR 314.39-2 violation status from the date of closure on August 19, 2005 until to date.

In 2011 for the first time Plaintiffs discovered that the investigation of the attempted murder had been closed after 63 days. Even though as early as 2007, Plaintiffs requested documents pertaining to the investigation of Johns' case, Plaintiffs didn't receive the crime scene photos until September 2016. ( Exhibit 11)

During a DOJ interview with Ersie Joyner, Derwin Longmire's Criminal Intelligence Division ("CID") supervisor, Joyner expressed concern about repercussions of Longmire's perceived membership in the protected class of Black Muslim. REDACTED

REDACTED     REDACTED     REDACTED

REDA     REDACTED     REDACTED     REDACTED     R
CTED     REDACTED     REDACTED   EDACTED     E
REDAC     D
TED REDACTED     REDACTED     REDACTED     REDACTED     A
C.

REDACTED     (Exhibit 1 BEY 004590). Plaintiffs would have had access to this evidence of Defendant OPD implicit Muslim bias as early as April 2009, but the Defendant refused to release the DOJ report until forced to by litigation in October 2011 to partially release said report, a month after Plaintiffs filed 2011 CPRB and IAD complaints.

REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     y (Exhibit 17 BEY002890: Pg.90 L20-22)     REDACTED

REDACTED     REDACTED     REDACTED     REDACTED

REDACTED     This official policy of different treatment by OPD has consistently been a pattern and practice of deliberate indifference, violating Plaintiffs' rights to equal treatment.

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                **14-cv-1626- JSC**

Longmire corroborated his supervisor OPD Ersie Joyner's testimony, during the deposition taken as part of Sgt. Longmire's lawsuit. Longmire testified in detail about the OPD leadership's accepted open animus against Black Muslims that he witnessed and participated in, naming individual officers by name who participated in said bias. According to Longmire's testimony: Sgt Tim Nolan "Hates the fact these guys are in existence," (EXHIBIT 18 Page 126 L15).

### **Pattern and Practice**

Plaintiffs here, as in the *Allen* Case--also known as the "Riders cases-- make the same allegations of OPD's "Pattern and Practice" of carefully thought out, intentional and deliberate indifference to civil rights violations of citizens. "In the Riders cases, plaintiffs have alleged that the Oakland Police Department was deliberately indifferent to, or otherwise ratified or encouraged, an ongoing practice of misconduct by defendant officers to violate the plaintiffs' civil rights. Plaintiffs further allege that the Oakland Police Department indifferent to and/or was negligent in its hiring, training, supervision, and discipline of its police officers, and that such indifference caused the alleged violations of the plaintiffs' constitutional rights. All claims are hereinafter referred to as "pattern and practice" claims." (Exhibit 15)

In the "Occupy Case", the Court's May 1, 2012 Order (Exhibit 19 BEY 000128) is directly relevant to Plaintiffs' case in reflecting a pattern and practice, custom and policy of deliberate indifference and failure to investigate certain cases. In the Occupy Order, the Court stated:

> "This is far from the first time the Court has expressed concern with the manner in which Defendants have handled – or failed to handle, as the case has been – the investigation of complaints. Seven years ago, the Court was forced to order Defendants to address 775 citizen contacts entered into the Internal Affairs Division ("IAD") database that the former Independent Monitoring Team discovered had not been assigned IAD case numbers. Several months later, it came to light that

21

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                              **14-cv-1626- JSC**

Defendants had placed numerous complaints, including 26 cases of allegations of Class I misconduct – the most serious level – in a so-called "tickler file," a correspondence file where the complaints languished without investigation either as a result of incompetence or bad faith. [Emphasis Added]

"The Monitor has informed the Court that multiple City officials have themselves expressed the view that the Department lacks capacity to complete all of the outstanding investigations without outside assistance". "It appears that timely action on this extremely critical issue will not be taken without further intervention by this Court." (Exhibit 18 BEY 000129 L16-17)

"The report reached some very troubling conclusions about how Defendant mishandled these allegations and did not aggressively pursue an inquiry into what went wrong". (Exhibit 21)

OPD GENERAL ORDER M19: prohibits OPD from considering an individual's religion when making decisions. Plaintiffs have presented multiple instances of OPD referencing "Muslim" when making decisions regarding Plaintiffs and our Black Muslim community.

AC Figueroa, April 28, 2015 RACIAL and RELIGIOUS REPORT - OPD M.O.R. RELIGIOUS PROHIBITION

THE OAKLAND POLICE DEPARTMENT
22:35:57
DOES NOT REQUEST OR COLLECT
22:35:59
INFORMATION ON RELIGION, EVEN
22:36:00
IN SITUATIONS WHERE A MEMBER OF
22:36:02
OPD IS AWARE OF ONE'S RELIGION,
22:36:10
THE GENERAL ORDER
22:36:12
PROHIBITS CONSIDERATION OF THIS
22:36:13
INFORMATION IN MAKING DECISIONS
22:36:15
ABOUT INTERACTING WITH AN
22:36:16
INDIVIDUAL.
(Exhibit Video 14.5 4 28 15 Public Safety Committee Meeting)

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                      **14-cv-1626- JSC**

In September 2016, more than 11 years after the fact, OPD finally released the June 17, 2005 Crime Scene Photos of the murder attempt on Plaintiff John Bey. In 2016 Plaintiffs discovered how egregious the scale of the shooting was in pictures; how close to John's children the perpetrators were on his property; how many OPD supervisors, officers, and technicians were involved in the on the scene investigation; and the fact that John's case was secretly closed in 63 days [Plaintiffs found out 6 years later in 2011]. The concealment of John's case files resulted in deliberate indifference failure to investigate John's case to this date. This concealed from Plaintiffs evidence makes the   "one page" closure of 2007 IAD07-0538 or the 2011 closure of Plaintiffs' IAD complaint, without investigation, even more egregious. The crime scene photos show how much of a danger the people who committed such violence posed, not just to Plaintiffs, but also to their families and the entire their religious community. At the same time OPD was failing to investigate the attempted murder on John and Plaintiffs 2007 IAD07-0538 complaints, OPD Chief Tucker was approving OPD Longmire's "special treatment" relationship with Antar and Yusuf 4, lead suspects in the attempted murder and murder cases, and persons who directly benefited from said failed OPD investigation. This "special treatment" was known by OPD and allowed for these thugs to stay free on multiple concurrent bails, free to roam the streets of the community with continued OPD "gun walked" access to the weapons used in the attempt on John's life. These OPD depraved actions put Plaintiffs lives and the lives of their families in danger.  The evidence adduced shows factually the collateral gun murders of Odell Roberson, Michael Wills, and Chauncey Bailey. Bailey was investigating IAD No. 07-0538, OPD's relationship to Yusuf Bey 4's uninterrupted crime spree and the fraudulent YBMB bankruptcy based upon source, Plaintiff Saleem Bey, giving Bailey evidence obtained in Plaintiffs' own investigation.

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                    **14-cv-1626- JSC**

Defendant City's 2017 Discovery responses established that John's case was not investigated by the State DOJ and has never been investigated by OPD. OPD chain of command showed complete deliberate indifference to the magnitude of illegal weapon gun violence depicted in the crime scene photos. It also shows how egregious it really was of OPD in 2007 to ignore the violence in John's case, and then concealing ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ (Exhibit 4 BEY 004482) ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~, and many OPD divisions, including Chief Tucker. It took a massive amount of Oakland Police Department-wide collusion to keep Plaintiffs' cases—attempted murder and IAD complaints--and other directly related case evidence from the State DOJ investigators during OPD Longmire's failed Bailey murder investigation, particularly since Plaintiffs were the focus of the Bailey article as the business men who were being forcibly removed from the leadership of the Black Muslim business enterprises.

OPD Longmire's sworn DOJ testimony: ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~RED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~

~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ ~~REDACTED~~ This indifference resulted in the immediate loss of hundreds of Oakland Black jobs and businesses. This indifference resulted in economic terrorism on the formerly addicted and incarcerated persons

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                **14-cv-1626- JSC**

who could only get employment from the Bakery, devastating that community. (Exhibit 16 BEY 003140 L14-19)

The City's 2017 Discovery responses reveals that at the same time OPD Sgt. Derwin Longmire was being investigated for providing "special treatment" to Yusuf Bey 4, OPD chain of command ignored that fellow CID officer OPD Bruce Brock was deliberately failing to investigate Waajid's case. Defendant City of Oakland Mayor Quan, City Administrator(s) Deanna Santana, and City Attorney should have known, since accepting and concealing the complete 2009 DOJ report, that OPD Bruce Brock, who criminally removed City property [OPD case files], purposely failed to investigate Waajid Bey's murder case per sworn DOJ testimony of OPD Sgt. Derwin Longmire.

Plaintiffs case is victim to the ongoing pattern and practice of failing to investigate citizens' complaints or the report of crimes based on discriminatory animus. Recently, this Court in *Allen* Received a "Court-Appointed Investigator's Report on the City of Oakland's Response to Allegations of Officers Sexual Misconduct involving Jasmine Abuslin[4]. "On March 23, 2016, the Court in issued an order stating:

> "This case raises most serious concerns that may well impact Defendants' ability to demonstrate their commitment to accountability and sustainability – both of which are key to ending court oversight.  Accordingly, the Court directs the Compliance Director to use his authority to ensure that this case and any related matters are properly and timely investigated, and that all appropriate follow-up actions are taken." (Exhibit 22)

This is further corroboration of defendant's need for external oversight. The Negotiated Settlement Agreement ("NSA") was again violated as established during

---

[4]  Plaintiffs' attorneys in this matter are also co-counsel of record for Ms. Abuslin

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                    **14-cv-1626- JSC**

Court-Appointed investigation of allegations of sexual misconduct of sex with a minor by OPD.

### COURT-APPOINTED SWANSON REPORT CONCLUSIONS IN THE ABUSLIN FAILURE TO INVESTIGATE CASE

"Our first conclusion is that OPD's investigation into these allegations was wholly inadequate. The investigation went off track as soon as it started. CID closed its investigation almost immediately, and it should not have. CID had substantial evidence and important leads in its possession when it closed its case." (Exhibit 20:24)

"Despite evidence suggesting that other officers had inappropriate sexual contact with Ms. Abuslin, including the serious possibility that the sexual contact occurred when she had been a minor, ***CID closed its investigation within a week of opening it.*** "(Exhibit 20:10)[Emphasis added]

"In November 2015, the City Attorney herself raised concerns with Chief Whent that the alleged officer sexual misconduct regarding Ms. Abuslin might be part of a larger culture of tolerance for sexual misconduct within the Department.  Chief Whent disagreed and suggested the larger problem had to do with drinking and rookie recruitment.  Despite having this conversation with the City Attorney, Chief Whent still did not inform the Mayor, the City Administrator, or the Monitor of the sexual misconduct allegations."

**"We find that CID and IAD did not investigate more thoroughly in part because of an *implicit but evident bias against the victim*, based on the type of victim she was….".** (Exhibit 20:27)

"Put simply, CID and IAD wrote off this victim. This is perhaps not an isolated occurrence, since witnesses from within and outside the Department described a hierarchy of victimhood that led some in OPD to prioritize cases involving "good" victims over victims with more complex histories." (Exhibit 20:27.)

"While there are many in CID and IAD who share responsibility for the failures of the investigation that occurred prior to the Court's intervention, the ultimate responsibility lies with Chief Whent. It was his responsibility to set the expectation that both IAD and CID were to investigate the allegations thoroughly, regardless of the victim's background or reluctance to cooperate." (Exhibit 20:28.)

"We have been unable to conclusively determine why the Chief took such a different approach to this case than he had to others that appeared much less serious, although there was evidence pointing to possible reasons. Regardless of his motives, Chief Whent set a tone that this investigation was not a priority. Others in CID and IAD leadership did nothing to correct this message for their subordinates, and this resulted in wholly inadequate investigations conducted by both CID and IAD.  The inadequacy of the investigations prior to the Court's intervention raises issues concerning OPD's compliance with the NSA. It calls into question the Department's

ability to comply with the NSA's requirements that officer misconduct be adequately disciplined and that allegations of misconduct be timely reported to the DA's Office. The fact that Court intervention was required to ensure OPD conducted a thorough investigation and to alert the DA to the allegations also casts doubt on whether OPD's reforms are sustainable in the absence of court supervision. Similar questions arise about the City's leaders. There is no doubt that, once the Court intervened to ensure the investigation was conducted in a thorough manner, City leaders took the matter seriously and were actively engaged in ensuring OPD investigated thoroughly.  They also took the appropriate step of hiring an outside attorney to uncover what had occurred before the Court's intervention.  But when that attorney's investigation failed to move forward, City leaders did not demand progress or answers.  Just as OPD required Court intervention to conduct a thorough investigation, the City required Court intervention to investigate the Department, and that too raises questions of sustainable progress in the absence of Court supervision." (Exhibit 20:28 Swanson Report)

Oakland Police Department is an example of a failed, mismanaged, and scofflaw department. OPD has been under Federal oversight since 2003 [15 failed years] as a result of the Negotiated Settlement Agreement ("NSA") Defendant entered into after the *Allen v Oakland* Consent Decree. Defendant agreed to several reforms, one of which was Internal Affairs (IAD), as well as Supervision of officers. The *Allen* court has issued several Orders calling into question Defendant's commitment to reform its department. Defendant City leadership's commitment to reform has also been questioned by *Allen* court. During the 15 years under the NSA, OPD has cycled through ten Chiefs of Police and on three occasions, officers who accepted the job resigned or were forced out, based on questionable behavior on their past. The only constant with OPD during the NSA is that they continue to fail to comply with the Court's Orders to address racial discrimination. By the same token, the Independent Monitor has also been called into question for not fully revealing the failings of OPD to the Court. If the Allen court is not aware of the incomplete IAD 13-1062 case, that means the Monitor/Compliance Director has been negligent in his failure to report incomplete IAD 13-1062 as required during or after any

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR                                                                                      14-cv-1626- JSC**

reporting period. In order to fully hold the department and city leadership accountable, our IAD

Complaint No. 13-1062 case needs to be fully and independently investigated.

### PLAINTIFFS' EFFORTS TO OBTAIN AN INDEPENDENT INVESTIGATOR
### PLAINTIFFS ATTENDED CITY MEETINGS

From 2011 through the present year, we have attended numerous City Council and Public

Safety Meetings at Oakland City Hall. We have had multitudes of meetings with City officials

between 2004 through present. We addressed the Public Safety meeting of 6/28/12 and noticed

them that my criminal case files were missing and that no investigation of 07-0538 had occurred.

(Exhibit video 14.6 - 6/28/12) I sent a certified letter to Independent Monitor Robert Warshaw

noticing him with evidence of OPD deliberate indifference in investigating my case and other

related cases. (Exhibit 23 Warshaw letter)

City Council  [Defendant leadership] has repeatedly requested that OPD, OCA, and the

City Administration follow up and find a resolution to the decade long unresolved "Bey cases".

On January 20th 2015, John Bey and I addressed the Defendant City Council during a

vote to renew Compliance Director Warshaw's contract, and provided copious amounts of

evidence showing IAD No. 13-1062 was still incomplete, was purposely inaccurate, that current

Chief Whent and current DC Downing were missing from the final report, and that Compliance

Director Warshaw was fully aware and failing to act on incomplete IAD No. 13-1062. (Exhibit

video 14.3 - 1 20 15).

1.   **Oakland City Council member Desley Brooks**

22:46:38>> WITH RESPECT TO THE ISSUES THAT THE <u>BEYS</u> HAVE RAISED,

I THINK THAT WE DON'T HAVE TO WAIT FOR A FEDERAL MONITOR IN

ORDER FOR US TO DETERMINE WHAT HAPPENED IN THIS CASE, AND I

THINK THAT IT IS SHAMEFUL THAT PEOPLE HAVE TO COME FOR YEARS

IN AND YEARS OUT TO GET PUBLIC DISCLOSURE WITH RESPECT TO WHAT HAPPENED IN CASES. I'VE LISTENED TO THE <u>BEYS</u> TALK ABOUT DOCUMENTS BEING LOST, ABOUT THINGS NOT BEING INVESTIGATED AND AT SOME POINT, WE SHOULD WANT TO PUT THESE THINGS TO BED. SO, THE SAYING WITH RESPECT TO THE ISSUE THAT IS MR. HAZARD RAISES, WE PUT PEOPLE OFF AS IF THEY'RE FLIES OR THAT THEY COME AND THEY'RE CRAZY AND THEY KEEP RAISING THESE ISSUES AND WE [INAUDIBLE] THEM, BUT AT SOME POINT, WE SHOULD WANT TO MAKE SURE THAT OUR SYSTEMS HAVE INTEGRITY AND THAT THEY ARE A PLACE THAT PEOPLE CAN FIND THE RELIEF THEY SEEK WHEN THEY FEEL THEY ARE WRONG, AND IF SOMETHING'S WRONG WITH OUR PROCESSES, WE SHOULD SEEK TO ADDRESS THAT. NOT TO SIMPLY HAVE PEOPLE COME YEAR IN AND YEAR OUT WITH THE SAME COMPLAINT AND WE LET THEM COME AND LET THEM GO, SO I WOULD HOPE AND I KNOW THROUGH THE CHAIR TO THE CITY ADMINISTRATOR, THAT YOU'RE LEAVING, BUT I HOPE WE DON'T JUST SAY, <u>SOMEBODY GET WITH THE BEYS</u> BECAUSE WE SAY THAT EVERY TIME THEY COME BECAUSE IT'S UNCOMFORTABLE TO HEAR WHAT THEY'RE SAYING IF WHAT THEY ARE SAYING IS TRUE, AND THEN IT DOES MAKE US LOOK SUSPECT IF WE JUST SIT UP HERE AND DO NOTHING.  AND SO I WOULD HOPE THAT WE WOULD FIND A PLACE TO PUBLICLY ADDRESS THESE ISSUES WHERE PEOPLE COME TO US TIME AND TIME AGAIN WITH THE SAME COMPLAINTS AND SO MR. CITY ADMINISTRATOR, ON YOUR WAY OUT, I HOPE THAT WE WILL GET THE DOCUMENTS FROM THE <u>BEYS</u> AND THAT WE WILL PUBLICLY ADDRESS IF THERE WERE MISTAKES, THEN LET'S CORRECT THEM. I'M NOT -- I DON'T KNOW THAT ANYBODY DID ANYTHING INTENTIONAL AND THAT'S NOT WHAT I'M TRYING TO IMPLY, BUT WE DON'T GET TO BE A BETTER CITY IF WE TURN A BLIND EYE TO THE COMPLAINTS OF OUR RESIDENTS AND WE DON'T ADDRESS SOME OF THESE THINGS, SO I WOULD HOPE THAT TONIGHT IF YOU BROUGHT SOME DOCUMENTS, I

KNOW YOU HAVE OTHER DOCUMENTS THAT WE WOULD GET THEM AND THAT AT THIS COUNCIL, WE WOULD COMMIT TO GETTING SOME ANSWERS FOR THIS BECAUSE IT SHOULDN'T TAKE AN EXTENSION OF A FEDERAL MONITOR'S CONTRACT TO ADDRESS THIS. THIS IS OUR DEPARTMENT. THANK YOU, COUNCILMEMBER BROOKS.>>

2.  **Oakland City Council President Lynette McElhaney**

22:49:44>> THANK YOU, AND TO COUNCILMEMBER BROOKS' POINT, <u>WE WOULD LIKE TO SEE A RESOLUTION OF THE BEY COMPLAINT</u> AND THAT -- YOU KNOW, THE ISSUE IS IF THEY'RE WRONG BUT THERE SHOULD BE CLOSURE BROUGHT TO THIS FAMILY, THEY'VE SUFFERED A GREAT DEAL, THE LOSS OF THEIR FAMILY MEMBERS, THE LOSS OF THEIR BUSINESSES, THEIR LIVES HAVE BEEN UPENDED AND INTERRUPTED AND WE SHOULD KNOW THE TRUTH ABOUT THAT. THANK YOU

3.  **Oakland City Council member Rebecca Kaplan**

22:42:27>>–WE'RE HEARING ABOUT COMPLAINTS THAT WENT TO IA ABOUT REAL THINGS THAT WERE NOT INVESTIGATED, MEANWHILE WE'RE WASTING OUR STAFF INVESTIGATING NONSENSE AGAINST CIVILIANS AND THE ISSUE THESE TWO GROUPS ARE RAISING ARE INTERTWINED, WE'RE WASTING OUR INVESTIGATORS ON PART OF THIS NONSENSE IS PART OF WHY THEY HAVEN'T GOTTEN TO THE SERIOUS ISSUE OF WHAT THE <u>BEY FAMILY</u> HAS BEEN STRUGGLING WITH FOR OVER A DECADES.SO, IF WE WANT TO GET A REPORT BACK ON WHAT'S UP WITH THAT AND THIS MONEY THAT WE'RE PAYING THIS PERSON, HAVE SOME RESPONSE BACK TO US ON THESE ISSUES, HOW DO WE GO ABOUT DOING THAT?

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                14-cv-1626- JSC

4.     **Oakland City Council President Lynette McElhaney**

22:43:37 - >> WELL, CAN I MOVE APPROVAL ON THE CONDITION THAT IT COMES WITH THE DIRECTION TO OUR ADMINISTRATION THAT THEY WILL FORTHWITH RAISE WITH THE MONITOR THE ISSUE OF SEEKING TO END THE USE OF IA OVER CIVILIANS AS A POLICY AND WE CAN'T OF COURSE GIVE A POLICY DIRECTIVE AS TO A SPECIFIC CASE, BUT THE <u>BEY FAMILY</u> HAS BEEN ASKING ABOUT THIS FOR A GOOD LONG TIME AND I WOULD GREATLY APPRECIATE IF THE ADMINISTRATION COULD FOLLOW UP WITH THEM.

(Exhibit 14.4 video)


**PLAINTIFFS HAD MEETINGS WITH ASSISTANT CHIEF FIGUEROA**

Plaintiffs were directed to meet with Assistant Chief ("AC") Paul Figueroa after IAD No. 13-1062 was opened by the Compliance Director. Plaintiffs had emails exchanges with AC Figueroa as well. On June 6, 2014, Plaintiffs also met with AC Figueroa and Deputy Chief Danielle Outlaw inside an OPD conference room. Plaintiffs repeated complained again that the March 18, 2014 Resolution Letter regarding IAD No. 13- 1062 was incorrect and incomplete because there were officers still working on the force who were on the force during IAD no. 07-0538. Plaintiffs specifically identified David Downing, who was then current Deputy Chief, and Sean Whent, who was then Chief of Police. DC Figueroa said that Chief Whent would recuse himself from this investigation IAD No.13-1062 because he was a part of the underlying investigation of IAD No.07-0538. Plaintiffs had a follow up meeting with AC Figueroa that was attended by Sgt. Holly Joshi on February 6, 2015 during which  AC Figueroa admitted that Ersie Joyner was involved with IAD No. 13-1062. Plaintiffs again pressed that Ersie Joyner was a supervisor at the time of IAD No. 07-0538, and has since been promoted and was still employed with OPD, in contradiction of the March 18, 2014 Resolution Letter. Plaintiffs last meeting on

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR                                                     14-cv-1626- JSC**

April 3, 2015 with AC Figueroa was attended by Lt. Roland Holmgren where, once again, AC Figueroa admitted that Joyner did need to be added to our correction letter, but he was not willing to issue such letter yet because they might find others, were they to investigate fully. (Exhibit 14)

### PLAINTIFFS CONSULTED WITH THE CITY ATTORNEY

Plaintiffs made City Attorney aware of their plight for justice, and asked for an independent investigation at each of the City Council meetings as well as Public Safety meetings between 2011 and present.  In 2014, Plaintiffs met with City Attorney Barbara Parker in her office and discussed the facts that the recently closed investigation of IAD13-1062 was incomplete because it did not have any documentation regarding Plaintiffs cases, which was available during any investigation. In 2012, Council person Kaplan is on video requesting a closed session with the City Attorney's office and instructing the City Administrator's office to find out the status of investigating Bey related cases and IAD07-0538.  (Exhibit Video 14.6 6/28/12 Public Safety Meeting)

Each Exhibit attached hereto is an original, copy of original and was obtained through the Discovery in this case, The Freedom of Information Act, and/or Investigation produced Defendants.

JUDICIAL NOTICE OF COURT ORDERS: Plaintiffs request this Court to take Judicial Notice of Judge Thelton Henderson's Orders in *ALLEN V. OAKLAND*, CASE NO. C00-4599 referenced herein.

### C. APPLICABLE LAW

**1.  The Court Has the Discretion to Appoint an Independent Investigator to Enforce Compliance with the NSA/AMOU**

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR                                                          14-cv-1626- JSC**

This Court possesses the authority to implement any remedies necessary to correct constitutional violations and to take broad remedial action to ensure compliance with its order. *Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.,* 443 U.S. 658, 695-96 (1979); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093-94. (9th Cir. 2010), *aff'd sub nom*, *Brown v. Plata*, __U.S__, 131 S. Ct. 1910 (2011)39; *Lewis v. Kugler*, 446 F.2d 1343, 1351-52 (3rd Cir. 1971).  OPD continues to violate this Courts Orders in the *Allen* and the NSA by in failing to conduct mandated investigations of crimes and IAD complaints.

Defendant City  OPD will probably argue that the City is making efforts to comply with the *Allen* Orders and the NSA. In the Abuslin case, Kim Bliss of the Oakland City Attorney's Office reported to Judge Henderson that "…the city is committed to investigating the identified failures." Police Chief Anne Kirkpatrick,  is also on record stating: "I appreciate that Mr. Swanson and Ms. Barron did say that all of these failings are repairable." In *Dixon v. Barry,* 967 F. Supp. 535 (D.D.C. 1997), the court rejected similar arguments, ruling that the appointment of a receiver was necessary due to the Defendants' repeated delays and failure to comply with Court Ordered reforms relating to the delivery of community mental health services, even though the defendant argued it was recently making efforts to comply. *Dixon,* 967 F. Supp. at 540, 553.

This Court, like the Dixon court, should reject any of the City empty claims progress and of making efforts and "committed to investigating the identified failures." The true facts are that the City and OPD is engaging in continuing violations of the NSA. Given the long history of broken promises of compliance made by the City and OPD, the Court must now grant Plaintiffs Motion for a Court-Appointment of an Investigator. A Court-Appointed Investigator is necessary to prevent further delays, lawsuits, ruined lives, injuries, deaths, a waste of money and the Court's resources. This Court has the authority to take whatever action is necessary to ensure

33

implementation of the Court's remedial orders. See, e.g., *Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.*, 443 U.S. at 695-96.

## D. CONCLUSION

Based on the foregoing, and the additional oral testimony Plaintiffs will present at the time of the hearing, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a Special Court-Appointed Investigated pursuant to the equitable powers of the Court and to bring the City and OPD into compliance with the NSA.

Dated: February 9, 2018

THE LAW OFFICES OF BONNER & BONNER

*/s/ Charles A. Bonner*
CHARLES A. BONNER
Attorney for Plaintiffs

**PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL COURT-APPOINTED INDEPENDENT INVESTIGATOR**                                                                    **14-cv-1626- JSC**