# EXHIBIT 34

Not withstanding the manner which this investigation was conducted, a core theme throughout this investigation was the climate and culture of the Oakland Police Department Criminal Investigations Division, and the Homicide Section. One of the witnesses described the climate in the Division as one of distrust and chaos. It was in that climate that the Criminal Investigations Division Commander shares protected information with subordinates, who were the subjects of the protected activity. This lack of leadership and adherence to the department's policies was the catalyst for many of the subsequent incidents surrounding the allegations in this investigation. Managers and supervisors failed to take action to dispel the rumors concerning the affiliations of Sergeant Derwin Longmire, nor did they insist that Sergeant Longmire be held accountable to the agencies standards. At the moment Sergeant Longmire discusses the idea to allow Yusef Bey IV to subject himself to an interview by the lead investigator; without discussing this with the lead investigator or his supervisor he created a tremendous breach in the professionalism of the agency and widened the climate of distrust. His actions validated the rumors and innuendo many of the officers alluded to.

Different people within the same organization bring difference experiences, assumptions, values, beliefs, and habits to their work. This diversity is valuable because innovation and learning are the products of differences. No one learns anything without being open to divergent points of view. Yet the Criminal Investigations Division Commander was often unwilling or unable to address these competing perspectives effectively.

Additionally, managers and supervisors must be able to manage their professional and inter-personal relationships to ensure they are not in conflict or the basis for their decision making.

## RECOMMENDED FINDINGS

As to Deputy Chief Jeffrey Loman

**Retaliation**                                MOR 398.73                        **Sustained**
This investigation disclosed a preponderance of evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy.

**Retaliation Accountability**                 MOR 398.74                        **Sustained**
This investigation disclosed a preponderance of evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy.

**Reporting Violations – Failure to Report MOR Violations MOR 314.48.1           Sustained**
This investigation disclosed a preponderance of evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy.

**Supervisors – Authority and Accountability**     MOR 285.00                    **Sustained**
This investigation disclosed a preponderance of evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy

**Membership in Organizations**         MOR 383.56.2         Unfounded
This investigation failed to disclose evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy.

**Compromising Criminal Cases**         MOR 370.72.1         Sustained
This investigation disclosed a preponderance of evidence to determine that Deputy Chief Jeffrey Loman was in violation of OPD policy.

### As to Lieutenant Ersie Joyner

**Retaliation Accountability**         MOR 398.74         Sustained
This investigation disclosed a preponderance of evidence to determine that Lieutenant Ersie Joyner was in violation of OPD policy.

**Supervisors – Authority and Accountability**         MOR 285.00         Sustained
This investigation disclosed a preponderance of evidence to determine that Lieutenant Ersie Joyner was in violation of OPD policy.

**Compromising Criminal Cases**         MOR 370.72.1         Exonerated
This investigation found no evidence to support that Lieutenant Ersie Joyner was in violation of OPD policy.

### As to Sergeant Derwin Longmire

**Retaliation**         MOR 398.73         Sustained
This investigation disclosed a preponderance of evidence to determine that Sergeant Derwin Longmire was in violation of OPD policy.

**Compromising Criminal Cases**         MOR 370.72.1         Sustained
This investigation disclosed a preponderance of evidence to determine that Sergeant Derwin Longmire was in violation of OPD policy.

**Insubordination**         MOR 314.30         Sustained
This investigation disclosed a preponderance of evidence to determine that Sergeant Derwin Longmire was in violation of OPD policy.

**Performance of Duty**         MOR 314.39         Sustained
This investigation disclosed a preponderance of evidence to determine that Sergeant Derwin Longmire was in violation of OPD policy.

**Membership in Organizations**         MOR 383.56.2         Unfounded
This investigation disclosed a preponderance of evidence to determine that Sergeant Derwin

BEY01012

OPD 0486

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
OFFICE OF THE DIRECTOR

## INVESTIGATION REPORT
## CONTINUATION

Invest. Name: OPD Sergeant of Police Derwin Longmire         Invest. No. PS08-0035

58. Loman said if he was the primary investigator, and Longmire had done the same thing he did to Arotzarena, Loman would be thinking, "That it's my case and you should stay out of my case." Loman continued, "I think it's pushing the envelope." (Jeffrey Loman interview transcript, attachment 1-12, page 58-59.)

59. Rullamas said he would, "... have a big problem with that," if another investigator brought in one of his suspects prior to him being ready for him. He continued saying you want to develop the probable cause and, "The last thing we want to do, is release a suspect if you know we're not able to arrest him because then that person knows that you've got nothing, or at least you haven't got enough to put him or her in jail." (James Rullamas interview transcript, attachment 1-4, page 70.)

60. Cruz said bringing suspects in on another investigator's case, without their direction, and prior to them being ready for them is interfering with the case. He said, "He's interfering with your, with what steps you want to do in the case and perhaps an ultimate success in the case." Cruz said this could compromise a case. (Louis Cruz interview transcript, attachment 1-9, page 59-60.)

61. During the Grant interview, Grant commented about Longmire bringing Bey IV in prior to the investigator (Arotzarena) being ready for him. Grant stated, "... that, in and of itself, could destroy an entire investigation." (Jesse Grant interview transcript, attachment 1-2, page 15.)

62. Rachal commented about Longmire bringing in Bey IV prior to Arotzarena being ready for him by stating, "Now if I went out there and picked up a guy and brought him in and sat him in homicide and it, they would have a conniption. Because it would disrupt the investigation, my bringing the guy in there, or force them to, um, deal with him before they're ready." (Andre Rachal interview transcript, attachment 1-6, page 23.)

63. Galindo stated that bringing in another investigator's suspect, prior to the investigator being ready for him would be, "... kind of a slap in my face if an investigator did that without asking me, yes." (Gustavo Galindo interview transcript, attachment 1-7, page 19.)

64. Morris said if another investigator had brought one of his subjects in prior to him being ready for him, he would have gone "ballistic." Morris commented on how Longmire would have reacted if someone had brought one of his subjects in prior to Longmire being ready for him, "Oh, he would go ballistic. If someone had just brought in a suspect and without his prior approval and him ready for him and just

42

BEY01013

OPD