# EXHIBIT 43

# STATE OF CALIFORNIA
## DEPARTMENT OF JUSTICE
## OFFICE OF THE DIRECTOR

## INVESTIGATION REPORT

| Investigation Title:<br>Oakland Police Department Sergeant of Police, Derwin Longmire | Date:<br>February 26, 2009 | Investigation No.:<br>PS08-0035 |
|---|---|---|
| Report Number:<br>1 | Type of Report:<br>Opening/Closing | Case X-Ref: |
| Case Agent:<br>John Porbanic, SAS | Reporting Agent:<br>John Porbanic, SAS | Supervisor:<br>Jeff Wall, SAC |

## INTRODUCTION

### Subject of Investigation

Derwin Longmire

    Sergeant of Police
    Oakland Police Department
    455 Seventh Street
    Oakland, CA 94607
    (510) 238-3455

Sergeant of Police Derwin Longmire began his employment with the Oakland Police Department (OPD) 23 years ago as a Police Officer. He has worked in various assignments with OPD including Patrol, the Criminal Investigative Division, Intelligence Unit, and Homicide.

As relevant to this investigation, Longmire was the lead investigator assigned by OPD to investigate the murder of journalist and editor of the Oakland Post Chauncey Bailey on August 2, 2007.

## BACKGROUND

On October 30, 2008, Oakland Mayor Ron Dellums wrote to the Attorney General, requesting the Department of Justice's (DOJ) assistance in investigating allegations of misconduct by OPD homicide investigator Derwin Longmire in connection with his investigation of the shooting death of reporter Chauncey Bailey on August 2, 2007. Dellums requested that this agency conduct a concurrent, parallel investigation into the allegations of wrongdoing in light of media reports and concerns from the community that called into question the integrity of the OPD's investigation into the murder of Bailey.

**BEY00500**

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
OFFICE OF THE DIRECTOR

INVESTIGATION REPORT
CONTINUATION

Invest. Name: OPD Sergeant of Police Derwin Longmire                    Invest. No. PS08-0035

questions about the informant. (Michael Yoell interview transcript, attachment 1-8, pages 28-29.)

27.    Yoell stated, "I wasn't concerned about Loman's relationship with the bakery, I was concerned with Loman's relationship with Longmire." He continued, "Longmire's relationship with the bakery did bother me." (Michael Yoell interview transcript, attachment 1-8, page 33).

28.    Yoell said the day of the out of county warrant, he was in Lake Tahoe attending an asset forfeiture class. He said he received a frantic telephone call from Grant. Grant told him he had a suspect in the interview room and Longmire, ". . . had either tried to get into the interview room to talk to the suspect or witness, uh, was looking at the, you know, the door sheet, was looking through the door." Yoell continued, "And I couldn't understand why he would be over there other than the fact that he was tight with the bakery people and wanted to know what was going on, which is inappropriate." Yoell had put Sergeant Dana Flynn in charge during his absence. Yoell called Flynn and said, ". . . Dana, listen to me, you have got to make sure that uh, Longmire is not allowed to have any contact with these people. He goes I know, you know, he's been in here a bunch of times." Yoell told him if Longmire comes back one more time, order him out and if Flynn need to, call Yoell and he would call the Captain. (Michael Yoell interview transcript, attachment 1-8, pages 33-35.)

29.    Longmire denied ever "pacing back and forth" in front of the interview room door when Johnny Antoine was in there. Longmire denied knowing Johnny Antoine. He also said if he wanted to read a room log, "I'd walk up there and read the room log." He did not recall the incident. (Derwin Longmire interview transcript, attachment 1-14, pages 106-108.)

**Was Longmire overly concerned asking about seized evidence involving the bakery?:**

30.    During the Grant interview, Grant stated Longmire had confronted him several times regarding two separate items of evidence he had seized from the bakery related individuals. He stated the first item was a cellular telephone he had seized. Grant stated he had spoken to Alia Bey and told her she was not getting the phone back. Longmire spoke with Grant several times about returning the phone to Bey. Grant told him he had already told Longmire she was not getting the phone back, but he continued to confront him about it. He said at one point, he was in the Homicide unit and Longmire, ". . . just dials the phone and puts it up to my face and

**BEY00501**

OPD 0560

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
OFFICE OF THE DIRECTOR

INVESTIGATION REPORT
CONTINUATION

Invest. Name: OPD Sergeant of Police Derwin Longmire          Invest. No. PS08-0035

goes, here, this is Alaia Bey, talk to her about the phone." Grant said this was unusual to him because it seemed that Longmire was working hard for Bey to facilitate the return of her phone. Grant said he would not expect this from a reasonable investigator, "And certainly on something, an investigation of this scope, I think it would be very safe to assume something like that's going to be held indefinitely."

Grant said the second item of evidence seized in a bakery related search warrant that Longmire seemed to have an unusually high degree of concern about were six computers he seized. Grant stated Longmire confronted him several times saying he should give them back. Grant said Longmire told him, "I told Alaia Bey there's no reason for us to have those computers and, you know, you should give them back." Grant said when Longmire was telling him this, Longmire was in very close proximity to him and, ". . . it was something, one, that seemed like this wasn't a suggestion, he was telling me what to do and trying to intimidate me. And also, again, something so ridiculous and preposterous. . ." Grant said the Apple computer that Bey seemed to be most interested in, and it appeared Longmire was most advocating for, turned out to be stolen property. Grant said, "It was stolen from a women right around the corner from the bakery." (Jesse Grant interview transcript, attachment 1-2, pages 21-24.)

31. Longmire stated he spoke with Grant twice about returning the computers to Alia Bey. Longmire said he gave Grant the information about Bey because she had called him and needed the computer to do her personal business. Longmire said he did not want her to keep calling him about the computer. (Derwin Longmire interview transcript, attachment 1-14, pages 97-100.)

32. During the interview of Berkeley Police Officer Jesse Grant on October 24, 2008, Grant stated the information flow regarding Longmire and the bakery was one way. From Longmire to the bakery, not from the bakery to benefit OPD. Grant said, "He (Longmire) was trying to get things from me to benefit the bakery, you know, trying to get those computers back, the phone. . ." (Jesse Grant interview transcript, attachment 1-2, page 27.)

33. Cruz stated Longmire had approached him on two different occasions asking if Cruz could return computers he seized as a result of a search warrant. The individual asking Longmire for the return of the computers was one of the females associated with the bakery. (Louis Cruz interview transcript, attachment 1-9, pages 98-99.)

**BEY00502**

34

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
OFFICE OF THE DIRECTOR

INVESTIGATION REPORT
CONTINUATION

**Invest. Name: OPD Sergeant of Police Derwin Longmire**          **Invest. No. PS08-0035**

34.  Morris had stated if another investigator asked him twice in the same day about returning property to a suspect and then handed the telephone to him and told him he had his suspect's relative on the phone and that he needed to talk to him. Morris said this would not be appropriate behavior for another investigator and Morris would have a few choice words for the other investigator. Morris stated this is, "Pretty obvious it's tampering and interfering. And looking at it, it could be intimidation." He said, drawing from his expertise in internal affairs, he would consider this compromising a criminal investigation. (James Morris interview transcript, attachment 1-10, pages 106-107.)

35.  Jordan stated if another investigator asked him twice in the same day about returning property to a suspect and then handed the telephone to him and told him he had he suspect's relative on the phone and that he needed to talk to him, "That would be highly irritating and unusual." Jordan continued saying this would tell him, "That he's way too much involved in this procuring evidence returned that he needs to be. I would be irritated too." (Howard Jordan interview transcript, attachment 1-11, pages 84-86.)

### Did Longmire's relationship with Grant result in retaliation against Grant?:

36.  Cruz said there was talk around the Homicide unit that Grant could not be trusted. Cruz said, "And then it came out that he went to Loman's office to even complain about Longmire. That got leaked out. Obviously it could only get leaked out by Loman." (Louis Cruz interview transcript, attachment 1-9, pages 78-79.)

37.  Longmire stated, Loman told him about his conversation with Grant about Grant's concerns that Longmire should not be allowed to work on a bakery case. Longmire said Grant should never, as an officer, approach a captain about an issue like that. Longmire said he just tried to stay away from Grant after that because he was a rank above Grant and did not what to appear retaliatory. (Derwin Longmire interview transcript, attachment 1-14, pages 94-97.)

38.  Jesse Grant left OPD and went to work for Berkeley Police Department as a police officer in June of 2008. Grant stated he was on the Sergeant's list when he left. Grant stated, "I was born and raised her (in Oakland). I love this city, I love this police department. I never envisioned myself leaving." He said he believed both his career and he were affected personally from his involvement in the bakery kidnapping case and Captain Loman had not handled his concerns about Longmire's interference. (Jesse Grant interview transcript, attachment 1-2, pages 37-40.)

**BEY00503**

OPD 0562