CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **ALI SALEEM BEY and JOHN MUHAMMAD BEY,**<br><br>                **Plaintiffs,**<br><br>     **vs.**<br><br>**CITY OF OAKLAND, et al.,**<br><br>                **Defendants** | **Case No.: 14-cv-01626-JSC**<br><br>**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date: JULY 29, 2019**<br>**Time:**           **10:00 a.m.**<br>**Courtroom:    F**<br>**Place:**          **15th Floor**<br>                    **450 Golden Gate Ave.**<br>                    **San Francisco, CA**<br><br>**Judge:  The Hon. Jacqueline S. Corley** |

1

**INTRODUCTION**

1.    I am a citizen of the United States and I am a Plaintiff in this action, along with Ali Saleem Bey.

2.    I have personal knowledge of the matters stated herein and would testify to the same if called to do so in a court of law, except as to those matters stated upon information and belief, and as to those matters, I am informed and believe them to be true and correct to the best of my knowledge.

3.    This case reflects an ongoing pattern and practice and policies that are analogous to the *de Jure and de Facto* Jim Crow laws in the Southern United States. The evidence in my case shows that on June 17, 2005, I was shot three (3) times, with two bullets penetrating my left leg and one my left arm in a "lie in wait" attempted murder upon me.  The evidence shows that OPD closed the criminal investigation of my case without notice to me on August 19, 2005, 63 days after the ambush attack on me.  The evidence shows that to date, thirteen (13) years later, OPD still has refused to investigate the attempted murder on me. After repeated requests and urging for an independent investigation, in the summer of 2014, OPD Sgt. Cesar Basa called Saleem and me to the OPD Headquarters located 455 7th Street, Oakland and informed us that the OPD was denying our request for an independent investigation and for further internal investigation on my case. The Oakland Police Department has discriminatorily failed to investigate crimes against me and my Co-Plaintiff because we are Black Muslims, violating our constitutional rights guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

4.    February 27, 2004 I worked a shift at the Oakland Marriott Convention Center that was to end at 12AM February 28, when Waajid Bey was scheduled to relieve me and take over the post. Being that it was a Friday, Waajid and I had been in contact during the afternoon to take care of some of our regular administrative duties, which was part of our Friday afternoon routine. Among the regular matters we would meet about consisted of any checks to be deposited into the bank account for the security company I managed as well as the bakery business that he was CEO of, Your Black Muslim Bakery (YBMB). That afternoon, Waajid dropped me off at home

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                                          **14-cv-1626- JSC**

so that I could get a little rest before my shift back at the hotel and he was also to try and get some rest after putting in a bit more work at the bakery building at 5832 San Pablo. Once 12AM came and passed, I began to call Waajid in case I needed to wake him up to come relieve me, but I got neither an answer to the phone calls, nor a response via text. One of our other security officers was off his post at a different location within the hotel and I was able to make contact with him prior to him leaving. I asked him to go by Waajid's residence and wake him to come relieve me.

5.      I soon heard back from the security officer who responded to Waajid's residence that he was not present inside, but the front door was locked, television was on and his car was still parked outside. Based on what I had been told, I immediately arranged for another person to relive me and I went directly to Waajid's house. He lived in the bottom unit of a duplex and when I arrived, the place was found as described. I was able to gain entry through the front door and was able to observe the state of his residence. I made a call to one or two other persons who I thought may have seen Waajid and no one could come up with a reason that he would not be there. I left his place a little after 3AM and went home. Upon awaking the next morning I contacted Saleem and told him of the events of the previous night. I told him I intended to return to Waajid's residence to have another look and see if he had shown up. Saleem said the he was going to contact the Police. During this period of time within the family and community comprising the Golden Gate District in Oakland, there was a certain amount of chaos related to the control and future direction of the Your Black Muslim Bakery and associated community. The founder of the business, Yusuf A. Bey (Dr. Bey) had died on September 30, 2003 and since then the bakery was solely under Waajid's leadership. Waajid was actually named as CEO earlier in 2003 while Dr. Bey was still strong but beginning his real fight against the cancer which he was diagnosed with around 2002. Following Dr. Bey's death in September 2003, Dr. Bey's son Antar Bey began a campaign to take over YBMB to get access to its assets. Waajid, Saleem and I were actively working to maintain control of YBMB and prevent Antar Bey and his younger brother Yusef Bey IV from taking control of the organization.

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT          14-cv-1626- JSC**

6.      On Monday March 1, 2004 **(Exhibit 7, Bonner Decl., LRMS Query)**, after Saleem's wife called in Waajid as a missing person, three law enforcement officers showed up at my house to question me as the last known person most likely to have seen Waajid. They identified themselves as Andre Rachal and Todd Crutchfield, of OPD and the third person just gave his name, which I do not recall. They only asked me very routine questions in an effort to establish a timeline. I told them how far out of character it was for Waajid to be out of contact with anyone for over one day, let alone several days. Just before they were set to leave I offered to take them to Waajid's house so that they could see the scene and I could also see if anything was different from the last time I had been in there. I showed the officers the bank receipts still on the table from the deposits we made Friday; I showed them his car and the condition of the residence. I don't quite recall when it was brought to my attention that the third individual who was with Rachal & Crutchfield identified himself as FBI, but once that identification was known to me, it felt to me that the case had taken a very serious turn. The case was initially being investigated by Crutchfield, who initially said he was in missing person's within OPD, but we later found out he was a Homicide Detective. As a community there was no trust and little belief that OPD would do anything in this case because of the years of Animus that we had experienced, but we knew that as long as we continued to force them to do their jobs to investigate they would have to work the case to conclusion. Several members of the family and community would usually speak with me or Saleem and we would relay leads and identification of persons of interest.

7.      During the investigation, I mainly spoke with Rachal at OPD because he said that he had been observing the Black Muslim community for several years, particularly ours, and that he was OPD and had more interest in bringing an end to the bakery than the FBI, because he said that no matter how many different FBI agents were assigned to cover the bakery, he was always going to be a part of any and every investigation. I put myself in danger by meeting with Rachal, several FBI officers as well as ATF officers at the FBI building at 180 Grand Avenue on several occasions. I had comments made about me directly, innuendo about people meeting with police and when I entered certain joint meetings that we had to continue at the bakery, I was searched

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                        14-cv-1626- JSC**

extremely closely and followed outside when I left. Saleem and I conveyed these changes to our OPD contacts; we expected that some individuals would be contacted. Time passed and the investigation languished and even though OPD maintained that it was still a missing person's investigation, reality dictated that there was very little chance that Waajid was alive as we approached the six month mark.

8.      Later that month, August 2004, Waajid's body was found in the East Oakland Hills on a hillside full of shrubs when it was discovered by a man whose dog came upon it while the dog was being walked. Officially, we had a murder and a body that had some parts dismembered and he was wrapped in plastic, sealed with duct tape and buried. We continued to provide leads to OPD. I stayed in contact with Rachal & FBI officers, mainly the new officer on the case, Chris Brown. Rachal was an intelligence officer who did not work cases with the rest of the officers, he concentrated on cases that involved Black Muslims only and he reported directly to Chief Wayne Tucker.

9.      Antar's next oldest brother was Yusuf IV and he was 19 years old at the time. He worked for me part time until just before Waajid's body was discovered. Antar and his group wanted to take over my business and made that fact widely known within the community. They even went into the hotel to try to pick up checks for services without my knowledge. The animosity between us was open and I told several other family members that since we had nothing to hide it does not benefit us to engage them in a violent counter attack related to Waajid's murder because now that OPD was involved they would like nothing better than to have us go to war and kill each other and then they would come in and arrest whomever was left and local press would splash that on the headlines. Many of us felt this way and we believed that OPD was dragging their feet following leads and not investigating vigorously because of their Animus toward us as Black Muslims. OPD admits that as early as 2004 they knew that Antar was attacking Saleem and me who were the "Old guys", who were with Waajid and against Antar's takeover of YBMB **(Exhibit 6, Bonner Decl., Longmire Interview)**. OPD also admits that the assigned investigator to Waajid's murder case was Sgt. Bruce Brock. In the 2009 DOJ investigation, OPD Longmire

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                          14-cv-1626- JSC**

testified that, OPD Brock, "would never do anything" **(Exhibit 41, Bonner Decl., DGO M2)** related to working Waajid's murder case.

JUNE 17, 2005 CASE 05-034462 JMB ATTEMPTED MURDER

10.     Shortly after Waajid's body was recovered my family moved in with a relative of mine in the upscale Montclair community where she had lived for nearly 30 years. Early in 2005, we began to notice one or two young black men in the area of the house which I reported to Rachal and Brown. My wife had seen one or two and I had seen one who I thought might be a door to door kid selling candy or tickets to something school related because he was not near my residence but in the area. I had also seen three to four young black men in a green Nissan Pathfinder that was a new vehicle and I knew they were either very new to the area or visiting someone because they did not navigate the tight turns of the hills. Residents drove close to the outer edges and knew which turns to slow up on when going uphill. One day I was going down when they were coming up and they were not hugging the hill as they should have. Because I had to go wider than normal at the last minute I did not get a clear look. After that incident when discussing with Saleem and others, one of our folks mentioned seeing that exact make & model on 59th Street near Yusuf IV's residence with a parking ticket on it. I passed that information on to OPD and nothing ever came back from the officer as to him following that lead.

11.     June 17, 2005 when I got into my vehicle at approximately 6:30AM on my way to work, the first shot rang out and I felt the sting in my leg.  I wasn't sure what was happening, but once I ran away from the vehicle and ran past that Nissan Pathfinder I knew it was those same young men.

12.     OPD initiated an attempted murder investigation **(Exhibit 8, Bonner Decl., Case Notes# 05-034462)** and processed the scene for evidence. There were at least three separate caliber of weapons used at the scene and several witness statements from neighbors who said they could probably identify the suspects. These potential eye witnesses provided OPD with detailed descriptions of the assailants including approximated height, weight & clothing. There is no

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                    14-cv-1626- JSC**

OPD evidence, notes or case files to show that any of these witnesses ever had a follow-up contact from an OPD investigator.

13.     During the years following my shooting, I maintained contact with OPD Bruce Brock, until his retirement and Rachal who continued as a special undercover officer following Black Muslim cases. Periodically, both OPD officers & their FBI counterpart agreed and shared with me their professional belief that Antar and his group was responsible for both Waajid's murder and my ambush. They further stated, on more than one occasion that based on the suspect descriptions I provided as well as what the neighbors told officers the morning of the shooting, Yusuf 4 was at the top of the suspect list.

14.     I did not learn that OPD had closed the investigation of the attempted murder on me after 63 days until 2011 when I filed a request for records pursuant to The Freedom of Information Act ("FOIA").

15.     Neither my case, nor Waajid's case, nor Plaintiff Saleem Bey's case IAD 07-0538, have ever been independently investigated or corroborated and discovery conclusively proves that none of these cases were investigated in IAD 07-0553, the France investigation, or the State DOJ investigation.

16.     Because of the lack of any progress in the investigation, on July 13, 2007 Saleem filed a complaint with the Citizens Police Review Board (CPRB) 07-0538 which resulted in IAD using the same case number for their investigation of officer misconduct. **(Exhibit 13, Bonner Decl., CRPB Complaint)** Within 14 days of the IAD investigation being opened, it was set for Administrative Closure as emails were sent to several department leaders to sign off on the Admin Closure.  I was never interviewed by IAD or the CPRB related to 07-0538.  The case was closed and Saleem was notified by mail within 47 days in a letter signed by Lt. David Downing. Per Department General Order (DGO) M-3 Complaints against Departmental Personnel or Procedures, Section II. B. 5., *"Complainant fails to articulate an act or omission which, **if substantiated**, would constitute an MOR violation..."* **(Exhibit 43, Bonner Decl., DGO M3)**

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                    14-cv-1626- JSC**

The inaction of Brock was in fact "substantiated" as an MOR violation in 2014 when Sgt. Griffin sustained in IAD 13-1062. **(Exhibit 26, Bonner Decl., IAD Investigation Report)**

17.     On August 2, 2007, reporter Chauncey Bailey was murdered.  At the time of his murder, Bailey was working on a story related to OPD's aid to Yusef Bey IV in his attempts to take control of YBMB.  Saleem and I were Bailey's sources for the story.

18.     OPD closing my case in 63 days, had the intentional affect of benefiting the OPD aided shooters, by not pursuing leads and leaving the illegal high powered attempted murder weapons within the community in the hands of the subjects who tried to kill me. This shows a willful disregard for my life and public safety by OPD, that came to a completely foreseeable reality of depraved heart murder as at least 3 community men lost their lives to the same young persons that OPD purposely left on the street knowing they were targeting me, my family, and Plaintiff Saleem Bey. During this period, I remained in contact with Rachal even though I had already left the state for my family's safety. Begging OPD special undercover officer Rachal to follow up on leads and risking harm to my family as well as myself, I continued to contact individuals so that I could pass on intelligence to Rachal. All I ever asked for continuously from him and the FBI was a proper and honest investigation. Rachal never even had the decency to clue me in to the fact that my case had been closed after only 63 days without investigation.

2011 IAD VERSION OF 0F 07-0538

19.     In or about September 2011, Plaintiffs filed another CPRB complaint. Per policy, CPRB forwarded a copy of the complaint to IAD to receive and review. The IAD case was given the same number as the 2007 case, IAD 07-538. The allegations appeared to "reiterate [Plaintiffs'] displeasure about how OPD handled [the 2004 Waajid] kidnap/murder case," and that the 2007 IAD complaint was closed as a service complaint. It also contained new allegations regarding "cases handled by OPD Sergeant Longmire." IAD treated the complaint as a duplicate complaint, already addressed in prior cases, and the complaint form and related documents were placed into the IAD 07-0538 case file.

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                                    **14-cv-1626- JSC**

20.    We decided to file the 2011 claim after reviewing the DOJ report based on the independent review of the investigation into the Chauncey Bailey murder.  OPD had informed us that our concerns were to be addressed by the DOJ investigation.  On reading the report, which we were not able to access until 2011, we found that there was no mention of us or our concerns in the report.  There was no mention of Waajid's murder or my attempted murder in the report. Further, there was no mention of the failure of investigation of 07-0538.  Based on these failures it was clear to Saleem and me that OPD did not address any of the concerns we raised in 07-0538 in the DOJ investigation.  I was never contacted after filing the 2011 CPRB report.

21.    On July 22, 2013, I spoke with Richard Cashdollar, assistant to Compliance Director Thomas Frazier, and lodged a verbal complaint against OPD for not investigating the crimes against John and Waajid Bey and for refusing to investigate IAD 07-0538. I requested that the newly appointed Compliance Director, to reopen IAD Case No. 07-0538. (TAC at 4:20-24.)

22.    Shortly after meeting with Cashdollar, Officer My Nguyen contacted us regarding IAD 13-1062.  On July 30, 2013 we sent a letter to then Deputy Chief Danielle Outlaw encouraging her to move the process along. We sent a letter to Outlaw because we trusted her leadership and believed she would take our concerns seriously. **(Exhibit 29, Bonner Decl., Outlaw Email)**

23.    On November 6, 2013 and again based on a total lack of progress into the investigation into our complaints, we filed another CPRB complaint and specifically named Lt. Oliver Cunningham and Chief Sean Whent.  **(Exhibit 20, Bonner Decl., CPRB Complaint).** We named Cunningham because of his failure to investigate 13-1062 up to that point and we named Whent because he was involved in IAD 07-0553 but failed to include 07-0538 in the investigation.

24.    During a 2013 meeting with IAD Capt. Oliver Cunningham, he stated to us regarding the newly opened IAD case 13-1062 that "everyone in the city was watching this (investigation)" and that the current Chief of Police, Sean Whent and the current Deputy Chief of Police, David Downing were recused and would not take part in this new investigation because they could be named as subjects of investigation due to prior involvement in the earlier investigations.

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                    **14-cv-1626- JSC**

25.     In November 2013 I met at the Alameda County DA's office at 1225 Fallon St. with former OPD officer, currently DA Investigator Bruce Brock. Brock was named in IAD No. 07-0538 because of his lack of investigation into my attempted murder. During the meeting, Investigator Brock admitted that he had in his possession the initial file of the failed criminal investigation into the 2005 attempted murder, case No. 05-034462. On November 13, 2013, after this meeting, I sent an email to Officer Griffin communicating my outrage regarding the whereabouts of the police report in my attempted murder case No. 05-034462.

26.     Shortly thereafter, we followed up with OPD Griffin and stopped by the 16th Street IAD headquarters in an attempt to ascertain progress in our case. Griffin, as he had in our first face-to-face meeting, instructed us to meet with him outside the IAD offices. In meetings with OPD Officer Nguyen and also with IAD Capt. Cunningham, we met inside the building. By wanting to meet outside we observed that Griffin did not feel comfortable meeting inside the building where other officers could hear or where there was the potential for being recorded. We sat on a bench outside and approximately 50 feet away from the offices and Griffin began to explain the difficulty of the case due to the amount of records, etc.  Griffin also stated that there was evidence of "gun walking," the law enforcement practice of not arresting violent criminals with guns so that they could track the carnage violent criminals perpetrate on their communities. The policy had lost favor because of the innocent people murdered by known violent murderers in their communities.  The reference to "gun walking" in our case was the weapon or weapons used in my attempted murder, Waajid's murder, Cameron Cooks car being shot, a car-jacking while making terrorist threats, the vandalism of two liquor stores, the murder of Chauncey Bailey and the numerous weapons confiscated in the August 3, 2007 pre-dawn raid on YBMB.

27.     On March 18, 2014, Saleem and I were called to meet with Deputy Chief ("DC") Danielle Outlaw and IAD Captain Oliver Cunningham at the IAD offices in the Oakland Police Department. During this meeting, DC Outlaw informed us that IAD 13-1062 investigation was complete, but that OPD could not locate any files associated with the OPD investigations into the attempted murder of John Bey and the murder of Waajid Bey. We immediately told Captain

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**                                    **14-cv-1626- JSC**

Cunningham and DC Outlaw that recently, on November 12, 2013, we had met with Ex-OPD Bruce Brock at the Alameda County District Attorney's office located at 1225 Fallon Street in Oakland regarding the investigative files of the attempted murder. We told DC Outlaw and Captain Cunningham that, contrary to their assertion that the investigative files were missing, Ex- OPD Brock admitted to us that he had taken the files with him when he left OPD and had the files in his possession.  Both DC Outlaw and Captain Cunningham expressed surprise upon hearing this information.

28.     On February 6, 2015, Saleem and I met with AC Figueroa and Sgt. Holly Joshi regarding the incomplete investigation of our IAD Complaint 13-1062. OPD Joshi made the statement that the March 18, 2014 Resolution Letter was incomplete. Figueroa told us that the letter was incorrect and he requested two months additional time in order to release a corrected letter. The Bey's agreed to the request for additional time.  About a week before the two-month deadline, Figueroa told us in a telephone call that he would not have the letter, but did agree to meet with us again. On April 3, 2015, we met with AC Figueroa and Lt. Roland Holmgren at the OPD Executive Offices. During this meeting, Lt. Holmgren agreed that an independent investigation of all the underlying cases was the best course of action. Additionally, AC Figueroa agreed that the 13-1062 letter needed to be corrected. OPD has not contacted us in over two years, nor conducted any further investigation to date of IAD no. 13-1062.

29.     At no time during our meetings with Figueroa did he tell us that on 6/20/11 Figueroa himself signed to administratively close an updated IAD complaint by Ali Bey. **(Exhibit 4, Bonner Decl., Figueroa Depo 101:8 – 123:24)** When IAD 13-1062 was opened by Compliance Director Thomas Frazier's office at the Direction of Mr. William Cashdollar, he contacted Asst. Chief Figueroa as the highest ranking officer who was thought not involved in any of the previous cases where Plaintiffs were involved **(Exhibit 30, Bonner Decl., Citizen Complaint).** The discovery document shows that Asst. Chief Figueroa had been involved in the disparate treatment of Plaintiffs as Black Muslims by agreeing to admin close the 2011 IAD complaint on its face and to untruthfully claim that matters concerning Plaintiffs were investigated by the DOJ.

30.     Currently OPD has not turned over any records from Andre Rachal or any of the meetings he attended and they have not acknowledged his involvement as a so-called Muslim expert. Rachal served as the liaison between OPD and members of the Joint Terrorism Task Forces, (JTTF) to as the broader Muslim Extremist theory was explored relating to Plaintiffs. Griffin makes note of a digital recording of Ali Saleem and John Bey taken by IAD Capt. Cunningham. **(Exhibit 17, Bonner Decl., DOJ Report)** In addition, Defendant has failed to turn over any OPD documents related to OPD surveillance of the 36 year old Black and Muslim community in the Golden Gate District of Oakland. Plaintiffs have copious amounts of evidence showing OPD engaging with the JTTF to run operations against Black Muslims, but no documents have been produced by Defendant. Failure to produce Discovery documents known to be in the possession of the Defendant is grounds for rejecting the Defendant's Motion for Summary Judgment.

31.     OPD has not turned over any records related to either file connected to the disappearance and murder of Waajid Bey. When IAD investigations were conducted, there were never any records to review. OPD claimed in a 2011 records request that I filed at the Police Accountability Board (PAB) that all records were lost.

32.     On June 27, 2019 the Oakland Police Commission voted to approve funding to perform an independent investigation into 07-0538 and 13-1062.

//

//

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                    **14-cv-1626- JSC**

1    I declare under the penalty of perjury that the foregoing is true and correct, except those matters
     stated on information and belief, and as to those matters I believe them to be true.
2

3    Dated: July 9, 2019

4                                              _____
5                                              John M. Bey

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                                                                        13

**DECLARATION OF PLAINTIFF JOHN MUHAMMAD BEY IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**                                    14-cv-1626- JSC