CHARLES A. BONNER, ESQ. SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ALI SALEEM BEY and JOHN MUHAMMAD BEY,**<br><br>        **Plaintiffs,**<br><br>  vs.<br><br>**CITY OF OAKLAND, et al.,**<br><br>        **Defendants** | Case No.: **14-cv-01626-JSC**<br>**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date: JULY 29, 2019**<br>**Time:**      **10:00 a.m.**<br>**Courtroom:**   **F**<br>**Place:**      **15th Floor**<br>           **450 Golden Gate Ave.**<br>           **San Francisco, CA**<br><br>**Judge: The Hon. Jacqueline S. Corley** |

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**       Case No.: 14-cv-01626-JSC

I, Ali Saleem Bey declare as follows:

1. I am a citizen of the United States and I am a Plaintiff in this action, along with John Muhammad Bey.

2. I have personal knowledge of the matters stated herein and would testify to the same if called to do so in a court of law, except as to those matters stated upon information and belief, and as to those matters, I am informed and believe them to be true and correct to the best of my knowledge.

3. Co-Plaintiff John Muhammad Bey and I are businessmen, family men and community leaders in the Oakland Black and Muslim community. We prayed and fellowshipped every Sunday with other Muslims and persons from all walks of life at 5832 San Pablo Ave. in the Golden Gate District of Oakland Ca. Neither John nor I have a criminal record nor have we ever engaged in "terrorist" activities. Both John and I volunteer, giving back in the Community school and mentoring young black men most at risk. Politically, we were known and respected throughout Alameda County and the Bay Area by representative politicians at all levels, including local, county, state, and federal as positive Black and Muslim community leaders. Our reputations in City Hall in the City of Oakland, has been excellent across multiple Administrations and City Councils. We are members of a community of law abiding persons that numbered in the hundreds that included individuals, families with children, and entrepreneurs. For over 36 years our community built and established the Golden Gate District into the Black Muslim equivalency of Oakland's Chinatown or Fruitvale Districts as they relate to Asian and Latino citizens of Oakland. We are well known vocal advocates of Police reform for the Oakland Police Department (OPD) based upon a history of oppression of communities of color in Oakland.

4. 2005 - After Waajid's murder, John and I continued to conduct our own investigation being highly unsatisfied with the OPD investigation of Waajid's murder. OPD Investigation didn't appear to be doing anything or questioning anybody. We began to see a pattern of what appeared to be OPD enabling of crimes by the same people that OPD said they knew murdered Waajid Bey for his business. OPD having done nothing for over a year emboldened Waajid's

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**　　　　　　　　　　　　　　　　**Case No.: 14-cv-01626-JSC**

murderers and on June 17th 2005, the same gunmen associated with the murder of Waajid Bey, then attempted to murder John Bey, all while under 24 hour OPD surveillance. Again, just like in Waajid's murder, OPD claimed no knowledge or evidence tying to crimes against Black Muslim leaders. Witnesses identified Antar Bey and his younger brother Yusuf Bey 4 as lead suspect and lead shooter of Plaintiff John Bey **[Exhibit 10, Bonner Decl., Police Reports].**

5.  2006 - Yusuf Bey 4 [YB4], now being mentored by OPD Longmire (**Exhibit 28, Bonner Decl., Joyner Depo 203:15-204:13**), is charged with and jailed for attempted murder in San Francisco. In jail he meets Andre Brousarde and Antoine Mackey. YB4's family fraudulently refinances Waajid's assets to make bail, his fourth concurrent bail. YB4 then goes on a felony Crime Spree with multiple arrests and "magic" re-bails.

6.  October 26th 2006, YB4 based upon zero business experience, fails to make payments on the money stolen out of Waajid Bey's assets. Signing as the legal CEO/President of Your Black Muslim Bakery [YBMB], and with OPD knowledge, YB4 secretly files a fraudulent federal Bankruptcy on murder victim Waajid Bey's corporation, Your Black Muslim Bakery, all while under investigation and 24-hour surveillance by OPD.

7.  2007 - January 2007, YB4 is arrested with a Tech 9 sub machine gun, for stealing condoms from Walgreens and is released on bail. May 2007, YB4 and his gang kidnap and torture several Black ladies to extort a local drug dealer. Plaintiffs continue to complain to OPD about the "unusual in and out of jail" nature of YB4, and how that and a failure to investigate Waajid and Plaintiff John Bey's cases continues to pose a danger to Plaintiff Saleem Bey and Black Muslim Plaintiffs and their community. July 8th 2007, Odell Roberson is gunned down by the same shooters and with the same weapon as in Plaintiff John Bey's 2005 case. July 9th 2007, Plaintiff Saleem Bey meets with Mayor Dellums' office to bring evidence of OPD misconduct. Mayor's lawyer advises I go to the Alameda County District Attorney's office [DA] and the Citizens Police Review Board [CPRB]. July 12th 2007, I notice the DA. That night Michael Wills is gunned down by the same shooters that attempted to kill John Bey and with the same weapon. July 13th 2007, I file IAD 07-0538.

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                                 **Case No.: 14-cv-01626-JSC**

-2-

1  **8.**     IAD 07-0538 was the July 13th 2007 police Misconduct complaint that I filed based upon Oakland Mayor Dellums' office advice, after bringing Defendant evidence of OPD misconduct connection to Murder and Fraud in the Black Muslim community and specifically the Waajid high profile murder case, and the Plaintiff John Bey high profile attempted murder case. Defendant Mayor's office instructed me to file a criminal complaint with the DA office regarding OPD misconduct, and a misconduct complaint against OPD with the Citizens Police Review Board, which I did. On July 12th 2007, [the same day Michael Wills was gunned down] In the letter Plaintiff John Bey and myself gave to the DA, it clearly states "*Sir, Our family has met numerous times with the Mayor's office in an effort to forward our 3 plus year investigation into both the unsolved kidnapping and murder of Waajid Bey and the unsolved ambush attempted murder of John M. Bey. The Mayor's attorney looked at the evidence we presented as it relates to this case and his legal opinion was the District Attorney's office and the police review board were the proper places to present our evidence.  Summary facts narration: Waajid Bey rightful CEO of Your Black Muslim Bakery was murdered February 27th 2004. From that day forward his family has never stopped searching for his Kidnapper killers and will not until justice is served*" "*We now conclusively have known Murder and concrete Fraud related with the victim's name on it in four calendar days proximity*". (**Exhibit 14, Bonner Decl.,  Letter to DA**)

**9.**     2018 - Discovery now proves that OPD Longmire was having an uninvestigated relationship with Antar Bey, which OPD admittedly knows Antar Bey murdered Waajid Bey for his business. (**Exhibit 6, Bonner Decl. Longmire Interview**)  OPD admits they knew Antar Bey was attacking Plaintiffs as "old guys" against his take over by murder, and based upon OPD witness reports, Antar Bey was named specifically as a lead suspect. (**Exhibit 10, Bonner Decl., Police Reports**) "A lead" that IAD Griffin admits was never followed up on. "[E]*ach of the [investigative] steps should have been taken…*", before prematurely closing Plaintiff John Bey's 2005 attempted murder case, after only 63 days. (**Exhibit 26, Bonner Decl., IAD Report**) Closing a case to benefit the criminal that committed the crime, is a State felony and Class 1 violation of MOR 370.72, compromising criminal cases. OPD IAD 13-1062 in 2014 confesses to

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                                                                **Case No.: 14-cv-01626-JSC**

a less severe MOR 314.39 systemic department wide failure to investigate on the John Bey case, while IAD failed to investigate the criminal actions of OPD that led to the failure to investigate.

**10.** Plaintiff IAD 07-0538 was closed as a service complaint in violation of OPD IAD investigative procedure Policy, starting Section E **Complaint Investigative Procedures for IAD** - Number 3, and outlined in federal consent decree standards in *Allen vs. City of Oakland* Settlement Agreement Re: Patterns and Practice Claims Task 5, Number 3 states: "***in each [IAD]complaint investigation OPD shall consider all relevant evidence, including circumstantial, direct and physical evidence, and make credible determinations***". Factually, OPD Griffin states the 2007 administrative closure of IAD 07-0538 was proper, **SOLELY** based upon my 7 written lines on the CPRB lobby intake complaint form, that IAD then labeled my "memorandum", "***There is no Manual Of Rules [MOR] violation stated in the memorandum***". (**Exhibit 26, Bonner Decl., IAD Report**) This Defendant IAD investigative Policy clearly establishes that, IAD Griffin, approving the closing of my IAD 07-0538 based **SOLELY** on 7 handwritten lines on the lobby complaint intake form, violates all tenants of Defendant's written policy that IAD investigators, "*shall consider all relevant evidence…*"  The status of the complained about cases [Waajid Bey and John Bey] is most relevant, to establish whether my complaint about OPD's mishandling of these cases is a MOR Class 1 [most Serious] or Class II offense. Factually, at the time of the administrative closing of IAD 07-0538, Plaintiff John Bey's case had been OPD misconduct when closed without investigation [MOR 314.39,370.72] for over 2 years.  Section E Number 5 States: "***OPD shall resolve each allegation in a complaint using the "preponderance of evidence" standard***". Factually, the preponderance of evidence cannot be found, nor established in my 7 handwritten lines on a lobby intake form, as IAD 13-1062 investigator Griffin gave as reason to close the investigation of IAD 07-0538 which involves then named current employees, and IAD Griffin's superiors, Chief Whent, Assistant Chief Figueroa, Deputy Chief Downing, and Deputy Chief Outlaw as all involved in concealing MOR misconduct related to Black Muslim cases. IAD Griffin clearly states his reasoning in closing the investigation of IAD 07-0538 for the 3rd time by IAD in 13-1062, "***There is no Manual of Rules violation stated in the complaint memorandum***". Again establishing, that IAD

13-1062 Griffin, again, in a repeating pattern and practice of deliberately diminished services to Black Muslims, again failed [2004, 2005, 2007, 2011, 2013, 2014, 2015, 2016] to investigate IAD 07-0538 and, is in violation of OPD IAD investigative Policy Section E numbers 3 and 5.

**11.** Factually, IAD Griffin's admission that he relied solely on the 7 handwritten lines in the 2007 CPRB memorandum, to administratively close my IAD 07-0538 represents "short shrift" treatment, proving that IAD Griffin short shrifted Plaintiffs' on re-investigation of IAD 07-0538, with deliberate indifferent service. IAD Griffin, in admitting to relying solely on the memorandum, did not, in fact follow OPD policy, by attempting to find "***all relevant evidence***".

**12.** My 7/12/07 letter to the DA office clearly states that it is **OUR FAMILY** investigation, meaning, my "***very involved investigation***" handwritten intake/IAD memorandum statement, was referring to **OUR FAMILY** investigation, not the sufficiency of OPD's investigation "*On the face of it, this connection is enough to investigate seriously.*" "*Yet in combination with OUR FAMILY investigation this evidence continues to support our thesis that these are related crimes*" and "*We know that the following investigations are and have been active in direct relation to this case, OPD 2004- present, Multiple Federal Agencies – FBI, AFT 3/04 – present,*"

13. On July 16th 2007, three days after I filed IAD 07-0538, YB4 magically walked out of Solano County court, even though Plaintiffs personally noticed OPD that YB4, wanted on warrants, would be in court. OPD ignored the warrants and failed to arrest the attempted murderer of Plaintiff John Bey. The next day, July 17th 2007, I gave the story of OPD misconduct related to community murders and shootings to Black Journalist Chauncey Bailey, who wrote the story, specifically naming Plaintiffs, Waajid Bey, the illegal Bankruptcy, and OPD aid to YB4. Sometime between 7/17/07 and 8/1/07, OPD changed the date of the arrest of YB4 to 8/3/07, the day after the 8/2/07 murder of Bailey by the same shotgun used against Plaintiff John Bey 2 years earlier, and lied about it to the public **(Exhibit 15, Bonner Decl., CPRB Follow-up)**

14. 2009 - Defendant City of Oakland contracts Wendell "Pete" France to conduct an independent investigation of OPD Longmire and Joyner's relationship to YB4 and his crimes.

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                          Case No.: 14-cv-01626-JSC

-5-

1  Defendant Mayor Dellums also asks the State DOJ to conduct a "parallel" investigation of
2  OPD's handling of the Bailey Murder investigation.

3  15.   In 2009, during the IAD 07-0553 investigation, Alameda County DA Lamiero
4  [prosecuting Yusuf Bey 4] and investigator, came to my residence and interviewed myself and
5  my wife. We complained about OPD misconduct and failure to hold Officer Longmire
6  accountable for aiding Yusuf Bey 4, and holding his OPD supervisors [Ersie Joyner and Chain of
7  command] accountable for recklessly endangering our lives. DA Lamiero stated that he had
8  "**zero confidence**" in OPD and DOJ investigation [IAD 07-0553] of Chauncey Bailey's murder,
9  and OPD's aid to Yusuf Bey 4.

10 16.   Both investigations return sustained finding that OPD Longmire was compromising
11 criminal cases for YB4, a fact establishing, said OPD aid to lead shooting suspect in Plaintiff
12 John Bey's case, was to the OPD purposefully known and depraved detriment of Black Muslim
13 Plaintiffs. Defendant administration obstructed justice by concealing the extent of OPD racial
14 and religious profiling animus and M-19 MOR policy violations revealed against Black
15 Muslims, from Plaintiffs until 2018 Discovery, nine [9] whole years (**Exhibit 6, Bonner Decl.,**
16 **Longmire DOJ Interview).**

17 17.   2011 - A partial release of the DOJ report by Defendant after concealing it for over two
18 (2) years, based upon the discrimination lawsuit filed by OPD Longmire against the city.
19 Plaintiffs found "new" defendant concealed evidence of racial and religious animus, and file
20 another complaint with the OPD IAD. On September 28 2011, after reviewing the DOJ report
21 and realizing our issues and complaints had not been addressed, we filed another complaint with
22 IAD regarding the lack of investigation into Waajid's murder and the attempted murder of John
23 Bey. OPD had informed us that the complaints we raised in 07-0538 were going to be addressed
24 and made part of the DOJ report.  While the DOJ investigation was completed in 2009, we did
25 not get access to the report until 2011.  On reading the report we realized that the concerns we
26 raised in 07-0538 were not addressed by the DOJ.  After filing the 2011 complaint OPD IAD did
27 not contact nor communicate with me in any way.  Capt. Figueroa closed the 2011 complaint on
28 October 4, 2011, without ever discussing the matter with me. IAD Figueroa, IAD Outlaw, and

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**SUMMARY ADJUDICATION**                                                          **Case No.: 14-cv-01626-JSC**

IAD Supriano, re-closed Plaintiffs' 2011 complaint without investigation, concealing and ignoring the new evidence, by pretext of administrative closure.

### 2011 - Similarly Situated Occupy

18. Defendant new pretext argument is that "the volume of investigations" makes White Occupy different to Black Muslim IAD 13-1062 and related cases, not true. As I have shown, an investigation of the 2005 Plaintiff John Bey attempted murder case, closed in 63 days, under proven OPD CID pretext of "*lack of investigative leads*", would have involved the misconduct of upwards of 2 dozen OPD officers, their chain of command, all the way up through chief of police Tucker. Factually, IAD 07-0538 complaint also involved misconduct related to, multiple OPD Divisions, dozens of OPD officers, Supervisors, and Chain of Command. (**Exhibit 40, Bonner Decl., IAD Note**) IAD 13-1062 contradicts investigator Griffin, when it states "*please have the attached documents reviewed for MOR violations*". "A*ttached documents*" proves that IAD was aware of, and reviewing more than just my 7 written lines intake memorandum, as IAD Griffin purposely misstated. In fact, Exhibit 40 shows that IAD forwarded IAD 07-0538 and evidence to both the Intelligence Division and the Criminal Intelligence Division both of which were involved in the MOR misconduct violations outlined in IAD 07-0538. The multiple divisions involve dozens of officers, and their supervisor's, all failing at minimum to report MOR violations related to the premature 63 day closing and continued closed status of John Bey's case. The Chronicle Log states "7/31/07 forwarded to COP [Chief of Police Tucker] and shows that top to bottom OPD as a department was aware of my IAD 07-0538 misconduct complaint and failed to report MOR violations related to Black Muslim cases. (**Exhibit 11, Bonner Decl., Chronicle Log).**

19. Defendant's Motion for Summary Judgment (MSJ) states, "*I was invited to re-write my complaint with the CPRB and did not*", this is disingenuous. In 2007 I was interviewed by Karen Tom of the CPRB for upwards of 2.5 hours in the CPRB, where she took copious notes, a thick stack of evidence, and documents. This 2007 CPRB recording and those notes were "lost" by Defendant since 2007, and are missing from Discovery. This missing 2.5-hour interview was where I clearly outlined OPD's misconduct related to John Bey and Waajid Bey cases, and

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                                      Case No.: 14-cv-01626-JSC

1 OPD's relationship aiding the persons that committed crimes against them.  The CPRB still
2 closed my case. Therefore, it is pretext, to state CPRB closed my case based on the way I wrote
3 the seven [7] lines handwritten on the lobby intake form. The lie in the closing letter was obvious
4 to me that the CPRB was biased, compromised, and part of the OPD cover up. When I received
5 the 9/1/07 closing letter signed by IAD David Downing stating closure without investigation, it
6 was a clear waste of time to re-file anything with City Admin, OPD, IAD, or the CPRB as
7 repeated closings prove.

8 20. Plaintiffs remind the court of the Defendant's attempt at pretext in their 2016 12(b)6
9 filing, in which Defendant purposely tried to mislead the court by stating that the National
10 Security Agency (NSA) court on 5/1/12 was the sole impetus for the independent investigation
11 provided to Occupy, when in fact Plaintiffs revealed the pretext to the court, that the Defendant
12 moved of its own volition to provide Occupy related cases independent investigation. Now the
13 Defendant is attempting to cover up their attempt at pretext and moved the bar to "mass number"
14 as the difference. Plaintiffs will show conclusively that Defendant's initial actions to provide an
15 independent investigation cannot be undone, ignored, and recast to fit a new narrative by
16 Defendant, that their hands were tied by NSA court order, which again is exposed as pretext.

## BEY CASES - OPD MOR VIOLATIONS

**21.** Plaintiffs are similarly situated to Occupy in volume and complexity of misconduct cases. OPD's premature closing in 63 days of the John Bey case was a MOR 175.99 violation. OPD was using known, dangerously reckless, disregard for the safety of the surviving victim, his family, and the Black Muslim community. OPD closing this case in 63 days purposely left illegal weapons used against Plaintiff on the street, and benefitted a person attacking Plaintiffs by compromising the criminal case. Proof is established by the fact that this 2005 act led to the murders of Bailey, Roberson, and Wills by the same persons utilizing the same weapons OPD knew they had access to, before giving them aid and "special treatment" **(Exhibit 17, Bonner Decl., DOJ REPORT)**

**175.99 GROSS DERELICTION OF DUTY – Failure to use reasonable care to protect life and/or property and to safeguard the legal rights of individuals. Gross dereliction of duty is**

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**  Case No.: 14-cv-01626-JSC

1  **characterized by carelessness and a reckless disregard for the consequences of the member or employee's conduct.**

2  **22.** Defendant's one pretext is a violation of OPD Manual of Rules MOR 314.04 (**Exhibit 36, Bonner Decl., Manual of Rules**)

**314.04 CONDUCT TOWARD OTHERS – HARASSMENT AND DISCRIMINATION – Members and employees shall treat all persons with courtesy and respect.** *The Department has a zero tolerance policy for harassment and discrimination against members, employees and persons on the basis of race, religion*, **national origin, marital status, age, sex, sexual orientation, ancestry, physical or mental disability, or medical condition. The Department prohibits conduct that violates the specified City Administrative Instruction.**

23. This policy clearly debunks Defendant's "one off" pretext as a violation of MOR 314.04. Defendant has a "zero policy" of discrimination. Defendant seeks to excuse double digit examples of a pattern and practice of OPD discrimination against Black Muslims as "one offs". Defendant's pretext excuse has now been exposed as a violation of Defendant's own written policy of zero tolerance against discrimination, thus pretext.

*Any member or employee who harasses or discriminates against another member, employee, or any person, or engages in any inappropriate workplace conduct that violates City Administrative Instruction 71 shall be subject to severe disciplinary action, including discharge from the City service.*

24. 2016 the Federal NSA court's investigation of City Attorney complicity in "throwing" arbitration cases for OPD, revealed that the City Attorney is complicit in upholding OPD violations. Failure by the City Attorney office to not only report criminal violations exposed in this civil case to the DA office, but to address serial criminal violations of M-19. Instead City Attorney seeks to pass off violations of policy as "one offs", which actually violates Defendant's own policy of zero tolerance of discriminatory actions resulting in "*severe disciplinary action, including discharge from the City service."* Instead Defendant seeks to conceal this policy, and start another that excuses racism?

*Any member or employee who has knowledge that another member or employee has engaged in harassment or discrimination or inappropriate conduct that violates the specific City Administrative Instruction is strictly charged with the responsibility for reporting that conduct*

*in accordance with the provisions of Manual of Rules Section 314.48* (**Reporting Violations of Laws, Ordinances, Rules or Orders**).

25.     Plaintiffs have shown that OPD employees at a Division level, participated in repeatedly humiliating, discriminating, and slandering Black Muslims, and Black OPD officers, that racist, ignorant, and Islamophobic animus OPD employees "mistook" for Black Muslim. This is a direct admission of State Penal Code violation of CPC 13519.4[e] prohibition against racial profiling under color of law. Factually, that no other OPD employee reported this, is a clear violation of Defendant's Manual of Rules, and establishes the fact, OPD repeated discrimination against Black Muslims, was a pattern and practice, was against written policy, but existed as a "unwritten" policy of animus tolerated and upheld by OPD supervisors and rank and file alike.

**285.90 PREVENTION OF HARASSMENT, DISCRIMINATION**

26.     **AND RETALIATION – Monitoring the work environment to ensure that no one is subjected to harassment or discrimination on the basis of protected status or to retaliation for having complained about or having served as a witness in any proceeding regarding a Manual of Rules violation or violation of a specified City Administrative Instruction. Ensuring that harassment, discrimination and retaliation are promptly reported, investigated and effectively remedied.**  (Exhibit 36, Bonner Decl., Manual of Rules)

27.     OPD is in violation of MOR 285.90 for allowing white officers and supervisors, to target harass and discriminate against Black officers, based upon a racial and religious profiling animus that led to erroneous "perception" of Black officers inside the OPD headquarters, as being associated with the protected class of Black Muslims, being profiled and discriminated against. Using the Bulletin board to post disparaging pictures of Black Muslims and making religious based jokes against Black Muslims is admitted by Defendant.

**314.07 CONDUCT TOWARD OTHERS – DEMEANOR – Members and employees shall perform their duties attentively and courteously, avoiding rude, threatening, harsh, insulting, insolent or demeaning language, and they shall maintain a professional bearing regardless of provocation to do otherwise.**

28. Defendant admits that Plaintiffs repeatedly complained about "hostile, demeaning, and dismissive" attitudes and language used by OPD against Plaintiffs against Plaintiffs as known Black Muslims, this is a violation of OPD conduct toward others – Demeanor

**<u>314.38 OBSTRUCTING THE INTERNAL AFFAIRS PROCESS – No member and employee shall obstruct, impede, delay, or undermine the internal investigation process in either words or actions.</u>**

29. Failure by OPD to turn over IAD 07-0538 evidence related to the Chauncey Bailey murder investigation, IAD 07-0538 involved all subjects named in Bailey's never printed story. Plaintiff Saleem Bey, was the source of the story that Bailey was murdered for, John Bey and Waajid Bey cases were subjects, and the takeover of the Bakery by OPD using Antar and his younger brother Yusuf Bey 4. All persons involved in these cases, and all OPD officers involved in misconduct related to IAD 07-0538 were also involved in, and related to, the IAD 07-0553 Bailey murder investigation, that proved that OPD Longmire compromised criminal cases for Yusuf Bey 4. This act of obstructing the internal affairs process, was committed by IAD Sean Whent and IAD David Downing, this act was known by OPD chain of command to greatly endanger Plaintiffs lives and exponentially increase the danger in the Black and Muslim community [175.99 Gross Dereliction of Duty]. As proof, same suspect involved in the John Bey attempted murder was convicted of murdering Chauncey Bailey, Odell Roberson, and Michael Wills with the same weapons.

**<u>314.48 REPORTING VIOLATIONS OF LAWS, ORDINANCES, RULES OR ORDERS – Members and employees who become aware that other members or employees violated laws, ordinances, rules of the Department, or disobeyed orders, of a Class I violation or any Class II violation which indicates a pattern of misconduct of which they are aware, shall within 24 hours or sooner, if practical, report the offense, orally or in writing, to his/her supervisor or the Internal Affairs. Discipline up to and including termination will be assessed for failure to comply with the provisions of this section</u>**. (Exhibit 36, Bonner Decl., Manual of Rules)

30. Defendant, instead of excusing OPD racism as "one offs", should be pursuing said officers for discipline for failing to report MOR violations of "314.04 discrimination" "285.90

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                                                                **Case No.: 14-cv-01626-JSC**

-11-

Prevention of Harassment" and "314.07 Conduct Toward Others – Demeanor" at minimum, that Plaintiffs have produced and that Defendant readily admits. Instead of taking action as Defendant policy dictates Defendant seeks to excuse policy violating actions by OPD. This irrational support of OPD racism in the face of clear Defendant policy against such actions, upholds the status quo of racist and Islamophobic OPD and encourages the continuation of Discrimination against Black Muslim Plaintiffs, is scofflaw of NSA Federal Consent Decree.

**COMPROMISING CRIMINAL CASES – Members and employees shall not:**
**A. Interrupt, attempt to interrupt, or improperly influence the legal process;**
**B. Engage in any activity with the intent to interfere with a criminal investigation, charging, or prosecution of any case; or C Fail/refuse to cooperate with an official criminal investigation upon direction of a competent department authority.** (Exhibit 36, Bonner Decl., Manual of Rules)

31. OPD Longmire was sustained for MOR 370.72, compromising criminal cases for Yusuf Bey 4, who was lead suspect in Plaintiff John Bey's attempted murder case. OPD closed John Bey's case in 63 days, this directly benefited lead suspect Yusuf Bey and his brother Antar Bey and compromised the criminal investigation of the John Bey case. Defendant's PMK testified under oath that closing in 63 days is "quick" for a case like that. Supervisor Ersie Joyner testified under oath that, the stated OPD pretext for closing Plaintiff John Bey's case was, "*lack of investigative leads*" was false, thus pretext, and that all the lead examples available before closing John Bey's case, were in fact legitimate leads. Closing John Bey's case in 63 days was purposeful, and directly benefited the lead suspect Antar Bey, that OPD Longmire was having an uninvestigated relationship with, during the same time period OPD closed the John Bey case. OPD then lied for 6 years, stating that they were investigating John Bey's case [MOR untruthfulness]. OPD Compromised the John Bey criminal case when OPD stopped investigating John Bey's attempted murder in 63 days, letting witnesses go unfollowed up, leads went cold, illegal weapons were left on the street in the hands of known shooters, persons who committed crimes were not being investigated and continued to commit crimes against Plaintiffs.

**370.81 ASSISTING CRIMINALS – Members and employees shall not disclose to any person attempting to commit a criminal act or who may be engaged in criminal activity any information that might assist him/her in committing a crime, evading arrest or disposing of evidence of any unlawful act.** [BEY00402]

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**   Case No.: 14-cv-01626-JSC

32. The DOJ report detailed multiple instances of OPD Assisting Criminals to the detriment of Plaintiffs. Longmire was caught tampering with evidence to benefit Yusuf Bey 4. Longmire was also caught supplying information to Yusuf Bey 4 in violation of 370.81. OPD Longmire's uninvestigated relationship and communication with John Bey case lead suspect Antar Bey.

**398.80 TRUTHFULNESS – Members and employees are required to be truthful at all times whether under oath or not, except when necessary in the performance of official duties. Such exceptions shall be documented on the appropriate police report(s).  (Exhibit 36, Bonner Decl., Manual of Rules)**

33. Had OPD IAD investigated my IAD 07-0538 complaint regarding the status of the John Bey case, IAD would have discovered a multitude OPD officers committing State crimes and MOR violations. Defendant IAD 07-0538 "administrative closing" pretext is exposed, by the fact that every Division forwarded my 2007 complaint was involved with the John Bey case. The Criminal Intelligence Division [CID] closed and criminally compromised [370.72] John Bey's case in 63 days and therefore knew this but did not respond to IAD. OPD Intelligence Section [IS] was involved with both Waajid and John's case and as a matter of policy reported directedly to the Chief of Police Wayne Tucker, who knew of John Bey's case status because he did not assign the Targeted Enforcement Task Force [TEFT] OPD Ersie Joyner was Supervisor of the TETF and knew about John Bey's shooting, the TEFT was a task force that specialized in gang street shootings like John Bey's case, but [Black Muslim deliberate diminished service] were not assigned by the Chief, after OPD secretly closed John Bey's case in 63 days to benefit the OPD aided shooters **(Exhibit 2, Bonner Decl., Joyner Depo pgs. 54-55, pg. 29 L7-19, pgs. 14-15)**. All were involved in the secret closing and all were forwarded a copy of IAD 07-0538 and decided in conspiracy to close and bury the known MOR violations in IAD 07-0538.

### Similarly Situated Established by Exposing Defendant Pretext

34. First, the Defendant produced a PMK who was not assigned to Occupy at the point in 2011 time in question, nor was the Defendant PMK involved in any way with the Defendant's prior 12/19/11 hiring of, and management of, the independent investigator. This is the same Pretext game Defendant was exposed as trying to pull on the Court in 2016 Defendant's 12(b)6 Motion to dismiss. Reminding the Court that Defendant attempted to deceive the Court into

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                               **Case No.: 14-cv-01626-JSC**

-13-

thinking that the assignment of the Independent Investigator of Occupy was based upon the May 1st 2012 NSA Court order. This was exposed as pretext when Plaintiffs established that Defendants moved under their own volition six [6] prior [not the stated 5/1/12 NSA Court order] to hire an independent investigator for the clearly stated reasons, which do not include "volume of complaints" as a reason to hire an independent investigator in December 2011.

**IAD 13-1062 IS STILL INCOMPLETE**

35.     2015 -IAD 13-1062 investigation is still incomplete as of this reading, a. Figueroa admitted in the April 2015 meeting between Plaintiffs and Assistant Chief Figueroa who was given authority over IAD 13-1062 investigation opened by the NSA Federal compliance director office, b. Figueroa also admits in the April 2015 Defendant Public Safety meeting that IAD 13-1062 is incomplete, c. Figueroa and Outlaw have conflicts of interest having closed IAD 07-0538 without investigation in 2011 d. **(Exhibit  26, Bonner Decl., IAD Report)** IAD Griffin admits that "no interviews and no case files were found during the "investigation" of IAD 13-1062.

36.     This establishes that Black Muslim cases are similarly situated to Occupy, even by Defendant's definition. "IAD's reason for seeking outside investigators was the sheer volume of complaints. (Id., ¶¶ 4-5.) [Def MSJ Page 15 L20]. **(Exhibit 53, Bonner Dec., Photos of John Bey Crime Scene)** Plaintiffs through 2017 Discovery [concealed for 12 years from Plaintiffs], have proven that over a dozen officers and their chain of command were involved in "just" the misconduct of closing John Bey's attempted murder case in 63 days [PMK states "63 days is Quick to close a case like this"]. OPD's relevant "out of the ordinarily quick" closing of Plaintiff John Bey's case, is a fact that is missing from the Defendant's Motion for Summary Judgement, constituting "concealment of facts" thus pretext. Starting in 2005 OPD command in conspiracy, concealed Plaintiff's Crime scene photos from Plaintiffs for over 12 years, said photos now reveals that a crew of OPD crime scene technicians were also on scene, adding to the volume of OPD employees involved, just like similar situated Occupy as posed by Defendant as pretext.

37.     The words "systemic" and "entire department" also exposes the Defendant's "one off" excuse as clear pretext. Most heinously, the Defendant Administration has seen more Discovery documents than the Police Commission, and yet still maintains a "no discrimination" pretext by

OPD, this is more evidence of Defendant Administration's role in the [1985] conspiracy to cover up criminal OPD racial and religious animus based disparate treatment of Black Muslims. Defendant's "one off" pretext takes a suspension of reality in the face of multiple independent bodies acknowledging that there are OPD racial and religious discrimination violations of DGO M-19 and a need to independently investigate OPD misconduct related to IAD 13-1062.

### Defendant Discrimination Independently Established

38.     2016 The City of Oakland voters, approved by a 2/3 "super majority" to change the charter of the City of Oakland to, take the power away from the City administration, who independent report after report establishes is the reason for noncompliance and creation of an OPD independent oversight Commission called the "Oakland Police Commission" [OPC]. The creation of this Commission was in response to over a decade and a half of failed OPD discriminatory policing reforms that the Defendant City of Oakland negotiated and agreed to inter into and abide by a Federal Consent Decree to come into compliance with nonracial profiling discriminatory Constitutional Policing, specifically in the Black communities of Oakland. As of the reading of this, OPD and The Defendant City of Oakland have been scofflaw of the agreed OPD reforms for 16 years to the detriment of Black citizens of Oakland, which clearly underscores the need for said Commission.

39.     In March 2019 based upon new evidence revealed in *Bey vs. Oakland*, the Oakland Police Commission felt strong enough about the newly revealed evidence and moved to officially notice the NSA court, of a need for investigation of IAD 13-1062.  **(Exhibit 27, Bonner Decl., OPC NSA Notice New Evidence)** The OPC also noticed all Defendant City Council members, and the NSA Federal Monitor of the need for independent investigation of IAD 13-1062, IAD 07-0538, and IAD 16-0147.

**40.**     All these cases, Plaintiff have argued, deserve equal treatment of an independent investigation. This action further corroborates Plaintiffs' claims of discrimination by OPD. Just sending a letter noticing the Federal NSA court of new racial profiling evidence against OPD was not enough, on Thursday June 27th 2019 the independent "of the Defendant" Oakland Police Commission voted to hire and retain via contract, an independent investigator based upon "new

**PLAINTIFF ALI SALEEM BEY DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**                                                                 Case No.: 14-cv-01626-JSC
-15-

evidence of racial and religious profiling exposed in Discovery in *Bey vs. Oakland*". **(Exhibit 44, Bonner Decl., OPC Police Comm. Minutes)**

### Defendant "one off" pretext is a violation of Defendant's own policy

**41.** Defendant is in violation of their own Policy [M-19] regarding racial and religious profiling. Defendant attempts to overwhelm the Court with so many instances of OPD racial and religious bigotry by OPD against Black Muslims, then state a "one off" pretext excuse. Defendants' own M-19 policy prohibition against Profiling states a zero tolerance policy, not a acceptable pattern and practice of "one off" racist policy as applied unequally to Black Muslims: **(Exhibit 33, Bonner Decl., DGO M-19)**

  A. "*whenever our practices are, or perceived to be biased, unfair, or disrespectful, we lose public trust and support and diminish our effectiveness*".
  B. "*Whether we as individual members agree or not, we, as an organization, must recognize that this concern exists and be responsive to it*"

42. Defendant's "one off" defense is in direct violations of OPD M-19 Policy stated in A and B. Defendant cavalierly dismisses well over a dozen [double digit] examples given by Plaintiffs of biased, demeaning, and disrespectful, Islamophobic, and racist talk by OPD employees regarding Black Muslims. Defendant's own written policy states "**WHENEVER**" [OPD] practices are, or, even are perceived to be bias, unfair, or disrespectful", M-19 policy states, the known and logical outcome will be, the lost of public trust and diminished effectiveness.

43. The M-19 policy states "WHENEVER" which means each and every time, racism is OK ZERO amount of times, and NO "one offs" are acceptable, WHENEVER is ANY time it's done, and EVERY time it's done. This exposes Defendant's "one off" defense as pretext, M-19 policy clearly doesn't make any allowances for Defendant's "one offs" or "any offs" for that matter. Defense is exposed breaking its own M-19 policy, and thus accordingly Defendant's "one off" racism by OPD against Black Muslim pretext is exposed.

### More "One Off" disparate treatment of Black Muslims Pretext

44. https://www.oaklandca.gov/news/2016/mayor-libby-schaaf-to-provide-update-on-oakland-police-department-matters This article from Defendant's own website shows Defendant Administration acting swiftly [following M-19 policy "Being responsive"] and decisively to

investigate **A FEW** "racist texts" by **two OPD officers**, and at the same time excusing double digit examples of officers and their supervisor's, openly [Department wide = Culture] participating in repeated instances of racism and religious animus against Black Muslims. Defendant Mayor Libby Schaaf quote "**Mayor Schaaf also announced that the City of Oakland is on the verge of closing an investigation that centers on racist text messages sent by police officers.**" "**"As a Mayor of Oakland I am here to run a police department not a frat house," said Oakland Mayor Libby Schaaf. "While these reports of misconduct are disturbing, what is positive is that the measures and structures we have put in place to root out this type of behavior, are working. The new Deputy Chief position to review all cases involving serious allegations of misconduct, as well as my recent Executive Order requiring that criminal misconduct be reported immediately to the District Attorney's Office, are making an impact."**

45.     This Defendant Mayor statement is from 2016, and yet none of these things, Defendant claims to do in relation to OPD criminal racial misconduct, that's found in IAD 13-1062 has been done for Plaintiffs as Black Muslims. CPC 13519.4[e] is a criminal act that Defendant, has been noticed by Plaintiffs of OPD discrimination for over a decade, and has failed to halt it, as it applies to Black Muslim IAD 13-1062. This also establishes that a culture of tolerance of discrimination exists, not only inside the OPD, but also in conspiracy with Defendant Administration, who consistently fails to report OPD Misconduct and criminality to the DA as discovered in Bey vs. Oakland Discovery, and independently validated by the Oakland Police Commission. Multiple independent agencies have established that OPD routinely discriminates against Black persons in Oakland as a systemic matter of unwritten policy.

46.     The Defendant's "one off" racist statements pretext argument, is racist in itself, and further evidence of Defendant's brazen pattern and practice of open discrimination against Black Muslims. Defendant's pretext defense is not tolerated by Defendant's own written policy of zero tolerance against racism and discrimination of any type against any protected class [M-19 and M-3 policy]. Treating Plaintiffs differently exposes Defendant's "unwritten" culture of acceptance of open Division wide discrimination against Black Muslims.

47.     Bottom of the page, IAD 13-1062 states under Evidence "***CD containing the following – Digital recording of John Bey statement taken by M. Nguyen, Digital recording of Saleem Bey taken by M. Nguyen, Digital recording of Ali Saleem and John Bey taken by M.Nguyen, Digital recording of Ali Saleem and John Bey taken by Capt. Cunningham***" (**Exhibit 26, Bonner Decl., IAD Report**) This document states that a "CD containing" four [4] recordings was part of IAD 13-1062 evidence, yet Defendant turned over 3 of the 4 recordings and then stated they could not locate the 4th tape made by Cunningham. Again, "all on one CD", but one file on said CD is missing from discovery. Defendant has failed to turn over this, and other evidence in Discovery, then wants the Court to believe and accept what Defendant and Captain Cunningham have to say regarding IAD 13-1062 "fairness" and the Beys. This is a direct violation of OPD IAD investigation policy Section E number 4 "***OPD shall develop provisions for the permanent retention of all notes generated or received***" in regard to Black Muslims cases. Defendant turned over 3 of the 4 recordings on the same CD, meaning they are purposely and transparently scofflaw withholding Discovery evidence. Defendant cannot benefit from withholding Discovery evidence, then ask for summary judgement, based upon that individual officer's statement contrary to Plaintiffs' complaint.

I declare under the penalty of perjury that the foregoing is true and correct, except those matters stated on information and belief, and as to those matters I believe them to be true.

Dated: July 9, 2019

_____
A. Saleem. Bey